PRESTON EASLEY, ESQ./Cal State Bar No. 108347
LAW OFFICES OF PRESTON EASLEY
2500 Via Cabrillo Marina, Suite l06
San Pedro, California  90731-7724
Telephone:  (310) 832-5315
Facsimile:   (310) 832-7730

ATTORNEY FOR:  Plaintiff
                         BERT MEYER

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 17 2006

at 4 o'clock and 25 min  M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BERT MEYER, | Civil No.:  04-00049 JMS-BMK |
| | (In Admiralty) |
| Plaintiff, | |
| v. | PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT |
| MATSON NAVIGATION COMPANY, INC., and PACIFIC LIVESTOCK, INC., | |
| Defendants. | |

COMES NOW PLAINTIFF BERT MEYER and submits the

following Memorandum of Points and Authorities in Opposition to Motion

for Summary Judgment:

///

1

PRESTON EASLEY, ESQ./Cal State Bar No. 108347
LAW OFFICES OF PRESTON EASLEY
2500 Via Cabrillo Marina, Suite l06
San Pedro, California  90731-7724
Telephone:  (310) 832-5315
Facsimile:   (310) 832-7730

ATTORNEY FOR:  Plaintiff
                        BERT MEYER


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII


| | |
|---|---|
| BERT MEYER,             ) | Civil No.:  04-00049 JMS-BMK |
|                 ) | (In Admiralty) |
|                 ) | |
|        Plaintiff,    ) | PLAINTIFF'S MEMORANDUM OF |
|    v.               ) | POINTS AND AUTHORITIES IN |
|                 ) | OPPOSITION TO MOTION FOR |
| MATSON NAVIGATION    ) | SUMMARY JUDGMENT |
| COMPANY, INC., and      ) | |
| PACIFIC LIVESTOCK, INC.,  ) | |
|                 ) | |
|                 ) | |
|       Defendants.    ) | |


COMES NOW PLAINTIFF BERT MEYER and submits the

following Memorandum of Points and Authorities in Opposition to Motion

for Summary Judgment:

///

1

I

INTRODUCTION

MATSON's motion fails for two principal reasons. First of all, MATSON offers no expert declarations in support of its position. Secondly, there are material issues of fact in dispute.

Plaintiff is a 38 year old longshoreman employed by McCabe, Hamilton & Renny Co., Ltd. He was injured aboard the Matson Navigation Company, Inc. ship S/S LIHUE at 7:00 p.m. on October 1, 2002, when he slipped in animal waste (from containers of live animals) and fell through a gap between the grating and the hatchcover on the starboard side of the hatchcover at row 15/16. He had been straddling a similar gap on the aft side of the hatchcover while using a long pole to unlock container cones above his head. He had to straddle the gap at the location where the slip began in order to properly position himself under a stuck cone on the three-high container that he was unlocking. The stuck cone had to be pulled out and then unlocked. He put his left foot on the padeye on the hatchcover (as he had done before) and his right foot was on the metal grating. There were animal feces, animal urine, and slime from the animal waste on all horizontal surfaces, including the grating and the hatchcover. Plaintiff complained about this to Daniel Farney, his Matson Terminals, Inc.

2

superintendent, prior to the accident (see pages 55-56 of Meyer deposition

attached hereto as exhibit 1). Plaintiff had previously fallen due to animal

slime aboard ship on prior jobs. His left foot slipped off the padeye and

when he fell his left leg went into the 7 3/8" wide gap between the grating

and the starboard (inshore) side of the hatchcover. He was stuck in the gap

and later rescued by Mr. Farney. He sustained a massive labral tear of the

left hip joint. See Declaration of Bert Meyer.

II

DEFENDANT MATSON NAVIGATION

COMPANY, INC. WAS NEGLIGENT

**A. Defendant Matson is Liable to Plaintiff Because It Failed**

**to Turnover the Vessel to the Longshoremen in a**

**Reasonably Safe Condition.**   Scindia Steam Navigation

Company, Ltd. v. De Los Santos, 451 US 156, 68 LEd 2d 1,

101 SCt 1614 (1981).

Scindia outlines the basic duties a vessel owes to longshoremen under

33 USC Sec. 905(b), the Longshore Act. Generally, a vessel owes the

longshoreman the duty of exercising due care under the circumstances.

Scindia, 68 LEd 2d 12.

A)     TURNOVER DUTY.  The turn over duty described in
         Scindia requires the vessel owner to exercise "ordinary

care under the circumstances to have the ship and its
equipment in such condition that an expert and
experienced stevedore will be able by the exercise of
reasonable care to carry on its operations with reasonable
safety to persons and property..." Scindia, 68 LEd 2d 12.

In other words, the shipowner must initially provide the longshoremen with

a safe place to work, including functional equipment. MATSON was well

aware of the problems with the wash downs by the animal tenders and had a

heightened duty to make sure the wash down was done correctly. The chief

mate's cargo letter for the S/S LIHUE written on January 16, 2002, by Chief

Mate H.G. Walsh reads as follows (see exhibit 2 attached hereto):

> **Comments: Livestock carriage is still a problem.
> Livestock tenders do not have enough hoses for watering
> the stock and washing down the area. The cowboys are
> ill equipped and ill prepared for a sea crossing. One of
> our cowboys was seasick most of the time and the
> livestock was neglected for too long. The mess this
> creates is a health hazard for the livestock and a sanitary
> hazard for the entire crew. This is unacceptable.**

The gap between the starboard side of the hatchcover and the grating

was 7 3/8" wide and 19 1/2" long. Matson obtained the S/S LIHUE in 1995.

