```
           UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF HAWAII

BERT MEYER,                        )
                                   )
          Plaintiff,               )
                                   )
vs.                                )  No.  04-00049 H6/BMK
                                   )
MATSON NAVIGATION COMPANY,         )
INC.,                              )
                                   )
          Defendant.               )
                                   )
```

DEPOSITION OF PAUL A. LONDYNSKY

DATE:         May 12, 2005

TIME:         9:31 a.m.

LOCATION:     MATSON NAVIGATION COMPANY

              555 12th Street

              Oakland, California

REPORTED BY:  Melissa Roen Williams, CSR, RPR

              Certified Shorthand Reporter

              License Number 12284

EXHIBIT A

1

DEPOSITION OF PAUL A. LONDYNSKY - 5/12/2005

```
 1    A    I was the Director of Environmental Affairs.
 2   And before that, the vessel manager. And before that, I
 3   was chief officer on various Matson vessels.
 4    Q    Okay. And what are your current job duties?
 5    A    We have oversight of the safety and
 6   environmental quality, security, emergency response,
 7   crisis management, and spill response functions for the
 8   company.
 9    Q    Okay. And that would be -- that would include
10   the Matson Navigation vessels?
11    A    Yes.
12    Q    Okay. What about shoreside terminals?
13    A    We establish policy for the shoreside
14   terminals. But when you're dealing with a shoreside
15   function, such as a terminal where you have a
16   significant number of employees really, safety becomes a
17   line function, not an administrative function. So we
18   have had our line superintendents actually being the
19   safety officers, if you will, for the terminal.
20    Q    When you say line superintendents, what
21   exactly do you mean by that?
22    A    The supervisor personnel of the terminal.
23    Q    The stevedore?
24    A    The management employees who manage or
25   supervise the stevedores.
                                                          6
```

```
 1    Q    Would you agree that Exhibit 1 is -- was Keahi
 2   Birch's job description at that time?
 3    A    It appears that way, yes.
 4    Q    Okay. And the document was drafted by you on
 5   June 6, 2000; is that right?
 6    A    Apparently.
 7    Q    Do you recall drafting the document?
 8    A    I do recall drafting the document.
 9    Q    Okay. Where it says specific
10   accountabilities, do you see where it has number three,
11   it says, "Coordinate Matson's terminal safety program in
12   Hawaii with all applicable accident prevention programs,
13   conduct periodic safety inspections at the terminals,
14   and disseminate pertinent information to applicable
15   departments"?
16         Did those duties cover both the vessels and
17   the shoreside part of the terminal?
18    A    No.
19    Q    What do they cover?
20    A    The shoreside part of the terminal.
21    Q    Okay. I'm going to mark the Matson Terminals,
22   Inc., accident report from Mr. Meyer's accident as
23   Exhibit 2 and put a copy of it in front of you.
24              (Whereupon, Exhibit 2 was marked for
25               identification.)
                                                          8
```

```
 1    Q    Okay. Is your office in Oakland now?
 2    A    Yes.
 3    Q    Was Keahi Birch the Matson Navigation safety
 4   manager in Honolulu on October 1, 2002?
 5    A    She was the Manager of Safety and
 6   Environmental Affairs.
 7    Q    Okay. And did she report to you at that time?
 8    A    She reported partly to me.
 9    Q    And who else did she report to?
10    A    To the vice president -- or excuse me,
11   President of Matson Terminals.
12    Q    Who is the President of Matson Terminals right
13   now?
14    A    Mr. Gary North.
15    Q    And was he the President of Matson Terminals
16   on October 1, 2002?
17    A    Yes.
18    Q    We'll call this Exhibit 1 to your deposition.
19   This is a document that has been produced to me by
20   Matson in this lawsuit as being Keahi Birch's job
21   description as of October 1, 2002. I use that date,
22   because that's the date of the accident.
23              (Whereupon, Exhibit 1 was marked for
24               identification.)
25   BY MR. EASLEY:
                                                          7
```

```
 1   BY MR. EASLEY:
 2    Q    Have you ever seen that document in front of
 3   you before?
 4    A    No.
 5    Q    Okay. Do you see where there's a stamp at the
 6   top that says, "Received October 2, 2002"?
 7    A    Yes.
 8    Q    And then there's a signature. It says "by,"
 9   and then there's a signature.
10         Do you see that?
11    A    Yes, sir.
12    Q    Do you know whose signature that is?
13    A    Yes.
14    Q    Who?
15    A    It's apparently Jimmy Zane.
16    Q    Who is Jimmy Zane?
17    A    Jimmy Zane is the safety manager for McCabe,
18   Hamilton & Renny in Honolulu.
19    Q    When Matson Terminals, Inc., prepares accident
20   reports such as the one that's Exhibit 2, what is the
21   routing of those reports?
22    A    Well, at this time --
23    Q    Well, actually, to be fair about the question,
24   as of the time of Mr. Meyer's accident.
25    A    My understanding is that the supervisor is
                                                          9
```

3 (Pages 6 to 9)

DEPOSITION OF PAUL A. LONDYNSKY - 5/12/2005

---

**Page 18**

1  Q  Which ones of those did you review?
2  A  Three of them. Do we have -- they're
3  somewhere. One was dealing with stock tenders. Another
4  one was dealing with -- what was the other one dealing
5  with? I'm having trouble recalling.
6  Q  Are those documents part of the Matson
7  Navigation Company Safety and Pollution Manual?
8  A  Several of them were.
9  Q  Were there any that were not part of the --
10 A  Yes.
11 Q  Which ones were not part of the Safety and
12 Pollution Manual?
13 A  The stock tender one.
14        (Whereupon, Exhibit 5 was marked for
15         identification.)
16 BY MR. EASLEY:
17 Q  I've put another document in front of you that
18 I've marked Exhibit 5. It says Matson Navigation
19 Company Safety and Pollution Manual. Title: Working
20 Aloft. Effective date: July 5, 2000. And it's number
21 C-01-190.
22    And did you draft this document?
23 A  No.
24 Q  Okay. At the top it says, "Prepared by P.A.
25 Londynsky."

