# DEPOSITION OF BERT MEYER TAKEN 08/31/04

*Page 1 to Page 139*

CONDENSED TRANSCRIPT AND CONCORDANCE
PREPARED BY:

# RALPH ROSENBERG COURT REPORTERS, INC.
1001 Bishop Street
2460 Pacific Tower
Honolulu, HI 96813
Phone: (808) 524-2090
FAX: (808) 524-2596

EXHIBIT D

## Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

BERT MEYER,           ) CIVIL NO. 04-00049 HG/BMK
                     ) (In Admiralty)
        Plaintiff,    )
                     )
    vs.              )
                     )
MATSON NAVIGATION COMPANY, )
INC.,                )
                     )
        Defendant.    )
_____)

DEPOSITION OF BERT MEYER

Taken on behalf of the Defendant MATSON NAVIGATION COMPANY, INC., at the law offices of Goodsill, Anderson, Quinn & Stifel, 1099 Alakea Street, 1800 Ali'i Place, Honolulu, Hawaii 96813, commencing at 9:50 a.m., on Tuesday, August 31, 2004, pursuant to Notice.

BEFORE: MYRLA R. SEGAWA, CSR No. 397
        Notary Public, State of Hawaii

## Page 2

APPEARANCES:

For Plaintiff BERT METER:

    PRESTON EASLEY, ESQ.
    2500 Via Cabrillo Marina, Suite 106
    San Pedro, California 90731-7724

For Defendant MATSON NAVIGATION COMPANY, INC.:
    JOHN R. LACY, ESQ.
    Goodsill, Anderson, Quinn
      & Stifel
    1800 Alii Place
    1099 Alakea Street
    Honolulu, Hawaii 96813

## Page 3

INDEX

EXAMINATION BY:                              PAGE
    MR. LACY..................................4

EXHIBITS MARKED FOR IDENTIFICATION           PAGE
1    Accident report                         8
2    Colored photograph                      79
3    Colored photograph                      82
4    Colored photograph                      87
5    Colored photograph                      90
6    Colored photograph                      92
7    Colored photograph                      94
8    Colored photograph                      95
9    Colored photograph                      96
10   Colored photograph                      97
11   Colored photograph                      98
12   Colored photograph                      99
13   Colored photograph                      99
14   Longshore claim form                    122
15   Responses to Interrogatories            132

## Page 4

(Disclosure presented to all counsel.)

BERT MEYER,

called as a witness by and on behalf of the Defendant, having been first duly sworn to tell the truth, the whole truth and nothing but the truth, was examined and testified as follows:

EXAMINATION

BY MR. LACY:

Q    Please state your name.

A    Bert Meyer.

Q    And Mr. Meyer, your address?

A    91-1023 Lipo Street, Kapolei, Hawaii, 96707.

Q    And Mr. Meyer, what is your current age?

A    Thirty-seven.

Q    Mr. Meyer, have you had your deposition taken before?

A    No.

Q    Okay. I'm sure you've talked with Mr. Easley about the process, but let me go over a few of the ground rules. One, I'm going to be asking you some questions today that go back several years. If you can't recall something or don't recall, please tell me that. Don't guess or speculate. Okay?

A    Yes.

Page 13

(1) reports before?
(2) A   Yes.
(3) Q   On how many occasions?
(4) A   One.
(5) Q   And what kind of an accident were you
(6) involved in previously?
(7) A   I had my thumb jammed in a doorjamb of a
(8) car.
(9) Q   And did you lose any time from work?
(10) A   No.
(11) Q   Before preparing this report on October 1,
(12) 2002, did you discuss what was to be included in the
(13) report with anyone?
(14) A   No.
(15) Q   Under about two-thirds of the middle of the
(16) page, it says witnesses to accident. You have none?
(17) A   Yes.
(18) Q   Is that correct?
(19) A   Yes.
(20) Q   So to your knowledge no one saw what
(21) happened?
(22) A   Yes.
(23) Q   Let me ask you differently. Did anyone see
(24) the accident happen?
(25) A   No.

