GOODSILL ANDERSON QUINN & STIFEL
A LIMITED LIABILITY LAW PARTNERSHIP LLP

JOHN R. LACY                 1397-0
    jlacy@goodsill.com
RANDOLF L.M. BALDEMOR    7421-0
    rbaldemor@goodsill.com
Alii Place, Suite 1800
1099 Alakea Street
Honolulu, Hawaii 96813
Telephone: (808) 547-5600
Facsimile: (808) 547-5880

Attorneys for Defendant
MATSON NAVIGATION COMPANY, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BERT MEYER,<br><br>        Plaintiff,<br><br>vs.<br><br>MATSON NAVIGATION COMPANY, INC.; and PACIFIC LIVESTOCK, INC.,<br><br>        Defendants. | CIVIL NO. 1:04cv-00049 JMS-BMK (In Admiralty)<br><br>DEFENDANT MATSON NAVIGATION COMPANY, INC.'S SEPARATE AND CONCISE STATEMENT OF FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST PACIFIC LIVESTOCK, INC.; DECLARATION OF STEVE RUBIN; EXHIBITS "A"-"E"; DECLARATION OF JOHN ROBINETTE; EXHIBIT "F"; DECLARATION OF RANDOLF L.M. BALDEMOR; EXHIBITS "1"-"8"; CERTIFICATE OF SERVICE<br><br>Non-Jury Trial: June 14, 2006<br>Judge: Hon. Michael Seabright |

1233069.1

**DEFENDANT MATSON NAVIGATION COMPANY, INC.'S SEPARATE AND CONCISE STATEMENT OF FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST PACIFIC LIVESTOCK, INC.**

Pursuant to Local Rule 56.1, DEFENDANT MATSON NAVIGATION COMPANY, INC. (hereinafter referred to as "Matson Navigation") hereby submits its Separate and Concise Statement of Facts in Support of Motion for Summary Judgment, filed concurrently herewith.

| MATERIAL FACTS | FACTUAL SUPPORT |
|---|---|
| 1. Matson Navigation is the owner of the vessel, *S/S Lihue*. | Exh. 1, at ¶5; Exh. 2, at ¶8. |
| 2. Co-Defendant Pacific Livestock, Inc. ("Pacific Livestock") shipped hogs aboard the S/S Lihue ("*Lihue*") on October 1, 2002. | *See* Exhs. A, B, C, D. |
| 3. In connection with the October 1, 2002, Pacific Livestock hired two livestock tenders to accompany and tend to the hogs. | *See* Defendant Matson Navigation Company, Inc.'s Responses to Plaintiff's Interrogatories Set No. 1, attached to Baldemor Decl. as Exh. 3, at ¶5; Exh. 1, at ¶8. |
| 4. On October 1, 2002, Matson's tariffs were filed with the Surface Transportation Board. | Declaration of Steve Rubin ("Rubin Decl."), at ¶5. |
| 5. On October 1, 2002, Pacific Livestock's shipments aboard the *Lihue* were governed by Freight Tariff No. 14-F, STB MATS No. 34 ("Freight Tariff No. 14-F"). | *See* Exhs. A, B, C, D. |

1233069.1

| MATERIAL FACTS | FACTUAL SUPPORT |
|---|---|
| 6. Page 118-B of Freight Tariff No. 14-F – relating to hogs – stated that "[l]ivestock attendants must comply with Matson rules and regulations governing their conduct and duties while in Mayson yards or Matson vessels." | *See* Exh. E. |
| 7. Page 118-B of Freight Tariff No. 14-F – relating to hogs – stated that:<br><br>"Shipper shall indemnify Matson and hold it harmless in respect of any injury or death of any person; any loss or damage to cargo, other property or the vessel; or any other loss . . . or expense, including, but not limited to, lost profits and attorneys' fees, caused by the acts or omissions of any livestock attendant provided by the shipper. . . ." | *See* Exh. E. |
| 8. Pursuant to law, Matson was required to state this language in its tariff, which is filed with the Surface Transportation Board, because it relates to the rate or charges imposed upon the shipper and sets forth the terms of the service provided by Matson to the shipper. | Rubin Decl., at ¶6. |
| 9. The provision from the tariff (cited above) relates to the rate charged by Matson because the rate is commensurate with the service provided, and Matson's understanding of the agreement is that the shipper hires livestock attendants and indemnifies and holds Matson harmless for their conduct. With respect to the commodity in question (i.e. hogs), the indemnity provided by the shipper would have been a component, among other things, of the rate charged. | Rubin Decl., at ¶7. |
| 10. On and immediately prior to October 1, 2002, Matson's tariffs would have been on file and available for inspection at each of Matson's offices. In addition, if customers were unable to inspect the tariffs at Matson's offices, they could request that a copy of the tariff be provided to the customer by fax, mail or subscription. On October 1, 2002, Matson's tariffs were also available on the internet at Matson's website, www.matson.com. | Rubin Decl., at ¶8. |

2

| MATERIAL FACTS | FACTUAL SUPPORT |
|---|---|
| 11. Typically, a shipper reserves space aboard Matson's vessels by contacting Matson and providing the customer service agent with information, such as the intended destination, intended date of arrival, vessel, type of cargo, size of cargo, and any special instructions. The information provided by the customer is used to complete the bill of lading governing the shipment. The bill of lading and a freight bill are subsequently issued and provided by mail, fax or through the website to the shipper, and they collectively state the terms of carriage. If the shipper has any questions concerning the shipment, the shipper can always call the customer service agent prior to and after the cargo has been shipped. | Rubin Decl., at ¶9. |
| 12. Pacific Livestock has shipped livestock aboard Matson's vessels since as early as 1989, and perhaps longer. | Rubin Decl., at ¶10. |
| 13. According to Matson's practices, on each occasion that Pacific Livestock would have shipped cargo aboard Matson's vessels, the terms of shipment would be determined by a bill of lading issued by Matson to Pacific Livestock and applicable tariffs, which are incorporated by reference in the bill of lading. In connection with the shipments, Pacific Livestock would also have received freight bills which, among other things, states the cost of shipment and applicable tariffs. | Rubin Decl., at ¶10. |
| 14. With respect to the voyage in question, livestock tenders were required to comply with rules and regulations provided by the Chief Mate. | *See* Exh. F. |
| 15. When the livestock tenders came aboard the *Lihue* in Oakland, California, for the voyage in question, Matson gave the livestock tenders instructions to wash down the decks. | *See* Exh. 4, at pp. 24:4-12; 24:23-25:23. |
| 16. Matson Navigation Company Policy Number E-01-040, 4.11, provides that livestock tenders "shall attach drain hoses and wash down containers/trailers on a daily basis when authorized to do so by the Chief Officer." | *See* Exh. F. |

3

| MATERIAL FACTS | FACTUAL SUPPORT |
|---|---|
| 17. Meyer alleges that he was injured as a result of slipping on pig urine and feces. | *See* Exh. 5, at p. 6; Exh. 6, at pp. 1-2; Exh. 1, at ¶8; Exh. 7, at pp. 102:5-103:3. |
| 18. According to Meyer's expert, the precipitating cause of the accident was the presence of animal waste on the padeye in question. | Exh. 8; *see* Exh. 9, at pp. 187-18-188:13. |

DATED: Honolulu, Hawaii, February 14, 2006.

/s/ Randolf L.M. Baldemor
JOHN R. LACY
RANDOLF L.M. BALDEMOR

Attorneys for Defendant
MATSON NAVIGATION COMPANY, INC.