IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BERT MEYER,<br><br>          Plaintiff,<br><br>vs.<br><br>MATSON NAVIGATION COMPANY, INC.; and PACIFIC LIVESTOCK, INC.,<br><br>          Defendants. | CIVIL NO. 1:04cv 00049 JMS-BMK<br>(In Admiralty)<br><br>DECLARATION OF STEVE RUBIN, EXHIBITS "A"-"E" |

### DECLARATION OF STEVE RUBIN

I, STEVE RUBIN, declare:

1. I am employed by Matson Navigation Company, Inc. ("Matson") as General Manager, Pricing, and, in such capacity, have personal knowledge of the matters stated in this declaration.

2. In my capacity as General Manager, Pricing, I am responsible for rate-making, tariff publishing and compliance.

3. Attached hereto as Exhibits "A" and "B" are true and correct copies of the front page of Pacific Livestock's bills of lading governing its shipments aboard the *SS Lihue* on October 1, 2002.

1229271.2

4. Attached hereto as Exhibits "C" and "D" are true and correct copies of the front page of the freight bills governing Pacific Livestock's respective shipments aboard the SS Lihue on October 1, 2002.

5. On October 1, 2002, Matson's tariffs were filed with the Surface Transportation Board.

6. Attached hereto as Exhibit "E" is a true and correct copy of pertinent portions of Freight Bill Tariff 14-F, which was in effect on October 1, 2002. Freight Tariff No. 14-F, STB MATS No. 34, provides at note 6 on page 118-B that:

> Shipper shall indemnify Matson and hold it harmless in respect of any injury or death of any person; any loss or damage to cargo, other property or the vessel; or any other loss . . . or expenses, including, but not limited to, lost profits and attorneys' fees, caused by the acts or omissions of any livestock attendant provided by the shipper.

Pursuant to law, Matson was required to state this language in its tariff, which is filed with the Surface Transportation Board, because it relates to the rate or charges imposed upon the shipper and sets forth the terms of the service provided by Matson to the shipper.

7. The provision from the tariff (cited above) relates to the rate charged by Matson because the rate is commensurate with the service provided,

and Matson's understanding of the agreement is that the shipper hires livestock attendants and indemnifies and holds Matson harmless for their conduct. With respect to the commodity in question (i.e. hogs), the indemnity provided by the shipper would have been a component, among other things, of the rate charged. Pacific Livestock had sufficient opportunity to become aware of Matson's tariffs. On and immediately prior to October 1, 2002, Matson's tariffs would have been on file and available for inspection at each of Matson's offices. In addition, if customers were unable to inspect the tariffs at Matson's offices, they could request that a copy of the tariff be provided to the customer by fax, mail or subscription. On October 1, 2002, Matson's tariffs were also available on the internet at Matson's website, www.matson.com.

8. Typically, a shipper reserves space aboard Matson's vessels by contacting Matson and providing the customer service agent with information, such as the intended destination, intended date of arrival, vessel, type of cargo, size of cargo, and any special instructions. The information provided by the customer is used to complete the bill of lading governing the shipment. The bill of lading and a freight bill are subsequently issued and provided by mail, fax or through the website to the shipper, and they collectively state the terms of carriage. If the shipper has any questions concerning the shipment, the shipper can always call the customer service agent prior to and after the cargo has been shipped.

9. Pacific Livestock has shipped livestock aboard Matson's vessels since as early as 1989, and perhaps longer. According to Matson's practices, on each occasion that Pacific Livestock would have shipped cargo aboard Matson's vessels, the terms of shipment would be determined by a bill of lading issued by Matson to Pacific Livestock and applicable tariffs, which are incorporated by reference in the bill of lading. In connection with the shipments, Pacific Livestock would also have received freight bills which, among other things, states the cost of shipment and applicable tariffs. Based on this course of dealing, and particularly the fact that the bills of lading and freight bills governing Pacific Livestock's shipments aboard the SS Lihue on October 1, 2002 explicitly reference Freight Tariff No. 14-F, Pacific Livestock had reasonable notice that Freight Tariff No. 14-F was applicable and a reasonable opportunity to become informed about the tariff.

I declare the foregoing under penalty of perjury under the laws of the United States.

DATED: Honolulu, Hawaii, February 14, 2006.

/s/ Steve Rubin
STEVE RUBIN