HUGHES & TAOSAKA
Attorneys At Law, A Law Corporation

| | |
|---|---|
| ROY F. HUGHES | 1774-0 |
| THOMAS E. IRONS | 7876-0 |

Pauahi Tower, Suite 900
1001 Bishop Street
Honolulu, Hawaii         96813
Telephone No.            526-9744

Attorneys for Defendant
PACIFIC LIVESTOCK, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BERT MEYER, | Civil No.: CV04 00049 JMS-BMK |
| | (In Admiralty) |
| Plaintiff, | |
| | REPLY TO MATSON NAVIGATION |
| vs. | COMPANY, INC.'S MEMORANDUM |
| | IN OPPOSITION TO PACIFIC |
| MATSON NAVIGATION | LIVESTOCK, INC.'S MOTION FOR |
| COMPANY, INC.; and PACIFIC | LEAVE TO FILE THIRD-PARTY |
| LIVESTOCK, INC., | COMPLAINT FILED ON |
| | JANUARY 30, 2006; DECLARATION |
| Defendants. | OF THOMAS E. IRONS; EXHIBIT |
| | "I"; CERTIFICATE OF SERVICE |

REPLY TO MATSON NAVIGATION COMPANY, INC.'S MEMORANDUM
IN OPPOSITION TO PACIFIC LIVESTOCK, INC.'S MOTION FOR LEAVE
TO FILE THIRD-PARTY COMPLAINT FILED ON JANUARY 30, 2006

I. **INTRODUCTION**

Defendant Matson Navigation Company, Inc. ("Navigation") has filed

a memorandum in opposition to Defendant Pacific Livestock, Inc.'s ("PLI") motion

for leave to file a third-party complaint against Matson Terminals, Inc. ("Terminals") arguing on behalf of Terminals that PLI's motion is futile and untimely. PLI objects to the timing of filing.[1]

Navigation's motion should be denied since equitable and comparative fault principals apply, § 905(a) of the Longshore Worker's Compensation Act ("LHWCA") is not applicable, tort and/or implied contract based indemnity are or may be available to PLI based on factual issues developed or to be developed, and PLI's motion is neither untimely nor prejudicial to any party. For this, and the additional reasons set forth below, PLI asserts its motion is neither futile nor procedurally errant as to warrant a denial of its motion.

If the Court denies PLI's motion, PLI will be left without legal remedy against Terminals. In effect, PLI would be unfairly compelled to indemnify Terminals for that party's liability to Plaintiff Bert Meyer ("Plaintiff"). PLI understands that Terminals has paid its "liability" to Plaintiff under the LHWCA, but asserts that it should be allowed to bring a claim that that the lien created thereby should be reduced in proportion to Terminals comparative fault.

---

[1] Sentence 8 of FRCP 14(a) does not allow Navigation to file such a motion until a claim is made against Terminals. The Advisory Committee Notes to the 1963 Amendments to the Rule state "*After* the third-party is brought in the Court has the discretion to strike the third-party claim…" (Emphasis added). Furthermore, there are issues of fact yet to be determined as described below.

II.  **REPLY TO FACTS CONTAINED IN NAVIGATION'S MEMORANDUM IN OPPOSITION**

PLI objects to the addition of unnecessary facts by Navigation in its opposition. PLI feels compelled to briefly respond. Assuming animal waste was in fact present on the Lihue and it was a cause of Plaintiff's damages, Navigation cannot disclaim its duty to ensure animal waste was removed.

Navigation's Company policy Number E-01-040 provides

3.0  **Responsibility**
3.1  The Master is *responsible for ensuring* the Livestock Tender is qualified and *complies with this procedure.*
4.0  **Procedure**
4.11  Daily washdown - The Livestock Tender shall attach drain hoses and *washdown containers/trailers* on a daily basis *when authorized to do so by the Chief Officer.* (Emphasis added). *See* Exhibit K, to Navigation's Memorandum in Opposition.

PLI's motion for leave does not require PLI to raise all of the possible bases upon which Terminals may be liable to PLI for Plaintiff's damages.[2] Further, PLI disputes Navigation's assertion that illumination is not at issue in this case and objects to its attempt to downplay the role of the "gap".

