ORIGINAL

PRESTON EASLEY, ESQ./Cal State Bar No. 108347
LAW OFFICES OF PRESTON EASLEY
2500 Via Cabrillo Marina, Suite l06
San Pedro, California  90731-7724
Telephone:  (310) 832-5315
Facsimile:  (310) 832-7730

ATTORNEY FOR:  Plaintiff
                      BERT MEYER

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 2 4 2006

at ___ o'clock and ___ min.___ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BERT MEYER, )<br><br>                  )<br>                  )<br>         Plaintiff, )<br>    v.            )<br>                  )<br>MATSON NAVIGATION )<br>COMPANY, INC., and )<br>PACIFIC LIVESTOCK, INC., )<br>                  )<br>                  )<br>         Defendants. )<br>——————————————————) | Civil No.:  04-00049 JMS-BMK<br>(In Admiralty)<br><br>PLAINTIFF'S FIRST AMENDED<br>PRETRIAL STATEMENT |

COMES NOW PLAINTIFF BERT MEYER and submits the

following First Amended Pretrial Statement:

(a) **Party.**

This pretrial statement is filed on behalf of plaintiff Bert Meyer.

1

(b) **Jurisdiction and Venue.**

Venue exists in Honolulu because plaintiff was injured aboard the

vessel S/S LIHUE at the Matson Terminal at Pier 52, Sand Island, Honolulu,

Hawaii. Admiralty jurisdiction exists because the vessel was in navigable

waters. There is no dispute over jurisdiction or venue.

(c) **Substance of Action.**

Plaintiff is a 38 year old longshoreman employed by McCabe,

Hamilton & Renny Co., Ltd. He was injured aboard the Matson Navigation

ship S/S LIHUE at 7:00 p.m. on October 1, 2002, when he slipped in animal

waste and fell through a gap between the grating and the hatchcover on the

starboard side of the hatchcover at row 15/16. He had been straddling a

similar gap on the aft side of the hatchcover while using a long pole to

unlock container cones above his head. He had to straddle the gap at the

location where the slip began in order to properly position himself under a

stuck cone on the three-high container that he was unlocking. He put his left

foot on the padeye on the hatchcover (as he had done before) and his right

foot was on the metal grating. There were animal feces, animal urine, and

slime from the animal waste on all horizontal surfaces, including the grating

and the hatchcover. Plaintiff complained about this to Daniel Farney, his

Matson Terminals superintendent, prior to the accident. Plaintiff had

previously fallen due to animal slime aboard ship. His left foot slipped off the padeye and when he fell his left leg went into the 7 3/8" wide gap between the grating and the starboard (inshore) side of the hatchcover. He was stuck in the gap and later rescued by Mr. Farney. He sustained a massive labral tear of the left hip joint.

On October 16, 2003, plaintiff underwent left hip surgery with Dr. Thomas Kane which consisted of "resection of labral tear and extensive synovectomy." On April 7, 2005, Dr. Kane wrote that Meyer had an excellent recovery with "some acetabular posttraumatic arthritis." Mr. Meyer was unable to work from October 2, 2002, through May 23, 2003, and from September 12, 2004, through May 11, 2005, a total of 120 weeks and 1 day. He has a pain level of 3 on a scale of 10 in the left hip when he is not working and a pain level of 5 when he is working. He has returned to full duty longshoring.

(d) **Undisputed Facts.**

  1. At the time of subject accident plaintiff was working as a longshoreman aboard the S/S LIHUE on October 1, 2002.

  2. At the time of subject accident the S/S LIHUE was in navigable waters at Pier 52, Sand Island, Honolulu, Hawaii.

3. At the time of subject accident the crew of S/S LIHUE was employed by defendant Matson Navigation Company, Inc.

4. The animal tenders assigned to the S/S LIHUE for the voyage which arrived in Honolulu on October 1, 2002, were employed by defendant Pacific Livestock, Inc.