It had previously been a LASH (lighter aboard ship) vessel and it had been

converted to a container ship prior to being acquired by Matson. The

identical gap on the port side of the same catwalk (row 15/16) where the

accident occurred is about 4" (see plaintiff's trial exhibit no. 13), which is

4

considerably smaller than the 7 3/8" gap through which plaintiff fell.  See

Declaration of Captain Robert E. Riley.

MATSON was clearly in violation of its own **Matson Navigation**

**Company Safety and Pollution Manual, Section Number C-01-190,**

**Working Aloft**, which reads as follows:

**1.0    Purpose**

1.1    To describe the procedures, guidelines and safety precautions to be used when working aloft.

**2.0    Scope**

2.1    This applies to all Matson vessels.

**3.0    Responsibility**

3.1    The Master, Chief Officer and Chief Engineer (working aloft in the engine room) are responsible for adherence to this procedure.

**4.0    Procedure**

4.1    **Job to be Evaluated** – If there is a risk of falling at least 3 feet while working or if the location presents a risk likely to cause serious injury, the job shall be evaluated for ways to protect personnel.
Notes:

///

1. A fall from a height that is less than 3 feet can cause a serious injury. Protective gear shall be worn if the prevailing circumstances and conditions require it.

2. Ladders inclined greater than 70 degrees shall be treated as vertical ladders.

4.1.1 **Prior Permission –** Permission shall be granted by the Master, Chief Officer or Chief Engineer, prior to working aloft.

Officers assigning work in elevated areas shall make personnel aware of the need to use extra protection, in order to prevent personnel injuries due to falls. Officers shall require fall arrest gear safety lines in high-risk areas.

4.2 **Guidelines –** A temporary guardrail shall be rigged from a line in an area where groups of personnel may work or where one worker may frequently traverse.

4.2.1 **Mark Openings –** *All openings into which personnel could inadvertently step shall be conspicuously marked and barricaded* [emphasis added].

MATSON is clearly in violation of paragraph 4.2.1 which requires all openings into which personnel **"could inadvertently step"** to be **"conspicuously marked and barricaded."** The grating was approximately 8' above the main deck. See Declaration of Captain Robert E. Riley.

6

MATSON was also in violation of **Matson Navigation Company**

**Safety and Pollution Manual, number C-01-100, October 15, 1998,**

**Special Safety Precautions**, which states:

**1.0     Purpose**

1.1     To describe special safety precautions to be

followed when working on a vessel.

**2.0     Scope**

2.1     This applies to all Matson vessels.

**3.0     Responsibility**

3.1     The Master shall ensure that all Licensed
Officers understand this procedure and
ensure that those working under their
supervision adhere to these practices.

**4.0     Procedure**

4.1     A proactive approach shall be used to
prevent the slips, trips and falls which cause
many injuries aboard vessels.  Personnel
shall correct the situation or post appropriate
warnings for the following conditions:

1. Wet, oily or highly waxed/polished
floors/decks.
2. Slippery conditions on deck.
3. Dark or poorly lit routes.

4.1.1     **Main Deck Access During Foul Weather –**
During foul weather no person shall be
permitted on exposed main deck areas
without the approval of the Master or unless

7

they are properly equipped with safety gear,
such as a lifejacket, a safety harness or a
lifeline and are properly supervised. The
Master shall delay access to the main deck
until the vessel's course and/or speed have
been properly adjusted to provide the safest
possible conditions.

4.1.2 **Wet or Oily Floors/Decks** – Remove any
liquid spilled in a work area or any
accessible area.

MATSON failed to correct a slippery condition on deck. See Declaration of

Captain Robert E. Riley.

The conditions aboard the S/S LIHUE were in violation of the ILWU-

PMA **Pacific Coast Marine Safety Code**, Section 2, Duties of Vessels of

all types, Rules 201 and 249, which state:

**Rule 201.** The owners and/or operators of vessels shall
provide safe ship's gear and equipment and a safe working
place for all stevedoring operations on board ship.

**Rule 249.** Manholes and other deck openings which are
flush with the deck shall be barricaded by use of either
covers or railings.

ILWU stands for "International Longshore and Warehouse Union." PMA

stands for "Pacific Maritime Association." MATSON is a member of the

PMA, which is the employers' bargaining agent with the ILWU. Matson's

collective bargaining agreement with the ILWU in California requires

compliance with the **Pacific Coast Marine Safety Code.** See Declaration of Captain Robert E. Riley.

The unsafe conditions of the animal slime and the gap in the grating aboard the S/S LIHUE existed before the longshoremen came on board, therefore defendant MATSON breached its duty to turn the vessel over to the longshoremen in a reasonably safe condition. The failure to clean up the animal waste and the gap in the grating rendered the vessel unreasonably dangerous for an expert and experienced stevedore. See Declaration of Captain Robert E. Riley.