**Page 19**

1     If you didn't draft it, why does it say,
2  "Prepared by P.A. Londynsky"?
3  A  Well, Mr. Easley for the same reason that you
4  might have an associate prepare a brief for you, I have
5  a staff of people that work for me, and these go out
6  under my signature.
7  Q  Okay. And was Exhibit 5 in effect as of
8  October 1st, 2002?
9  A  Well, again, we have a lot of revisions on a
10 lot of different procedures, so I have no personal
11 knowledge that this particular document was the one that
12 was in effect.
13    Apparently -- it looks like it could be, but I
14 don't know for sure.
15 Q  To your knowledge, did the crew of the LIHUE
16 prepare any documents concerning Mr. Meyer's accident?
17 A  I don't have any knowledge of them.
18 Q  Is Matson Terminals a wholly owned subsidiary
19 of Matson Navigation?
20 A  I don't know what the legal relationship is
21 between the two companies.
22 Q  Your job title, which is Director of Safety,
23 Quality & Environmental Affairs, are you the director of
24 safety, quality and environmental affairs for both
25 Matson Navigation and Matson Terminals, Inc.?

**Page 20**

1  A  For Matson Navigation and subsidiaries.
2  Q  Okay. Would that include Matson Terminals,
3  Inc.?
4  A  Well, we take it that it does, yes.
5  Q  Now, Keahi Birch is no longer the Matson
6  Navigation safety manager in Honolulu; is that right?
7  A  That's correct.
8  Q  Who was she replaced by?
9  A  There's an open position to handle the safety
10 function in Londynsky. At the moment I have sent
11 Jonathan Sims, our current Manager of Safety and
12 Compliance, to fill that position until we can recruit a
13 candidate.
14 Q  Is that S-i-m-s?
15 A  Yes.
16 Q  So he's filling that position on an interim
17 basis?
18 A  Yes.
19 Q  Is he based in Oakland or was he based in
20 Oakland?
21 A  He had been -- he's permanently domiciled in
22 Oakland. He's on a six-month temporary assignment to
23 Honolulu.
24 Q  Does Matson Terminals, Inc. have a safety
25 manager in Honolulu right now?

**Page 21**

1  A  Well, that's the -- that's the position that
2  Jonathan is filling for Matson Terminals.
3  Q  Okay. Who's his employer?
4  A  Again, he's still employed by Matson
5  Navigation, but he has been detailed to be the safety
6  manager at Sand Island for Matson Terminals for the next
7  six months.
8  Q  When an accident occurs on a Matson vessel, is
9  some type of report prepared pursuant to the ISM Safety
10 Code?
11 A  If it's an accident that involves ships
12 personnel or that the vessel is aware of, then the ship
13 will generally prepare an accident report.
14 Q  Did that occur in Mr. Meyer's case?
15 A  I don't know.
16 Q  Who would know?
17 A  I would assume that the claims department
18 would know.
19 Q  Which claims department?
20 A  Matson.
21 Q  Matson Navigation?
22 A  Yeah.
23 Q  Are you what's called the ISM designated
24 person for Matson Navigation?
25 A  Yes.

6 (Pages 18 to 21)

DEPOSITION OF PAUL A. LONDYNSKY - 5/12/2005

```
 1
 2
 3      Pursuant to SECTION 2025(q)(1) of the Code of Civil
 4  Procedure of the State of California, I hereby certify
 5  that I have read my deposition, made those changes and
 6  corrections I deem necessary, and approve the same as
 7  now written.
 8      Dated this ____ day of _____, 2004.
 9
10
11
12
13
14                      _____
                              Under Penalty of Perjury
15
16
17
18
19
20
21
22
23
24
25
                                    34
```

```
 1  STATE OF CALIFORNIA   )
                          ) ss.
 2  COUNTY OF SANTA CLARA )
 3
 4      I, MELISSA ROEN WILLIAMS, Certified Shorthand
 5  Reporter for the State of California, hereby certify
 6  that the witness in the foregoing deposition,
 7           PAUL A. LONDYNSKY,
 8  was by me duly sworn to tell the truth, the whole truth,
 9  and nothing but the truth in the within-entitled cause,
10  and that the foregoing is a full, true, and correct
11  transcript of the proceedings had at the taking of said
12  deposition, reported to the best of my ability and
13  transcribed under my direction.
14
15
16  Date:  May 29, 2005      _____
                                    CSR NO. 12284
17
18
19
20
21
22
23
24
25
                                    35
```

10 (Pages 34 to 35)

PULONE & STROMBERG, INC.   800-200-1252
COURT REPORTING & VIDEOCONFERENCING SERVICES