Page 14

(1) Q   Did you visit the accident scene with
(2) Mr. Antone?
(3) A   No.
(4) Q   Do you recall him asking you any questions
(5) about it?
(6) A   No.
(7) Q   Do you recall any discussion with him?
(8) A   No.
(9) Q   Did you actually see him that night?
(10) A   Yes.
(11) Q   Okay. And did you physically hand him the
(12) form?
(13) A   Yes.
(14) Q   Did you discuss anything with him when you
(15) handed him the form?
(16) A   No.
(17) Q   So you didn't say like I had this incident,
(18) and I just wanted to fill out this report or not even
(19) a casual comment?
(20) A   No.
(21) Q   Did you speak with anyone else from Matson
(22) that evening, Matson Terminals I should say?
(23) A   I don't understand.
(24) Q   Well, after this accident happened, you
(25) handed Mr. Antone the form. Did you speak with

Page 15

(1) anybody else that you knew was employed by Matson
(2) Terminals about the accident?
(3) A   No.
(4) Q   Do you know Dan Farney?
(5) A   Yes.
(6) Q   Did you see Dan Farney that night?
(7) A   At the time of the accident.
(8) Q   Did you ever speak with him about the
(9) accident?
(10) A   Yes, I did.
(11) Q   What do you recall discussing with
(12) Mr. Farney?
(13) A   Well, he helped me get out of the hole, and
(14) I needed to -- I asked him if I needed to fill out an
(15) accident report.
(16) Q   What did he say?
(17) A   Yes.
(18) Q   Where was Mr. Farney when you had the
(19) accident?
(20) A   I don't know.
(21) Q   And when you say he helped you out of the
(22) hole, what did he do?
(23) A   He pushed up on my left leg.
(24) Q   And do you recall any details of the
(25) discussion you had with Mr. Farney when he helped you

Page 16

(1) out of the hole?
(2) A   When he first came up, he was pretty funny.
(3) He had mentioned he wished he had a camera because no
(4) one is going to believe how I looked.
(5) Q   And did you know what he meant by how you
(6) looked?
(7) A   No.
(8) Q   Okay. And then what do you recall being
(9) said after that?
(10) A   I don't recall.
(11) Q   Did you tell Mr. Farney that you had
(12) injured yourself?
(13) A   I told him I was hurt.
(14) Q   You told him you were hurt?
(15) A   Yes.
(16) Q   Did you tell him anything as far as
(17) specifics about where you were hurt?
(18) A   No.
(19) Q   And what did you mean when you said you
(20) were hurt?
(21) A   I'm just numb.
(22) Q   Where were you numb?
(23) A   My whole left side.
(24) Q   So from your toe all the way to the left
(25) side of your body?

Page 53

1  A  No, I can't recall.
2  Q  I know you were telling me that the tenders
3  did have lights in the back. Where were the lights
4  in relationship to the containers that were behind
5  you?
6  A  I don't recall.
7  Q  Did you have any problems in seeing the
8  grate?
9  A  No.
10 Q  Were you able to see the padeye?
11 A  Yes.
12 Q  Now, you were describing that you stepped
13 on a padeye in order to get as close as you could to
14 the container?
15 A  Yes.
16 Q  And which foot did you put on the padeye?
17 A  My left.
18 Q  And where was your right foot?
19 A  On the grate.
20 Q  So you kind of stepped forward?
21 A  Yes.
22 Q  Did you ever put all of your weight on your
23 left foot?
24 A  I don't recall.
25 Q  Did you ever bring your right foot up to

Page 54

1  the top of the hatch cover?
2  A  No.
3  Q  Did it remain on the grate at all times?
4  A  Yes.
5  Q  Now, was there any kind of foreign
6  substance on the grate?
7  A  Yes.
8  Q  And what?
9  A  I believe it was the animals' urine and
10 feces all over everything. There was some slime and
11 some solid waste here and there.
12 Q  Now, had you seen the feces on the grate?
13 A  Yes.
14 Q  And where did you see the feces?
15 A  It was on the grate, the hatch cover.
16 Q  Okay. And you're talking about the grate
17 where?
18 A  The catwalk.
19 Q  Okay. So was it all along the catwalk on
20 row 15?
21 A  The slime is everywhere. There's solid
22 waste here and there.
23 Q  And when you refer to slime, what are you
24 referring to?
25 A  Just everything mixed together in a liquid