III.  **PLI'S MOTION IS NOT FUTILE**

A.  <u>Comparative fault and equitable principals apply to any negligence claims by or against PLI on the one hand, and Terminals, Navigation and Plaintiff on the other.</u>

---

[2] The Pacific Marine Safety Code 2002 Revision contains rules which, if Plaintiff's factual account is true, provide further support that Terminals may be liable to PLI. Rules 301, 312, 323, 353, 401, 406, 503 and 504 are attached as Exhibit "I" to the Declaration of Thomas Irons.

The modern trend with regard to tort claims in admiralty is toward apportioning liability based on pure comparative fault. United States v. Reliable Transfer Co., (adopting a rule that damages in an admiralty suit be assessed on the basis of proportionate fault) 421 U.S. 397, 409 (1975). Maritime negligence claims apply comparative fault principles. Pope & Talbot, Inc. v. Hawn., 346 U.S. 406, 408-409 (1953).

The Ninth Circuit has recognized that comparative fault principals of Reliable Transfer achieve the "just and equitable allocation of damages". See Knight v. Alaska Trawl Fisheries, Inc., 154 F.3d 1042, 1046 (9th Cir. 1998). See also McDermott, Inc. v. AmClyde & River Don Castings, Ltd., 511 U.S. 202, 204 (1994), which recognized and applied the comparative fault approach in Reliable Transfer ; and Smith & Kelly Co. v. S/S Concordia TADJ, 718 F.2d 1022, 1030 (11th Cir. 1983) in support of the application of comparative fault.

Comparative fault is consistent with the inapplicability of assumption of risk and last clear chance in admiralty. Reliable Transfer, 421 U.S. 397 (1975); Prudential Lines, Inc. v. McAllister Bros., Inc., 801 F.2d 616 (2nd Cir. 1986).

A court which is properly exercising admiralty jurisdiction may proceed on or apply equitable principles and grant equitable relief. 2 C.J.S. Admiralty § 10. See Swift & Co. Packers v. Compania Colobinana Del Caribe, S.A., 339 U.S. 684 (1950)(in admiralty a court can, as a means of effecting a

claim, determine subsidiary or derivative equitable issues). Even under the LHWCA, an employer's right of reimbursement of its lien created by its payment of benefits is an equitable one. See The Etna, 138 F. 2d 37 (3d. Cir. 1943); Fontana V. Pennsylvania R. Co., 106 F. supp. 461 (S.D.N.Y. 1952). As such, it is ' a mere floating equity until a judgment or decree . . . is rendered. It is not an estate in the property, or a right to recover it, but is merely a charge thereon for the purpose of security.' 53 C.J.S. 'Liens §1, pp. 831-2. See Landon v. Lief Hoegh and Co., Inc., 521 F. 2d 756 (2d Cir. 1975). The stevedore's right to reimbursement, being equitable in nature, is subject to equitable regulation. 1A Benedict on Admiralty (6th ed. 1973), § 119, p. 6- 33. Therefore, **there is no equity** in the principle that Terminals should be allowed to enforce an unmitigated lien on a personal injury judgment which has or may be reduced because of any negligence on the part of Terminals. Clearly, if that lien is to be truly equitable, it must be diminished according to that negligence. Here, Plaintiff, Navigation, PLI and Terminals should be liable for their respective "fault" as ultimately determined by this Court. Such a result is both equitable and consistent with modern principals of admiralty.

    B.    <u>The express terms of the LHWCA plainly indicate that it does not apply to any claims by or against PLI on the one hand, and Terminals, Navigation and Plaintiff on the other.</u>

The LHWCA "lays down some procedural rules…**it does not create any cause of action against a third party, except with respect to claims against vessels**, or to define circumstances affecting the right of the insured claimant to prevail in any action that may be brought against a third party." (Emphasis added). Garvin v. Alumax of South Carolina, Inc., 787 F.2d 910, cert. denied, 479 U.S. 914, 917 (1986). Rather, a general maritime negligence cause of action exists against a non-vessel third party tortfeasor. Cf. Czaplicki v. The Hoegh Silvercloud, 351 U.S. 525, 527 (1956); see also Fruge v. Penrod Drilling Co., 918 F.2d 1163, 1164 (5th Cir. 1990). Negligence under general maritime law is essentially a failure to observe an ordinary degree of care which people of ordinary prudence would use under the same circumstances. Gallick v. Baltimore & Ohio Railroad Co., 372 U.S. 108 (1963). Therefore, PLI has a cause of action in negligence against Terminals.