(e) **Disputed Factual Contentions.**

1. Whether defendant Matson Navigation Company, Inc. was negligent;

2. Whether defendant Pacific Livestock, Inc. was negligent;

3. Whether plaintiff was negligent;

4. The nature and extent of plaintiff's injuries.

(f) **Relief Prayed.**

| $ 67,229.80 | past medical treatment |
| $248,114.22 | past wage loss |
| $300,000.00 | past pain and suffering |
| $300,000.00 | future pain and suffering |
| $915,344.02 | Total damages |

(g) **Points of Law.**

**1. DEFENDANT MATSON NAVIGATION COMPANY, INC. WAS NEGLIGENT**

**A. Defendant Matson is Liable to Plaintiff Because it Failed to Turn Over the Vessel to the Longshoremen in a Reasonably Safe Condition.** Scindia Steam Navigation Company, Ltd. v. De Los Santos, 451 US 156, 68 LEd 2d 1, 101 SCt 1614 (1981).

Scindia outlines the basic duties a vessel owes to longshoremen under 33 USC Sec. 905(b), the Longshore Act. Generally, a vessel owes the longshoreman the duty of exercising due care under the circumstances. Scindia, 68 LEd 2d 12.

> A) TURN OVER DUTY. The turn over duty described in Scindia requires the vessel owner to exercise "ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its operations with reasonable safety to persons and property…" Scindia, 68 LEd 2d 12.

In other words, the shipowner must initially provide the longshoremen with a safe place to work, including functional equipment.

The unsafe conditions of the animal slime and the gap in the grating aboard the S/S LIHUE existed before the longshoremen came on board, therefore defendant breached its duty to turn the vessel over to the longshoremen in a reasonably safe condition. The failure to clean up the animal waste and the gap in the grating rendered the vessel unreasonably dangerous for an expert and experienced stevedore.

As the Senate Report quoted in <u>Scindia</u> makes clear, nothing in 1972 Amendments to the LHWCA "is intended to derogate from the vessel's responsibility to take appropriate corrective action where it knows or should have known about a dangerous condition." <u>Scindia</u>, 451 US at 169 n.16 (quoting S.Rep. No. 92-1125, 92d Cong., 2d Sess. 10 (1972), also quoted by the Ninth Circuit in <u>Bueno v. United States</u>, 687 F2d 318, 320 (9th Cir 1983) as follows:

**"So, for example, where a longshoreman slips on an oil spill on a vessel's deck and is injured, the proposed amendments to Section 5 would still permit an action against the vessel for negligence. To recover, he must establish that: 1) the vessel put the foreign substance on the deck, or knew that it was there, and willfully or negligently failed to**

**remove it; or 2) the foreign substance had been on the deck for such a period of time that it should have been discovered and removed by the vessel in the exercise of reasonable care by the vessel under the circumstances."** Id., at 10-11.

The scenario in the Senate Report quoted in the <u>Bueno</u> case is strikingly similar to the facts of the instant case. Matson obviously knew that there was a large gap between the hatchcover and the grating, and knew or should have known of the animal waste, yet Matson took no corrective action, clearly violating the duties set forth by *Scindia* and the U.S. Senate.

The duty to make a vessel safe does not fall exclusively on the stevedore. <u>Martinez,</u> supra, at 610. A negligent shipowner's liability is not eliminated by the negligence of the stevedore. <u>Subingsubing v. Reardon Smith Lines</u>, 682 F2d 779, 780 (9th Cir 1982).

## B. Defendant Matson Breached its <u>Scindia</u> Duty to Safely Maintain Equipment Under its Control

The standard of care owed by vessels to longshoremen was established by <u>Scindia Steam Navigation Co., Ltd. v. De Los Santos</u>, 101 SCt 1614, 451 US 156, 68 LEd 2d (1981). <u>Scindia</u> held that a vessel may be liable for injuries to a longshoreman if the vessel "fails to exercise due care

to avoid exposing longshoremen to harm they may encounter in areas or from <u>equipment</u> under the active control of the vessel during the stevedoring operation" (emphasis added). 68 LEd 10. The insufficient grating was a permanent fixture supplied by the vessel. Permanent fixtures on a vessel are "equipment" under the vessel's control, even in cargo areas. <u>Taliercio v. Compania Expressa Lineas Argentina</u>, 761 F2d 126 (2nd Cir 1985).

## 2. DEFENDANT PACIFIC LIVESTOCK, INC. WAS NEGLIGENT

Defendant Pacific Livestock employed two animal tenders to accompany the livestock aboard S/S LIHUE on its voyage to Honolulu. Part of their job was to wash down working areas. Obviously this did not happen.