As the Senate Report quoted in <u>Scindia</u> makes clear, nothing in 1972 Amendments to the LHWCA "is intended to derogate from the vessel's responsibility to take appropriate corrective action where it knows or should have known about a dangerous condition." <u>Scindia</u>, 451 US at 169 n.16 (quoting S.Rep. No. 92-1125, 92d Cong., 2d Sess. 10 (1972), also quoted by the Ninth Circuit in <u>Bueno v. United States,</u> 687 F2d 318, 320 (9th Cir 1983) as follows:

> **"So, for example, where a longshoreman slips on an oil spill on a vessel's deck and is injured, the proposed amendments to Section 5 would still permit an action against the vessel for negligence. To recover, he must establish that: 1) the vessel put the foreign substance on the deck, or knew that it was there, and willfully or negligently failed to remove it; or 2) the foreign substance had been on the deck for such a period of time that it**

**should have been discovered and removed by the vessel in the exercise of reasonable care by the vessel under the circumstances."** Id., at 10-11.

The scenario in the Senate Report quoted in the Bueno case is strikingly similar to the facts of the instant case. MATSON obviously knew that there was a large gap between the hatchcover and the grating, and knew or should have known of the animal waste, yet MATSON took no corrective action, clearly violating the duties set forth by *Scindia* and the U.S. Senate.

The duty to make a vessel safe does not fall exclusively on the stevedore. Martinez, supra, at 610. A negligent shipowner's liability is not eliminated by the negligence of the stevedore. Subingsubing v. Reardon Smith Lines, 682 F2d 779, 780 (9th Cir 1982).

The seminal Ninth Circuit case on the issue of vessel owner duties to longshoreman is Martinez v. Korea Shipping Corp., Ltd., 903 F2d 606 (9th Cir 1990). In Martinez the plaintiff was represented by Preston Easley. Factually the Martinez case is virtually identical to the Bert Meyer case. Martinez fell through an unguarded ladder opening on a lashing platform (note: in the Meyer case, the ladder opening on the lashing platform where Meyer fell is covered by a hinged grating) and the Ninth Circuit reversed the District Court's grant of summary judgment in favor of the vessel owner.

In another case factually similar to Meyer the Ninth Circuit followed
Martinez in Thomas v. Newton International Enterprises, 42 F3d 1266 (9th
Cir 1994) and reversed the District Court's grant of summary judgment for
the vessel owner in a case where a longshoreman fell through an unguarded
hatch to an access ladder.  The Thomas court also held that the reliance of
plaintiff's expert on the Pacific Coast Marine Safety Code was "not
inappropriate." Thomas, 42 F3d 1271 fn 6.  The Thomas court said that, "In
other words, any 'obvious' hazard must not 'present an unreasonably
dangerous work environment to experienced longshoremen exercising
reasonable care.' Martinez v. Korea Shipping, 903 F2d 606, 610 (9th Cir
1990)." Thomas, 42 F3d 1269.  Expert opinion evidence (such as Capt.
Riley's declaration) is sufficient to create a genuine issue of disputed fact
sufficient to defeat a summary judgment motion.  The Thomas court stated
at 42 F3d 1270:

> "Expert opinion evidence is itself sufficient to create a
> genuine issue of disputed fact sufficient to defeat a summary
> judgment motion. See Bulthuis, 789 F2d at 1317-18.  See
> also Maffei v. Northern Ins. Co., 12 F3d 892, 897 (9th Cir
> 1993).  When the Kuvakas declaration [declaration of
> plaintiff longshoreman's liability expert] is included among
> the evidence offered by Thomas, and that evidence is viewed
> in the light most favorable to her, it raises a genuine issue of
> material fact as to the ultimate issue of whether the
> unguarded hatch opening presented an unreasonably
> dangerous condition."

The _Thomas_ court gave a brilliant analysis of why the breach of the vessel's turnover duty of a safe condition is not suitable for summary judgment at 42 F3d 1270-71 as quoted below:

> "Because the declaration [of plaintiff's liability expert] raises a material issue of fact as to the ultimate issue of "unreasonable dangerousness," the motion for summary judgment must be denied. Nonetheless, Newton argues that, independent of the "unreasonably dangerous" issue, it could not have breached its turnover duty of safe condition because the unguarded ladderwell was "easily avoidable," citing _Ludwig v. Pan Ocean Shipping_, 941 F 2d 849, 851 (9th Cir 1991). Newton argues that Thomas could have stepped to the right and avoided the open hatch instead of stepping to the left and falling through it, and therefore it is entitled to summary judgment. However, Newton is incorrect. The question whether a hazard is easily avoidable is simply part of the larger question whether a hazard is unreasonably dangerous. It is the failure to eliminate an unreasonably dangerous hazard that constitutes a breach of the vessel's turnover duty of safe condition. In determining whether a particular hazard is unreasonably dangerous, the fact finder must examine the totality of the factual circumstances surrounding the hazard and the accident and consider them as a whole. Although the avoidability of the hazard is relevant to whether the hazard was unreasonably dangerous, it it not necessarily determinative. There may be circumstances in which a hazard can be easily avoided but some other factors present make it nonetheless unreasonably dangerous."