Page 55

1  form.
2  Q  And do you know how it had got up to the
3  grate?
4  A  Well, the containers are right there and
5  they just swirl around in the air and then they do
6  tend to shoot out. I mean, the animals are right up
7  against the opening of the containers.
8  Q  Were there openings in the containers that
9  were along the grate level?
10 A  Yes.
11 Q  On row 15?
12 A  Yes, I believe there was.
13 Q  Now, did you report seeing the slime in
14 some places the feces on the grate to anyone?
15 A  Yes.
16 Q  Who?
17 A  I complained about it to Danny Farney.
18 Q  And was this before or after the incident?
19 A  While we were walking up when we first got
20 up on the ship.
21 Q  I'm sorry?
22 A  When we first got up on the ship.
23 Q  So you told Danny Farney specifically that
24 there was feces and slime stuff on the grate?
25 A  Usually when a ship comes in, you know,

Page 56

1  it's there and it's everywhere on the deck when
2  you're coming up there.
3  Q  Okay. But particularly on this night of
4  October 1, do you recall specifically pointing it out
5  to Danny?
6  A  No, not pointing it out. Just telling him.
7  Q  And what did you tell him?
8  A  That there's basically crap everywhere.
9  Q  And what did he say?
10 A  It's just a joke. He laughed.
11 Q  Do you know anything about whether or not
12 the tenders wash down the area before the ship comes
13 in to the harbor?
14 A  It doesn't seem like they do.
15 Q  Have you ever talked with any of the
16 tenders about what is done about when the ship comes
17 into the harbor?
18 A  No, I don't.
19 Q  As you're walking on the grate that night,
20 did you lose your footing at any time before this
21 incident?
22 A  Not that I can recall.
23 Q  So when you told Danny about the slime and
24 feces, you say he laughed?
25 A  Yeah, everybody laughs who gets stuck in

Page 137

(1) those falls?
(2) A  No.
(3)     MR. LACY: Okay. Mr. Meyer, that's
(4) all questions I have. Thank you.
(5)     MR. EASLEY: Why don't you send me a
(6) copy of the transcript to my office in San Pedro, and
(7) I'll have him sign and correct the copy that I
(8) purchase. Is that agreeable, Mr. Lacy?
(9)     MR. LACY: That's fine.
(10)    (Deposition concluded at 1:12 p.m.)

Page 138

(1)    I, BERT MEYER, do hereby certify that I
(2) have read the foregoing pages 1 through 137,
(3) inclusive, and corrections, if any, were noted by me;
(4) and that same is now a true and correct transcript of
(5) my testimony.
(6)    DATED: Honolulu, Hawaii,_____.
(9)    _____
       BERT MEYER
(12) Signed before me this _____
(13) day of _____, 2004.
(15) _____

(23) Case: BERT MEYER vs. MATSON NAVIGATION
     Civil No.: 04-00049 HG.BMK
(24) Deposition Dated: August 31, 2004
     Taken By: Myrla R. Segawa

Page 139

(1)    C E R T I F I C A T E
(2) STATE OF HAWAII    )
                       ) SS:
(3) CITY AND COUNTY OF HONOLULU.)
(4)    I, MYRLA R. SEGAWA, Notary Public, State of
(5) Hawaii, do hereby certify:
(6)    That on Tuesday, August 31, 2004, at
(7) 9:50 a.m., appeared before me BERT MEYER, the witness
(8) whose deposition is contained herein; that prior to
(9) being examined he was by me duly sworn;
(10)   That the deposition was taken down by me in
(11) machine shorthand and was thereafter reduced to
(12) typewriting under my supervision; that the foregoing
(13) represents, to the best of my ability, a true and
(14) correct transcript of the proceedings had in the
(15) foregoing matter.
(16)   I further certify that I am not an attorney
(17) for any of the parties hereto, nor in any way
(18) concerned with the cause.
(19)   DATED this 13th day of September, 2004, in
(20) Honolulu, Hawaii.

(23)    _____
        MYRLA R. SEGAWA, CSR NO. 397
        Notary Public, State of Hawaii
(24)    My Commission Exp: 1-27-2005