Navigation argues § 905(a) of the LHWCA applies and bars PLI's motion. §905(a)[3] provides that the liability of an *employer* to its *employee* is

---

[3] Section 905(a) of the LHWCA provides, in relevant part

The liability of an *employer*…shall be exclusive and in place of all other liability *of such employer to the employee*, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee…may elect to claim compensation under the chapter,

6

limited as provided in the LHWCA, and speaks to certain legal relationship between an employer (Terminals) and an employee (Plaintiff). Therefore this section is inapplicable as to claims between PLI (a shipper) and Terminals. Those legal relationships, like those between PLI and Navigation, are governed by general maritime tort law.

§905(b)[4] of the LHWCA provides that if an injury to a longshoreman is caused by the negligence of a vessel, the longshoreman may bring an action against the vessel as a third party. Interestingly, in enacting § 905(b), Congress explicitly directed that that the **admiralty concept of comparative negligence should apply to such actions**. (Emphasis added). See S.Rep.No. 92-1125 at pages 10-12, cited in <u>Scindia Steam Navigation Co. v. De Los Santos</u> 451 U.S. 156 (1981) at footnote 13.

In sum , the LHWCA does not provide a basis to deny PLI's motion.

C. <u>Even if comparative fault does not apply, PLI has a right to indemnification from Terminals.</u>

---

or to maintain an action at law or in admiralty for damages on account of such injury or death…" (Emphasis added).

[4] Section 905(b) of the LHWCA provides, in relevant part,

In the event of injury to a person covered under this chapter caused by the *negligence of a vessel*, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action *against such vessel* as a third party in accordance with the provisions of section 933 of this title, and the *employer shall not be liable to the vessel* for such damages…(Emphasis added).

7

The federal courts generally recognize three sources of indemnity (1) express contracts, (2) implied warranties arising from contractual relationships, and (3) non-contractual indemnity ("tort indemnity") based on disparity of fault between co-defendants. Hardy v. Gulf Oil Corp., 949 F.2d 826, 833-34 (5th Cir. 1992).

Even in the absence of any contractual relationship, the obligation to indemnify may be imposed as a matter of equity. Ingersoll Milling Machine Co. v. M/v Bodena, 829 F.2d 293, 305 (2d Cir. 1987) ("Indemnity rests upon the principle that the true wrongdoer should bear the ultimate burden of payment"). In its support of comparative fault principals, Reliable Transfer indirectly recognizes that indemnity can be grounded in tort (as opposed to contract, express or implied).

Implied contracts are recognized in admiralty. See Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124 (1956).[5] Courts have allowed Ryan indemnity by a non-vessel owner against an employer. Olsen v. Shell Oil Co., 595 F.2d 1099, 1104 (5th Cir. 1979); Zapico v. Bucyrus-Erie, 579 F.2d 714, 721-22 (2d Cir. 1978) (noting the court would hesitate to hold that §905(b) would cut off Ryan indemnity to a non-vessel in cases where the employer was also negligent). Thus as a matter of law, PLI's motion should be granted as facts exist

---

[5] However, such warranties asserted by a vessel (here Navigation) against an employer (here Terminals) have been precluded by § 905(b) of the LHWCA.

and may further be developed that provide a basis for PLI's prospective claims against Terminals.

>   D.   Cases cited by Navigation do not compel denial of PLI's motion.