Since the substantive law applicable in cases of admiralty jurisdiction is federal law, the federal courts, in the absence of a preemptive statute, are free to fashion federal common law remedies. <u>Kermarec v. Compagnie Generale Transatlantique</u>, 358 US 625, 79 SCt 406, 3 LEd 2d 550 (1959). Accordingly, negligence is an actionable wrong under the general maritime law. The negligence cause of action was expressly recognized by the Supreme Court of the United States in the 1882 case, <u>Leathers v. Blessing</u>, 105 US (15 Otto) 626, 26 L.Ed 1192 (1882), which involved an *in personam*

action against the master and owners of a steamboat brought by a visitor injured aboard a vessel by a falling bale of cotton. In upholding this claim, the Supreme Court recognized the maritime tort of negligence which exists as a counterpart to state law negligence. As the court stated:

> "[The term, 'tort,' when used in reference to admiralty jurisdiction, ...includes wrongs suffered in consequence of the negligence or malfeasance of others, where the remedy at common law is by an action on the case."

Therefore, once admiralty jurisdiction is established all the substantive rules and precepts peculiar to the law of the sea become applicable; a plaintiff's cause will be determined under principles of maritime negligence rather than common law negligence. Pope & Talbot, Inc. v. Hawn, 346 US 406, 74 SCt 202, 98 LEd 143 (1953).

From this beginning the maritime tort of negligence has developed into an all-purpose maritime law cause of action that cuts a wide swathe across all the specialized areas of admiralty law. The negligence cause of action may be invoked by virtually anyone who suffers injury or loss in an admiralty setting. Even the two categories of maritime workers who benefit from comprehensive liability schemes created by federal statute, seamen and longshore workers, may assert a cause of action for negligence under the

general maritime law against persons other than their employers.  Hagerty v. L & L Marine Serv., Inc., 788 F 2d 315 (5th Cir 1986) (en banc clarification, 797 F 2d 256); and Albertson v. T. J. Stevenson & Co., Inc., 749 F 2d 223 (5th Cir 1984).

The elements of a maritime negligence cause of action are essentially the same as land-based negligence under the common law, free of "inappropriate common law concepts." Kermarec v. Compagnie Generale Transatlantique, 358 US 625, 630, 79 SCt 406, 409, 3 LEd 2d 550 (1959). They include:

> (1) The existence of a duty required by law which obliges the person to conform to a certain standard of conduct in order to protect others against unreasonable risks.
>
> (2) A breach of that duty by engaging in conduct that falls below the applicable standard or norm.  This breach is usually called by the rubric "negligence"; but "negligence" presumes the existence of element one, the standard of conduct.

(3) A reasonably close causal connection between the

offending conduct and the resulting injury; this element

is called "proximate cause."

(4) Actual loss, injury, or damage suffered by the

plaintiff. The burden of proof of these elements is on

the plaintiff.

Johnson v. A/S Ivarans Rederi, 613 F 2d 334 (1st Cir 1980), cert dismissed

449 US 1135, 101 SCt 959 67 LEd 2d 325 (1981); Desmond v. Holland

America Cruises, 1981 AMC 211 (SDNY 1981).

In admiralty the duty of care may be derived from three basic sources:

(1) duly enacted laws, regulations, and rules; (2) custom; and (3) the dictates

of reasonableness and prudence. Pennsylvania Railroad Co. v. The Marie

Leonhardt, 202 F Supp 368, 375 (ED Pa 1962), affirmed 320 F 2d 262 (3rd

Cir 1963).

In determining the existence of duty, a court must examine and weigh

the probability of an accident, the potential extent of the injury, and the cost

of adequate precautions. See Complaint of Paducah Towing Co., 692 F 2d

412 (6th Cir 1982); United States v. Carroll Towing Co., 159 F 2d 169 (2d

Cir 1947), rehearing denied 160 F 2d 482 (2d Cir 1947).