Defendant MATSON cannot show any factors distinguishing Meyer from _Martinez_ and _Thomas_ which would support a motion for summary judgment.

12

**B. Defendant Matson Breached its <u>Scindia</u>
Duty to Safely Maintain Equipment Under
its Control**

The standard of care owed by vessels to longshoremen was

established by <u>Scindia Steam Navigation Co., Ltd. v. De Los Santos</u>, 101

SCt 1614, 451 US 156, 68 LEd 2d (1981). <u>Scindia</u> held that a vessel may be

liable for injuries to a longshoreman if the vessel "fails to exercise due care

to avoid exposing longshoremen to harm they may encounter in areas or

from <u>equipment</u> under the active control of the vessel during the stevedoring

operation" (emphasis added). 68 LEd 10. The insufficient grating was a

permanent fixture supplied by the vessel. Permanent fixtures on a vessel are

"equipment" under the vessel's control, even in cargo areas. <u>Taliercio v.</u>

<u>Compania Expressa Lineas Argentina</u>, 761 F2d 126 (2nd Cir 1985).

III

THERE IS NO OPEN AND

OBVIOUS DANGER DEFENSE

There is no open and obvious danger defense. In <u>Martinez v. Korea</u>

<u>Shipping Corp., Ltd.</u>, 903 F2d 606, 609 (9th Cir 1990), the Court stated:

> "In this case the district court decided as a matter of
> law that KSC did not breach its duty. Viewing the evidence
> in the light most favorable to Martinez, however, we find that
> a material question of fact if whether an obvious situation -
> an unguarded ladder opening - constitutes an unreasonably
> dangerous condition to expert and experienced stevedores. If

13

so KSC could be found negligent in turning the ship over to the stevedore for cargo operations. Scindia, 451 US at 167, 101 SCt at 1622."

The Ninth Circuit further killed the "open and obvious danger" defense in

Martinez supra, at 610, by stating:

"The fact that the ladder opening was obvious to Martinez and other longshoremen working on board the vessel, moreover, does not necessarily preclude a finding of shipowner negligence. While we have recognized that a shipowner is not under an absolute duty to provide a perfectly safe vessel, Bilderbeck, 776 F2d at 818 ('there is no warranty … running to the workman, that the vessel is free from defect.'), this court has left open the question 'whether the shipowner's knowledge or creation of an obvious dangerous condition that exists at the time the ship is turned over to longshoremen is without more, sufficient to establish liability." Ollestad v. Greenville Steamship Corp., 738 F2d 1049 (9th Cir 1984), cert. denied, 469 US 1197, 105 SCt 982, 83 LEd2d 984 (1985).
        Under Scindia, the obviousness of the defect does not absolve the vessel owner of its duty to turn over the ship in a condition under which expert and experienced stevedores can operate safely. 451 US at 167, 101 SCt at 1622. In addition, Congress made clear in the 1979 amendments that when conditions are obviously dangerous actual knowledge by the vessel owner is not necessary and constructive knowledge can be implied. See H.R.Rep. No. 92-1441. 92 Cong., 2d Sess. 10 (1972); S.Rep. No. 92-1125, 92d Cong., 2d Sess. 11 (1972), reprinted in US Code Cong. & Admin. News 1972, 4698; Bueno, 687 F2d at 320."

///

IV

A VESSEL IS NOT RELIEVED OF

LIABILITY BECAUSE OF THE

LONGSHOREMAN'S FAILURE

TO COMPLAIN OF THE HAZARD

When faced with a hazardous condition, the longshoreman or his employer is not required to request the vessel to remedy the hazard for the longshoreman to recover from the vessel for injuries that are the result of dangerous conditions within the control of the vessel. Theriot v. Bay Drilling Corporation, 783 F2d 527, 535, 536 (5th Cir 1985). Also, the fact that neither the longshoreman nor his employer took any precautions in the face of the hazard does not relieve the vessel of liability. Moore v. M.P. Howlett, Inc., 704 F2d 39, 43 (2nd Cir 1983). In the instant case, Meyer did complain.

In Barrios v. Pelham Marine, Inc., 796 F2d 128 (5th Cir 1986), where a welder slipped while working in a grease coated tank, the court found that the plaintiff was not contributorily negligent because he elected to work under less than optimal conditions rather than to quit or complain, and his decision to work in the tank in spite of the grease did not absolve the vessel of liability. Barrios, supra, 132.

15

V

THE CASES CITED BY MATSON

DO NOT SUPPORT ITS POSITION

A.  Howlett v. Birkdale Shipping Co., 512 US 92, 114 SCt 2057, 129

Led 2d 78 (1994).  Matson relies on this case in support of its rather absurd

contention that the animal waste is part of the stow, and that as per Howlett a

shipowner is not liable for a negligent stow.  In Howlett the plaintiff slipped

and fell on a sheet of plastic that had been placed under bags of cocoa beans

in the ship's hold.  Howlett confined his case to an allegation the vessel

owner failed to warn him that there was a sheet of plastic instead of paper

underneath bags of cocoa beans in the ship's hold.  The Howlett court held

that the vessel owner's duties with respect to the stow were separate from

the rest of the ship and that the vessel owner's duty to warn of latent defects

in the stow is a narrow one.  The Meyer case is not a negligent stow case and

not a failure to warn case.  Howlett is inapplicable to Meyer.  Meyer does

not fault MATSON for how any cargo was stowed in a cargo hold or cargo

container to which the vessel's crew had no access.  Obviously the

MATSON crew had access and control over the exposed catwalks and

exposed hatchcovers as the S/S LIHUE approached Honolulu.  Since the

animal waste was outside of cargo holds or cargo containers and in areas

where the vessel's crew had both access and control, the Howlett limitations on vessel owner duties are inapplicable to the Meyer case. Meyer does not allege any failure to warn. All of MATSON's arguments concerning Howlett involve the duty to warn, which is not an issue in this instant case. These arguments seem to be a diversionary tactic by MATSON.