Navigation cites <u>Bucyrus</u> in support of its contention that § 905(a) bars any claim by PLI against Terminals. However, other courts have reached contrary results. See <u>Holden v. Placid Oil Co.</u>, 473 F. Supp. 1097 (1979) (claim of indemnity founded on tort brought by non-vessel against employer was not precluded by exclusivity provision of LHWCA where recovery of indemnity based on direct duty was not "on account of" employee's injury); and <u>Gould v. General Mills, Inc.</u>, 411 F. Supp. 1181 (W.D.N.Y. 1976). Under <u>Holden</u> and <u>Gould</u>, if facts to be developed show that Terminals owed PLI a direct tort duty or obligation, then indemnity is available. These cases **do not require** the existence of an express or implied contract between a vessel (Navigation) and an employer (Terminals).

The "employer" in <u>Bucyrus</u> asserted that it had no liability beyond that imposed by the LHWCA. The parties to <u>Bucyrus</u> were in agreement that contribution was not available. However, PLI asserts that to the extent a reduction or waiver in Terminal's lien is a form of contribution, the modern trend toward comparative fault and equitable principals **supports** such contribution.

Bucyrus noted that non-vessels can, under certain circumstances, assert indemnity against LHWCA employers under implied contracts and pursuant to Ryan. To the extent a reduction in Terminals' lien is a form of partial-indemnity, PLI asserts the existence or possible existence of such a contract here based on the relationship between PLI and Terminals at the times relevant to Plaintiff's alleged injury.

The Court in Bucyrus dismissed the crane manufacturer's implied contractual claim against the employer since the manufacturer was not found to be a third-party beneficiary of any implied contract between the vessel and employer in part because there was an insufficient factual basis concerning the relationship between the manufacturer and the vessel, specifically stating that "On these facts, we find that there is simply not enough of a **nexus** to imply an agreement by ACL (the employer/stevedore) to indemnify Bucyrus (manufacturer) based on the independent contract between the ship and stevedore". (Emphasis added). 579 F.2d 714, 723.[6] Here, it is alleged that PLI shipped the pigs and that PLI's animal tender(s) actually on board the Lihue during the relevant period were to ensure that any waste was cleaned up or remedied. PLI's involvement was thus much more direct and immediate than the manufacturer in Bucyrus in that Plaintiff asserts

---

[6] The Bucyrus court references Williams v. Pennsylvania R.R. Co, 313 F.2d 203, 212 (1963) which provides support to extend implied indemnity beyond the vessel-employer to include third-parties "involved in a close working relationship with the stevedore."


PLI's had a degree of control of the animals and the waste and that PLI was in a position to remedy the condition up until the time of Plaintiff's injury.

Additionally, factual issues may be developed in further support of a duty Terminals might owe PLI that would support a tort claim for indemnity, and therefore Navigation's opposition is premature. Placid Oil Co., supra, 473 F. Supp. at 1102. Navigation's opposition is premature in that PLI's motion and its third-party complaint need not conclusively show the existence of an implied contract, and therefore a right to indemnity between PLI and Terminals. Such a contract will or may depend on the material facts which develop during discovery and at trial. These facts may show that PLI has an implied contract based on the express or implied contractual relationship between Navigation-Terminals or from an implied contract directly between PLI and Terminals.

For example, if the facts show that Terminals warranted or was otherwise obligated to provide **qualified employees and perform its work in a good, safe and workmanlike manner**, and/or it had a duty to ensure Plaintiff performed his work in a safe manner and should have remedied the alleged hazards on the Lihue (the gap and animal waste), and/or Plaintiff's assertion of the presence of animal waste is questioned and/or its role in causing his injuries, then there is at least a possibility that Terminals assumed an obligation to protect PLI from liability.

Judge Friendly noted his discomfort with the result of his opinion in Bucyrus, stating "A court may well feel tempted to cut the Gordian knot and simply apportion liability according to fault on a contribution like theory…" as the New York Court of Appeals did in Dole v. Dow Chemical Co., 282 N.E. 2d 288 (1972). In fact, Judge Friendly did not dismiss consideration of "proposals" very similar to the one PLI is making here.  See  579 F.2d at 726 at footnote 8.  PLI asserts Reliable Transfer and AmClyde & River Don Castings, Ltd and principals of equity provide such a basis for doing so without prejudice to any rights Plaintiff, Navigation or Terminals might have under the LHWCA.