Negligence is conduct which involves creating a risk of harm to others. Stated another way, negligence is conduct which fails to protect other people against an unreasonable risk of harm. Thus negligence is essentially a breach of the duty of due care. It is a failure to observe that degree of care, precaution, and vigilance which the circumstances demand, the failure to observe the ordinary degree of care which people of ordinary prudence would use under the same circumstances. Gallick v. Baltimore & Ohio Railroad Co., 372 US 108, 83 S Ct 659, 9 L Ed 2d 618 (1963). A finding of negligence must not be based upon speculation or conjecture. It may, however, be based upon direct or circumstantial evidence. Jastremski v. United States, 737 F 2d 666 (7th Cir 1984); Valentine v. United States, 630 F Supp 1126 (SD Fla 1986). When a claim is brought under maritime jurisdiction the sufficiency of the evidence of negligence is governed by federal law. Harrelson v. United States, 420 F Supp 788 (SD Ga 1976), affirmed 548 F 2d 353 (5th Cir 1977).

(h) **Previous Motions.**

Pacific Livestock, Inc.'s motion for leave to sue Matson Terminals, Inc. was denied.

(i)  **Witnesses To Be Called.**

1.  Bert Meyer – will testify about his accident, medical treatment, earnings, and his physical condition.

2.  Daniel Farney – Matson Terminals superintendent will testify about circumstances of accident.

3.  Eric Johnson – S/S LIHUE vessel master will testify about accident and vessel and Matson Navigation safety procedures.

4.  H.G. Walsh – former chief mate on S/S LIHUE will testify about problems with animal tenders and wash down procedures.

5.  Keahi Birch – Matson Navigation safety manager in Hawaii will testify about Matson's safety policies.

6.  Paul Londynsky – Matson Navigation corporate safety director will testify about Matson's safety policies.

7.  Henry Olson – Matson Navigation naval architect will testify about history and design features of S/S LIHUE.

8.  Greg Kinnel – animal tender aboard S/S LIHUE employed by Pacific Livestock will testify about the wash down of animal waste on S/S LIHUE.

9.  James Souza – McCabe longshoreman will testify regarding working conditions on the S/S LIHUE.

10. Armando Martinez – will testify about M/V SANDRA BLANCA and his job as a longshore crane operator.

11. John Robinette – Matson Navigation claims manager will authenticate Vessel Safety Inspection Report.

12. Heidi Kahlbaum – workers' compensation adjuster at Frank Gates Acclaim will testify about recorded statement from plaintiff, medical payments, and workers' compensation lien.

13. Raymond Antone – Matson Terminals superintendent will testify about preparation of accident report and accident.

14. Randolf Baldemor – will authenticate Vessel Safety Inspection Report.

15. Ernie Jose – workers' compensation adjuster at Frank Gates Acclaim will testify about cost of plaintiff's medical treatment and workers' compensation lien.

16. Kraig Kennedy – vice president of McCabe, Hamilton & Renny Co., Ltd. will verify plaintiff's wages.

17. Nalani Foreman – office manager at McCabe, Hamilton & Renny Co., Ltd. will verify plaintiff's wages.

18. Craig Kato – Matson Terminals stevedore superintendent will testify about conditions aboard the S/S LIHUE, stevedoring operations, and plaintiff's accident.

19. Tim Reinholdt – Matson Navigation mate will testify about conditions aboard the S/S LIHUE, stevedoring operations, and plaintiff's accident.

20. Pat Glenn – Matson Navigation mate will testify about conditions aboard the S/S LIHUE, stevedoring operations, and plaintiff's accident.

21. Carl Stein – Matson Navigation mate will testify about conditions aboard the S/S LIHUE, stevedoring operations, and plaintiff's accident.

22. Steven Kaneshiro, M.D. – plaintiff's treating physician will testify about plaintiff's medical treatment and condition.