B. In Hayes v. Hoyu Venture Line S.A., 1998 AMC 2614 (DC Alaska 1998) summary judgment in favor of the shipowner was granted when plaintiff longshoreman slipped while climbing a cargo of logs. The turnover duty does not extend to cargo. Hayes bears no relationship to Meyer.

C. Summary judgment was granted in favor of the vessel owner in Clay v. Daichi Shipping, 74 FSupp 2d 665 (ED La 1999). Clay was attaching a cargo hook to a pipe in a cargo hold when he lost control of the pipe. The turnover duty does not apply to cargo in a cargo hold. The Clay case bears no conceivable relationship to Meyer.

D. In Pledger v. Phil Guilbeau Offshore, Inc., Civil no. 02-1796, Section L (1), 2003 U.S. Dist. LEXIS 741 (ED La 2003) the court held that defendant Phil Guilbeau did not breach its turnover duty because the injury causing condition (algae on deck) was open and obvious. This is an incorrect statement of the law, which is probably why the decision was not

published.  See <u>Martinez v. Korea Shipping Corp., Ltd.,</u> 903 F2d 606 (9th Cir 1990).

E.  In <u>Bjaranson v. Botelho Shipping Corp.,</u> 873 F2d 1204 (1988), the plaintiff was injured when he took an unsafe route on the vessel and fell in the dark while trying to get off of a hatchcover.  The court found that to safely traverse the vessel the plaintiff could have asked the crane operator to move the ship's crane, squeezed around the crane, or used the crane to descend the hatchcover.  The vessel was absolved of liability because plaintiff had three safe routes and he chose an unsafe route.  Such was not the case in Meyer.

F.  In <u>Haines v. Honolulu Shipyard, Inc.; United States of America,</u> 125 FSupp 2d 1020 (2000) the plaintiff was a tank cleaning superintendent employed by subcontractor Allstate Industrial & Marine Cleaning.  Plaintiff descended into the forward peak ballast tank on a Navy tugboat.  He climbed down the longitudinal frames to get into the tank.  As he climbed the same longitudinal frames to get out of the tank he blacked out and fell.  The plaintiff was not able to link his blacking out to any unsafe condition aboard the vessel.  The court found that if the longitudinal frames were safe for going down into the tank, then they were safe for climbing out.  Plaintiff's

own evidence suggested that the tank was safe.  The facts and law of <u>Haines</u>

have no similarity or relevance to Meyer.

G.  MATSON cites <u>Irvin v. U.S. Military Sealift Command,</u> 2003

U.S. Dist. LEXIS 8453 (ED La 2003), another unpublished decision, where

summary judgment was granted in favor of the shipowner.  The plaintiff

slipped and fell on a blob of grease on a hatchcover on a vessel that had been

docked for months.  Plaintiff worked on the vessel for six months and

speculated that the grease fell from the ship's overhead crane.  In walking

over the hatchcover Irvin was taking a shortcut to get to the deck and did not

use the portable steps that had been provided for that purpose.  The <u>Irvin</u>

case bears no resemblance to the facts of the Meyer case and lends no

support to MATSON's arguments.

VI

MEYER'S RECORDED

STATEMENT SUPPORTS

HIS LIABILITY CASE

MATSON's brief consists almost entirely of excerpts from the recorded

statement that Meyer gave to Heidi Kahlbaum at Frank Gates Acclaim on

October 17, 2002, approximately two weeks after the accident (see exhibit 1

to Meyer declaration).  MATSON contends that the recorded statement

19

proves that Meyer has given conflicting accounts of how the accident occurred. Plaintiff disagrees. This is a factual dispute which cannot be resolved by way of summary judgment. Pertinent portions of the recorded statement are repeated below.

PAGE 13

Claimant:    Um…I was stepping over some rods and stuff and I guess the lock cover, everything was covered with pig urine and stuff over there, cause that's where the pigs were. So when I stepped on, um, I believe it's called the, the D rings but they were actually, we bolt the buckles too and then, um, I put my foot there cause I had to step over some rods and stuff and then when I went to put my weight on it, it just slid right into the hole.

PAGE 14

Adjuster:    Okay. Okay and you said you put your left foot on the…

Claimant:    It's like a buckle.

Adjuster:    Okay. Oh, my gosh, I got lost there. So you put your left foot on…?

Claimant:    A buckle.

Adjuster:    A buckle. Okay.

Claimant:    Yeah.

Adjuster:    Okay. And this is, you said, on the…This is part of the deck though?