## IV.  PLI'S MOTION SHOULD NOT BE DENIED ON PROCEDURAL GROUNDS

Plaintiff instituted suit against Navigation on January 27, 2004.  On April 28, 2004, a Scheduling Conference was held.  Trial was set for June 21, 2005, and as a matter of course, motions to add parties were to be filed by September 29, 2004.  **On June 21, 2004,** Navigation identified PLI's animal tenders.  See Exhibit G at page 6 to Navigation's Memorandum in Opposition.  **Neither Plaintiff nor Navigation moved to add PLI by September 29, 2004.** If Navigation and/or Plaintiff had a claim against PLI, a motion should have been filed at that time.  **In fact, Navigation never moved to add PLI as a defendant.**

On November 23, 2004 a second scheduling conference was held.  Plaintiff and Navigation agreed to re-set the trial to November 29, 2005.  As a

matter of course, motions to add parties were to be filed by April 29, 2005. **Neither Plaintiff nor Navigation moved to add PLI as a defendant by April 29, 2005.** On May 25, 2005, Navigation and Plaintiff filed a stipulation allowing Plaintiff to add PLI as a defendant, and Plaintiff's Second Amended Complaint was filed that same day. Navigation filed its answer and cross-claim against PLI on June 20, 2005. Counsel for PLI has not been able to determine when PLI was served with the Second Amended Complaint. **However, neither Navigation nor Plaintiff took any action against PLI between May 25, 2005 and September 23, 2005** when PLI filed its answer and cross-claim on September 23, 2005, which was just **one month** before trial was to commence.

On October 6, 2005, Navigation provided PLI with two banker's boxes of discovery. On October 7, 2005 Plaintiff provided a trial exhibit binder to PLI. PLI worked diligently to "get up to speed" while simultaneously dealing with impending mediation and trial dates. See Declaration of Irons at para. 3. On October 18, 2005, a Status Conference regarding the trial date was held and trial was continued for roughly seven months to June 14, 2006. No deadline for motions to bring additional parties was set as a matter of course. **Therefore, there is no deadline.**

A mediation which included Terminals was held on January 11, 2006. At the mediation, PLI indicated it was considering a third-party claim against

13

Terminals. See Declaration of Irons at para. 4. There is no dispute that Terminals has been involved in the litigation since taking Plaintiff's recorded statement shortly after the October 1, 2002 accident and has provided benefits to Plaintiff resulting in a lien. Between October 18, 2005 and January 11, 2006 PLI's counsel diligently reviewed the voluminous documents in preparation for the mediation. See Declaration of Irons at para. 5. The mediation did not resolve the case, but the parties are willing to continue in their efforts. PLI brought this instant motion on January 30, 2006.

Navigation, for itself and/or on behalf of Terminals, its corporate subsidiary, cannot seriously argue prejudice, undue delay or that the case will be delayed or complicated. PLI filed its motion within three weeks after the mediation failed to settle the case.[7] Where there has been no inexcusable delay in seeking a remedy and where no prejudice to the defendant has ensued from the mere passage of time, there should be no bar to relief. Gardner v. Panama R. Co., 342 U.S. 29, 31 (1951).

V.    **CONCLUSION**

For the above stated reasons, PLI respectfully requests that its motion be granted. The remedy PLI seeks will not deny any right Terminals has to limit its liability nor will it reduce damages Plaintiff is entitled to. While it may be

---

[7] Navigation filed a motion for summary judgment asserting it had no liability the day before the mediation was to begin.

14

expedient to deny PLI's motion on procedural grounds, given the circumstances, PLI asserts fundamental fairness would better be served where a decision is on the substantive merits and, if appropriate and necessary, after PLI has had the chance to discover additional facts supporting a "nexus" between PLI and Terminals.

DATED:  Honolulu, Hawaii, _____FEB 27 2006_____.

_____
ROY F. HUGHES
THOMAS E. IRONS
Attorneys for Defendant
PACIFIC LIVESTOCK, INC.