23. Thomas Kane, M.D. – plaintiff's treating physician will testify about plaintiff's medical treatment and condition.

24. Capt. Robert Riley – plaintiff's safety expert will testify about safety issues involving plaintiff's accident.

///

**(j)  Exhibits, Schedules, and Summaries.**

1.    Photograph of S/S LIHUE
      Shows conditions aboard S/S LIHUE
      Bert Meyer, Robert Riley

2.    Photograph of S/S LIHUE
      Shows conditions aboard S/S LIHUE
      Bert Meyer, Robert Riley

3.    Photograph of S/S LIHUE
      Shows conditions aboard S/S LIHUE
      Bert Meyer, Robert Riley

4.    Photograph of S/S LIHUE
      Shows conditions aboard S/S LIHUE
      Bert Meyer, Robert Riley

5.    Photograph of S/S LIHUE
      Shows conditions aboard S/S LIHUE
      Bert Meyer, Robert Riley

6.    Photograph of S/S LIHUE
      Shows conditions aboard S/S LIHUE
      Bert Meyer, Robert Riley

7.    Photograph of S/S LIHUE
      Shows conditions aboard S/S LIHUE
      Bert Meyer, Robert Riley

8.    Photograph of S/S LIHUE
      Shows conditions aboard S/S LIHUE
      Bert Meyer, Robert Riley

9.    Photograph of S/S LIHUE
      Shows conditions aboard S/S LIHUE
      Bert Meyer, Robert Riley

10.    Photograph of S/S LIHUE
       Shows conditions aboard S/S LIHUE
       Bert Meyer, Robert Riley

11.    Photograph of S/S LIHUE
       Shows conditions aboard S/S LIHUE
       Bert Meyer, Robert Riley

12.    Photograph of S/S LIHUE
       Shows conditions aboard S/S LIHUE
       Bert Meyer, Robert Riley

13.    Photograph of S/S LIHUE (Port side)
       Shows conditions aboard S/S LIHUE
       Bert Meyer, Robert Riley

14.    Photograph of M/V SANDRA BLANCA
       Shows proper gap between hatchcover and
       lashing platform
       Robert Riley, Armando Martinez

15.    Photograph of M/V SANDRA BLANCA
       Shows proper gap between hatchcover and
       lashing platform
       Robert Riley, Armando Martinez

16.    Photograph of M/V MAERSK GIRONDE
       Shows improper gap in lashing area
       Robert Riley

17.    Photograph of M/V MAERSK GIRONDE
       Shows improper gap in lashing area
       Robert Riley

18.    Photograph of M/V R.J. PFEIFFER
       Shows improper gap in lashing area
       Robert Riley, Linda Morishige

19.   Photograph of M/V R.J. PFEIFFER
      Shows improper gap in lashing area
      Robert Riley, Linda Morishige

20.   Photograph of M/V R.J. PFEIFFER
      Shows improper gap in lashing area
      Robert Riley, Linda Morishige

21.   Matson Terminals, Inc. Accident Report
      for Meyer accident
      Shows circumstances of accident
      Bert Meyer, Raymond Antone, Robert Riley

22.   Matson Navigation Company Safety and Pollution Manual,
      Special Safety Precautions, Number C-01-100 dated
      Oct. 15, 1998
      Shows defendant's internal safety policies
      Robert Riley

23.   Matson Navigation Company Safety and Pollution Manual,
      Working Aloft, Number C-01-190 dated July 5, 2000
      Show's defendant's internal safety policies
      Robert Riley

24.   Pacific Coast Marine Safety Code, 1999 Revision
      Shows industry standard and custom
      Robert Riley

25.   Pacific Coast Marine Safety Code, 2002 Revision
      Shows industry standard and custom
      Robert Riley

26.   Pacific Coast Longshore Contract Document
      July 1, 2002- July 1, 2008
      Shows applicability of Pacific Coast Marine Safety Code

27.   Webster's Encyclopedic Unabridged Dictionary of the
      English Language
      Shows definition of the word "deck"
      Robert Riley

28.  Accident Prevention On Board Ship at Sea and In Port,
     ILO code of Practice
     Shows industry standard and custom
     Robert Riley

29.  Code of Safe Working Practices for Merchant Seaman
     (United Kingdom)
     Shows industry standard and custom

30.  ASTM F1637-02 Standard Practice for Safe Walking Surfaces
     Shows safety standard
     Robert Riley

31.  SAE J185 JUN 88 Access Systems for Off-Road Machines
     Shows safety standard for openings in deck
     Robert Riley

32.  ISO 11660-2 Cranes-Access, guards and restraints
     Shows safety standard for openings in deck
     Robert Riley

33.  CV for Robert Riley
     Shows qualifications
     Robert Riley

34.  Report of Robert Riley
     Shows opinions
     Robert Riley

35.  CV of Thomas Kane, M.D.
     Shows qualifications
     Thomas Kane, M.D.

36.  Medical Reports of Thomas Kane, M.D.
     Shows course of plaintiff's medical treatment
     Thomas Kane, M.D.

37. CV of Steven Kaneshiro, M.D.
    Shows qualifications
    Thomas Kaneshiro, M.D.

38. Medical Reports of Steven Kaneshiro, M.D.
    Shows course of plaintiff's medical treatment
    Steven Kaneshiro, M.D.