Claimant:    Yes.  Attached, yeah.  It was attached to
the deck at that time.

PAGE 18

Claimant:    My, my…As soon as I put all my weight on
it …I guess because it was all covered in the
urine and everything.

PAGE 22

Adjuster:    Oh, okay.  Okay.  And then, okay, so you
got over that and then you're stepping and
as you're trying to get where you're walking.

Claimant:    Um-hm.

Adjuster:    There's all this lashing equipment.

Claimant:    Yeah.

Adjuster:    Down on the ground.  Okay.

TAPE ACCIDENTALLY ERASED HERE.  (About 30 seconds)

Claimant:

Adjuster:

Claimant:

PAGE 25

Adjuster:    Okay.  Now do you think, um, did your
foot slip, or anything?

Claimant:    Yeah, cause I was stepping on a…I was
stepping on a buckle, so I pretty, I thought
I had pretty good solid footing and then I
guess when I put all my weight on it, it

21

just slipped.

PAGE 26

Claimant: As I said everything was covered in that, um, the urine and everything so what happened is, when they sail all the winds swirls, so it's all over, like this container, could be in another row, but here you can, when it comes off you can actually, in the daytime you see the flies all over the container and everything. It's kind of disgusting.

Adjuster: Oh. Okay and your left foot stepped in the hole, yeah?

Claimant: Yes. And basically my right foot went in the other direction.

Adjuster: Oh, okay. So, okay, how far again did it go?

Claimant: All the way.

Just as Meyer was getting into the details of the accident on page 22 the tape accidentally erased for 30 seconds. It would be unfair to use an incomplete tape against Meyer. He did mention the animal waste on pages 13, 18, and 26, so he obviously considered the animal waste to be an important factor. He erroneously referred to the padeye as a "D-ring" and a "buckle." On page 14 he said that it was "attached to the deck." Clearly he was referencing the padeye (there were no D-rings in the area). The recorded statement is consistent with plaintiff's Complaint for Damages.

22

VII

THE *MARTINEZ* DECISION

PRECLUDES SUMMARY

JUDGMENT

Absent a change in the law summary judgment against the plaintiff

Bert Meyer in the instant case is not warranted based on the facts and the

law of Martinez v. Korea Shipping Corp., Ltd., 903 F2d 606 (9th Cir 1990).

The facts patterns in the instant case and Martinez are virtually identical.  In

the Martinez case plaintiff Armando Martinez was injured aboard ship when

he fell through an unguarded opening in the grating on a lashing pedestal.  A

lashing pedestal is merely an extension of the catwalk on the outboard edges

of a ship.  The catwalk grating is flush with the lashing pedestal and together

they form one continuous walkway from one side of the ship to the other

between hatches at an elevation slightly above the main deck.  Plaintiff Bert

Meyer fell through an unguarded opening between the lashing platform and

the hatchcover.  The fact patterns of the Meyers case and Martinez v. Korea

Shipping Corp. are indistinguishable.  To achieve summary judgment in the

instant case the defendant Matson is going to have to overturn Martinez v.

Korea Shipping Corp.

23

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted only if it is shown "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."

The question of whether there are disputed issues of material fact must be viewed in the light most advantageous to the party opposing the motion for summary judgment.  <u>United States v. First National Bank of Circle</u>, 652 F2d 882, 887 (9th Cir 1981).

The Ninth Circuit followed <u>Martinez</u> in <u>Thomas v. Newton International Enterprises</u>, 42 F3d 1266 (9th Cir 1994).  Thomas fell through an unguarded hatch opening on a ship.  Her expert submitted a declaration stating that the hatchcover should have been protected by a cover or railing, and that it created a hazard for an experienced longshoreman.  The district court granted summary judgment for the defendant, and the Ninth Circuit reversed because the district court erred with regard to the turnover duty.

In <u>Thomas</u>, supra, 1272, the court distinguished <u>Bjaranson v. Botelho</u>, 873 F2d 1204 (9th Cir 1989), by stating that in <u>Bjaranson</u> the plaintiff deliberately elected to forego safer alternatives and consciously chose to scale across a crane and descend down a partial ladder not intended for the

24

purpose. Bert Meyer did not consciously forego a safer alternative. He had to work on the grating in spite of the hazard.

The <u>Thomas</u> court, 42 F3d 1270, held that because the declaration of plaintiff's expert raised a material issue of fact as to the ultimate issue of "unreasonable dangerous," the motion for summary judgment had to be denied. Capt. Riley's declaration raises the same material issues of fact in the instant case. In <u>Thomas</u>, 42 F3d 1269, the Ninth Circuit said:

> "One of the primary duties of a vessel owner is to turn over the vessel to the stevedore in reasonably safe condition. See <u>Scindia</u>, 451 U.S. at 167, 101 S.Ct. at 1622. Although a shipowner is not required to turn over a vessel free of all hazards, the vessel must be free of hazards that would prevent an expert and experienced stevedore from carrying on his operation in a reasonably safe manner. <u>Bjaranson</u>, 873 F2d at 1208. In other words, and "obvious" hazard must not "present an unreasonably dangerous work environment to experienced longshoremen exercising reasonable care." <u>Martinez v. Korea Shipping</u>, 903 F2d 606, 610 (9th Cir. 1990). Generally, this type of issue is inappropriate for resolution at the summary judgment stage. "Summary judgment is *rarely* granted in negligence cases. Whether the defendant acted reasonably is ordinarily a question for the trier of fact." <u>Martinez</u>, 903 F2d at 609 (emphasis added).