39. Recorded statement of Bert Meyer
    Shows how-accident occurred
    Bert Meyer, Heidi Kahlbaum

40. Matson's Response to Plaintiff's Interrogatories, Set No. One

41. Matson's Response to Plaintiff's Interrogatories,
    Set No. Two

42. Matson's Response to Plaintiff's Interrogatories,
    Set No. Five

43. Matson's Response to Plaintiff's Interrogatories, Set No. Six

44. Matson's Response to Plaintiff's Request for Production of
    Documents, Set No. One

45. Matson's Response to Plaintiff's Request for Production of
    Documents, Set No. Two

46. Matson's Response to Plaintiff's Request for Production of
    Documents, Set No. Three

47. Matson's Response to Plaintiff's Request for Production of
    Documents, Set No. Seven

48. Matson's Response to Plaintiff's Request for Production of
    Documents, Set No. Eleven

49. Plaintiff's wage records
    Show earnings
    Bert Meyer, Kraig Kennedy, Nalani Foreman

50.    Vessel Safety Inspection Report  Matson Terminals, Inc.
       Shows results of S/S LIHUE vessel inspection
       Robert Riley, John Robinette, Randolf Baldemor

51.    Excerpt from Merchant Marine Officers' Handbook
       Shows cone
       Robert Riley, Bert Meyer

52.    Deposition of Eric Johnson

53.    Deposition of Henry A. Olson

54.    Deposition of Paul Londynsky

55.    Deposition of Keahi Birch

56.    Plaintiff's workboots
       Show condition of soles
       Bert Meyer

57.    Anatomical chart of hip
       Dr. Kaneshiro, Dr. Kane

58.    Photograph of S/S LIHUE starboard side between rows
       15 and 16
       Shows conditions aboard S/S LIHUE
       Bert Meyer, Robert Riley

59.    Photograph of S/S LIHUE port side between rows 15 and 16
       Shows conditions aboard S/S LIHUE
       Bert Meyer, Robert Riley

60.    Photograph of S/S LIHUE port side between rows 15 and 16
       Shows conditions aboard S/S LIHUE
       Bert Meyer, Robert Riley

61.    Defendant Pacific Livestock, Inc.'s Response to Bert Meyer's
       Interrogatories

62.    Defendant Pacific Livestock, Inc.'s Response to Bert Meyer's Request for Production of Documents

63.    Defendant Pacific Livestock, Inc.'s Response to Bert Meyer's Request for Admissions

64.    Defendant Pacific Livestock, Inc.'s Response to Matson's Interrogatories

65.    Defendant Pacific Livestock, Inc.'s Response to Matson's Request for Production of Documents

66.    Defendant Pacific Livestock, Inc.'s Response to Matson's Request for Admission

(k)    **Further Discovery or Motions.**

Matson has filed summary judgment motions against Bert Meyer and Pacific Livestock, Inc. which will be heard on April 17, 2006.

(l)    **Stipulations.**

There are no stipulations.

(m)    **Amendments, Dismissals.**

There are no proposed or requested amendments or dismissals.

(n)    **Settlement Discussion.**

There was a private mediation with Harris Weinberg on January 11, 2006. There will be another mediation with Harris Weinberg on April 21, 2006.

(o)    **Agreed Statement.**

Presentation of the action upon an agreed statement of facts is neither feasible or desired.

(p)    **Bifurcation, Separate Trial of Issues.**

A bifurcation or separate trial of specific issues is neither feasible or desired.

(q)    **Reference to Master or Magistrate Judge.**

Plaintiff is not agreeable to referring all or part of the action to a Magistrate Judge.

(r)    **Appointment and Limitation of Experts.**

Court appointed experts and a limitation of experts is not feasible or desired.

(s)    **Trial.**

The case has been scheduled for a non-jury trial on June 14, 2006.

(t)    **Estimate of Trial Time.**

The trial is expected to take five court days.

///

(u)    **Claims of Privilege or Work Product.**

None of the matters covered by this rule are covered by work

product or other privilege.

Dated: March 21, 2006

PRESTON EASLEY
Attorney for Plaintiff
BERT MEYER