Note: the emphasis added to the word "rarely" was added by the <u>Thomas</u> court.

When viewing the evidence in the instant case in the light most favorable to the plaintiff, it is clear that the defendant breached its <u>Scindia</u> duty to turn over a safe vessel to the stevedores.

There are material questions of fact in Bert Meyer as to:

1.      Whether the gap in between the grating and the hatchcover created an unreasonably dangerous condition for an expert and experienced longshoreman;

2.      Whether the animal waste in plaintiff's work area created an unreasonably dangerous condition for an expert and experienced longshoreman;

3.      Whether the vessel was turned over to the longshoremen in an unsafe condition;

4.      Whether gaps such as the one in plaintiff's accident are common;

5.      Whether the vessel owner was in the best position to correct the unsafe conditions;

6.      Whether defendant MATSON knew or should have known about gap through which plaintiff fell;

7.      The degree of danger created by the unsafe conditions;

8.      Whether defendant MATSON should have installed a larger grating;

9.      Whether defendant MATSON was negligent;

10.    Whether, prior to the accident, Meyer knew that it was unsafe to use the padeye for leverage;

11.    Whether Meyer correctly stated the circumstances of his accident in the tape recorded statement that he gave to Frank Gates Acclaim;

12.    Whether defendant MATSON violated the **Matson Navigation Company Safety and Pollution Manual**; and

13.    Whether defendant MATSON violated the **Pacific Coast Marine Safety Code**.

If these issues of fact are viewed in a light most favorable to plaintiff, defendant MATSON cannot prevail as a matter of law, therefore summary judgment is inappropriate and unjustified.

A determination of negligence is a mixed question of law and fact. Barnett v. Sea Land Services, Inc., 875 F2d 741, 745 (9th Cir 1989); Miller v. United States, 587 F2d 991, 994 (9th Cir 1978). The existence and extent of duty of care are questions of law, but proximate cause and whether such a duty has been breached are questions of fact. Armstrong v. United States, 756 F2d 1407, 1409 (9th Cir 1985). Summary judgment is rarely granted in negligence cases, and whether a defendant vessel owner has acted reasonably is ordinarily a question for the trier of fact. Martinez v. Korea Shipping Corp. Ltd., 903 F2d 606, 611 (9th Cir 1990). A factual issue with

respect to the existence of an unreasonably dangerous condition precludes the award of summary judgment. <u>Thomas</u>, supra, 1272. For these reasons summary judgment is inappropriate in the instant case.

VIII

DEFENDANT'S MOTION MUST

FAIL BECAUSE DEFENDANT

HAS NOT OFFERED ANY

EXPERT DECLARATIONS IN

SUPPORT OF ITS POSITION

Defendant MATSON offers no safety standards and no expert declarations or testimony in support of its position - - - just unsubstantiated attorney hyperbole. Exhibits A through H (including Captain Bergin's report) of Declaration of Randolf L.M. Baldemor are inadmissible with regard to the motion for summary judgment. Local Rule 7-6 and <u>FRCP</u> Rule 56(e) require declarations. MATSON has offered no expert declaration in support of its motion hence MATSON has offered no evidence in support of its motion.

Pursuant to Fed.R.Civ.P. 56(e), only admissible evidence may be considered by a court in deciding a motion for summary judgment. <u>Hal Roach Studios, Inc. v. Richard Feiner & Co.</u>, Inc., 896 F2d 1542, 1550-1 (9th

28

Cir. 1990). Hearsay evidence or unauthenticated documents cannot support a motion for summary judgment. Id. In order to be considered in summary judgment, "documents must be authenticated by and attached to an affidavit that meets the requirements of Fed.R.Civ.P. 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." Canada v. Blain's Helicopters, Inc., 831 F2d 920, 925 (9th Cir 1987). The advocate-witness rule prohibits an attorney from appearing as both a witness and an advocate in the same litigation. United States v. Sayakhom, 186 F3d 928, 943 (9th Cir. 1999) (citing United States v. Prantil, 764 F2d 548, 522-3 (9th Cir. 1985)).

MATSON's counsel is barred from authenticating the photographs in exhibits A through H of his declaration and the report of Captain Bergin which is exhibit E to his declaration. Absent proper authentication the report is inadmissible hearsay. Therefore Captain Bergin's report and any proffered "facts" based upon Captain Bergin's report are inadmissible as evidence and cannot support Defendant's Motion for Summary Judgment.

///

///

IX

CONCLUSION

Defendant MATSON breached its <u>Scindia</u> duties to turn the vessel over to the longshoremen in a reasonably safe condition and safely maintain equipment under its control.

There are many issues of fact regarding MATSON's failure to turn the vessel over in a safe condition. Whether MATSON breached its <u>Scindia</u> turnover duty and whether such breach caused plaintiff's injury are factual issues which must be litigated before a trier of fact. Plaintiff respectfully requests that defendant MATSON's motion for summary judgment be denied.

Dated: January 16, 2006

PRESTON EASLEY
Attorney for Plaintiff
BERT MEYER

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................ i

I    INTRODUCTION ................................................ 2

II   DEFENDANT MATSON NAVIGATION COMPANY, INC. .......... 3
     WAS NEGLIGENT

     A.  DEFENDANT MATSON IS LIABLE TO PLAINTIFF ......... 3
         BECAUSE IT FAILED TO TURNOVER THE VESSEL TO THE
         LONGSHOREMEN IN A REASONABLY SAFE CONDITION

     B.  DEFENDANT MATSON BREACHED ITS *SCINDIA* ......... 13
         DUTY TO SAFELY MAINTAIN EQUIPMENT
         UNDER ITS CONTOL

III  THERE IS NO OPEN AND OBVIOUS DANGER DEFENSE ........ 13

IV   A VESSEL IS NOT RELIEVED OF LIABILITY BECAUSE ...... 15
     OF THE LONGSHOREMAN'S FAILURE TO COMPLAIN
     OF THE HAZARD

V    THE CASES CITED BY MATSON DO NOT SUPPORT .......... 16
     ITS POSITION

VI   MEYER'S RECORDED STATEMENT SUPPORTS HIS ........... 19
     LIABILITY CASE

VII  THE *MARTINEZ* DECISION PRECLUDES SUMMARY ......... 23
     JUDGMENT

VIII DEFENDANT'S MOTION MUST FAIL BECAUSE .............. 28
     DEFENDANT HAS NOT OFFERED ANY EXPERT
     DECLARATIONS IN SUPPORT OF ITS POSITION

IX   CONCLUSION ................................................ 30

# **TABLE OF AUTHORITIES**

Cases                                                                                          Pages


*Armstrong v. United States*, 756 F2d 1407, 1409 (9th Cir 1985)                27

*Barnett v. Sea Land Services, Inc.*, 875 F2d 741, 745 (9th Cir 1989)        27

*Barrios v. Pelham Marine, Inc.*, 796 F2d 128 (5th Cir 1986)                     15

*Bjaranson v. Botelho Shipping Corp.*, 873 F2d 1204 (1988)                        18, 24, 25

*Bueno v. United States,* 687 F2d 318, 320 (9th Cir 1983)                         9, 14

*Canada v. Blain's Helicopters, Inc.*, 831 F2d 920, 925 (9th Cir 1987)       29

*Clay v. Daichi Shipping*, 74 FSupp 2d 665 (ED La 1999)                           17

*Haines v. Honolulu Shipyard, Inc.; United State of America*,                      18
125 FSupp 2d 1020 (2000)

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,                               28
896 F2d 1542, 1550-1 (9th Cir 1990)

*Hayes v. Hoyu Venture Line S.A.*, 1998 AMC 2614 (DC Alaska 1998)       17

*Howlett v. Birkdale Shipping Co., 512 US 92, 114 SCt 2057,*                      16
*129 LEd 2d  78 (1994)*

*Irvin v. U.S. Military Sealift Command*, 2003 U.S. Dist. LEXIS 8453          19
(Ed La 2003)

*Ludwig v. Pan Ocean Shipping*, 941 F2d 849, 851 (9th Cir 1991)            12

*Maffei v. Northern Ins. Co.*, 12 F3d 892, 897 (9th Cir 1993)                     11

*Martinez v. Korea Shipping Corp., Ltd.*, 903 F2d 606 (9th Cir 1990)        10, 11, 13
                                                                                                        18, 23, 24,
                                                                                                        25, 27

*Miller v. United States*, 587 F2d 991, 994 (9th Cir 1978)   27

*Moore v. MP. Howlett, Inc.*, 704 F2d 39, 43 (2nd Cir 1983)   15

*Ollstead v. Greenville Steamship Corp.*, 738 F2d 1049 (9th Cir 1984)   14
Cert. denied, 469 US 1197, 105 SCt 982, 83 LWd2d 984 (1985)

*Pledger v. Phil Guilbeau Offshore, Inc.*, civil no. 02-1796, Section L(1),   17
2003 U.S. Dist. LEXIS 741 (ED La 2003)

*Scindia Steam Navigation Company, Ltd. v. De Los Santos*,   3, 9, 13, 14,
451 US 156, 68 Led 2d 1, 101 SCt 1614 (1981)   25, 30

*Subingsubing v. Reardon Smith Lines*, 682 F2d 779, 780 (9th Cir 1982)   10

*Taliercio v. Compania Expressa Lineas Argentina*,   13
761 F2d 126 (2nd Cir 1985)

*Theriot v. Bay Drilling Corporation*, 783 F2d 527, 535, 536 (5th Cir 1985)   15

*Thomas v. Newton International Enterprises,* 42 F3d 1266 (9th Cir 1994)   10, 11, 12,
   24, 25, 28

*United States v. First National Bank of Circle*, 652 f2D 882, 887   24
(9th Cir 1981)

*United States v. Prantil*, 764 F2d 548, 522-3 (9th Cir 1985)   29

*United States v. Savakhom*, 186 F3d 928, 943 (9th Cir 1999)   29

Other Authorities   Pages

33 USC Sec. 905(b), the Longshore Act   3