ORIGINAL

HUGHES & TAOSAKA
Attorneys At Law, A Law Corporation

ROY F. HUGHES            1774-0
THOMAS E. IRONS          7876-0
Pauahi Tower, Suite 900
1001 Bishop Street
Honolulu, Hawaii              96813
Telephone No.            526-9744

Attorneys for Defendant
PACIFIC LIVESTOCK, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BERT MEYER, | ) Civil No.: CV04 00049 JMS-BMK |
| | ) (In Admiralty) |
| Plaintiff, | ) |
| | ) DEFENDANT PACIFIC |
| vs. | ) LIVESTOCK, INC.'S |
| | ) MEMORANDUM IN OPPOSITION |
| MATSON NAVIGATION | ) TO MATSON NAVIGATION |
| COMPANY, INC.; and PACIFIC | ) COMPANY, INC.'S MOTION FOR |
| LIVESTOCK, INC., | ) SUMMARY JUDGMENT AGAINST |
| | ) PACIFIC LIVESTOCK, INC. FILED |
| Defendants. | ) ON FEBRUARY 14, 2006; |
| | ) CERTIFICATE OF SERVICE |
| | ) |
| | ) Date:  April 17, 2006 |
| | ) Time:  9:00 a.m. |
| | ) Honorable J. Michael Seabright |

OpptoMatMSJPLI

PACIFIC LIVESTOCK, INC.'S MEMORANDUM IN
OPPOSITION TO MATSON NAVIGATION COMPANY, INC.'S
MOTION FOR SUMMARY JUDGMENT AGAINST
<u>PACIFIC LIVESTOCK, INC. FILED ON FEBRUARY 14, 2006</u>

## I.    **INTRODUCTION**

On January 27, 2004, Bert Meyer (hereinafter "Plaintiff"), filed a

Complaint against Matson Navigation Company, Inc. (hereinafter "Navigation"),

under CV 04 00049 JMS/BMK.  On May 25, 2005, Plaintiff filed a Second

Amended Complaint adding Pacific Livestock, Inc. (hereinafter "PLI").  On

September 23, 2005, PLI answered the Second Amended Complaint and a Cross-

Claim asserted by Navigation, and served its own Cross-Claim against Navigation.

On October 17, 2005, *twenty one months after the suit was filed and discovery had*

*been substantially completed*, Navigation tendered its defense and indemnity to

PLI.[1]

The Second Amended Complaint alleges Navigation is legally

responsible for the resulting injuries because it created a dangerous work

environment by failing to provide a guardrail or cover or other fall protection for

the area from which Plaintiff fell (the "gap") and allowing animal waste to exist in

and around the area of the fall prior to the start of cargo operations.  Plaintiff

alleges PLI is also legally responsible for the resulting injuries by failing to ensure

animal waste was cleared prior to the start of cargo operations.

---

[1] <u>See</u> Exhibit "E" to the Declaration of Thomas E. Irons.

In the instant motion, Navigation asserts that PLI's cross-claim should be dismissed and that PLI must indemnify and hold Navigation harmless for *all* of Plaintiff's injuries, and *all* of Navigation's attorney's fees and expenses based on what it considers to be an enforceable and comprehensive indemnity language contained within Freight Tariff No. 14F, STB MATS No. 34, Note 6 para. 6 (hereinafter the "Language at Issue"). The Language at Issue provides:

> "Shipper shall indemnify Matson and hold it harmless in respect of any injury or death of any person; any loss or damage to cargo, other property or the vessel; or any other loss loss or expenses, including, but not limited to, lost profits and attorney's fees, caused by the acts or omissions of any livestock attendant provided by the shipper..." See Exhibit "E" to Navigation's Separate and Concise Statement of Facts ("SCS").

Navigation's motion should be denied because (1) the Language at Issue is not enforceable against PLI and there are material issues of fact as to reasonable notice, (2) there are material issues of fact as to whether PLI breached any duty or was a cause of any damages to Plaintiff, and (3) the Language at Issue does not require PLI to indemnify Navigation for its own negligence.

## II.   RESPONSE TO FACTS CONTAINED IN SECTION II OF NAVIGATION'S MEMORANDUM IN SUPPORT

Plaintiff alleges negligence against Navigation for the gap and animal waste, and believes (or assumes) the waste was from hogs. See PLI's Response to Navigation's Separate and Concise Statement of Facts (hereinafter "PLI's SCS"), at #17.

There is an issue of fact as to whether waste from PLI's hogs was a cause of Plaintiff's injury. See PLI's SCS #18, #25, #32 and #35.

Navigation should have ensured that any animal waste that may have been present on the Lihue was cleaned up. See PLI's SCS #14, #15, #19, #20, #21, #22, #23, #27, and #32.

Eric Johnson, chief mate on the voyage in question, stated wash down instructions are typically written and given to tenders and that he would verify they were doing their job. See page 5 of Navigation's memorandum (Exhibit #4 to Navigation's SCS).

PLI tender George Kinnell was the only PLI tender aboard the Lihue on the voyage at issue and he was not given a tour or any written rules or instructions on washing down the decks from the crew. See PLI's SCS #31.

There is an issue of fact as to whether inadequate illumination was a cause of Plaintiff's injury. See PLI's SCS # 33.

There is an issue of fact as to whether grease was a cause of Plaintiff's injury. See PLI's SCS # 18.

III.   **ARGUMENT**

   A.   <u>The Language at Issue contained in Tariff No. 14F, STB MATS No. 34 (hereinafter the "Tariff") is not enforceable by Navigation against PLI and issues of fact exist as to whether PLI was provided reasonable notice.</u>

Contrary to Navigation's assertion, neither the bills of lading nor the freight bills attached as Exhibits "A"-"D" to Navigation's SCS incorporate by reference any language of the Tariff, including Note 6, 6th paragraph. <u>See</u> Exhibit "E" to Navigation's SCS. While the bills of lading and freight bills identify terms such as the cargo to be shipped and the applicable rates, these documents are devoid any language that would put PLI on reasonable notice that Navigation intended to enforce the language at issue here or that PLI intended to be bound by such language.

The Language at Issue is not required to be inserted by law or part of the "rate". Navigation's arguments and the facts in support are lacking. The Language at Issue was **not** part of previous versions of the Tariff and the commodity rates did **not** change with the inclusion of the Language at Issue. <u>See</u> PLI's SCS #8 (compare documents Bates stamped D 1508 that contains the Language at Issue with D 1507 the version immediately prior that does not; compare documents Bates stamped D 1429 with D 1428 and note the commodity rates charged are exactly the **same**). There does not appear to be any consideration

at all for the inclusion of the Language at Issue.  Therefore a material fact exists as to these issues.[2]

The relevant policy behind 49 U.S.C. § 13101 et. seq. is "...to encourage the establishment and maintenance of reasonable *rates* for transportation, without unreasonable *discrimination or unfair or destructive competitive practices*."  (Emphasis added) 49 U.S.C. § 130101(a)(1)(D).  Nothing in 49 U.S.C. §13702(b) "requires" the addition of indemnification language to tariffs.  Further, there is nothing in 49 C.F.R. § 1312.3 (which is not a statute) that requires the addition of indemnity language to tariffs or suggests that an indemnity agreement is a "service term".[3]

Constructive notice principals do not apply to tariff provisions that are not required by law.  Port of Tacoma v. Duval, 364 F.2d 615, 617 (9th Cir. 1966).  "The filing of a tariff alone does not limit the carrier's liability"-the shipper must also be given "reasonable notice of the liability limitation and the opportunity to obtain information necessary to making a deliberate and well informed choice."

---

[2] If the "facts" stated in Steve Rubin's Declaration in connection with rates are seen by the Court as determinative on the issue of enforcement of the Language at Issue against PLI, PLI requests an opportunity to depose Mr. Rubin prior to any order and be allowed to submit any material testimony in rebuttal to statements made.

[3] To the extent the Language at Issue is a "service term", 49 C.F. R. § 1312.3(d) requires that it "...must be presented in a way that facilitates the determination of ...services offered, and the related service terms.  Ambiguous terms shall not be used."  Here, given the importance of the Language at Issue, it should have been placed more conspicuously and should have been free from ambiguity.  This latter issue is discussed in Section C of this memorandum.

Hughes Aircraft Co. v. North Am. Van Lines, Inc., 970 F. 2d 609 (9th Cir. 1992).
Since indemnification of another's negligence is an extreme burden, an indmenitor
is entitled to express notice thereof, a principle recognized in United States v.
Seckinger, 397 U.S. 202, 212-213 (1970).

In Comsource Independent Foodservice Companies, Inc. v. Union
Pacific Railroad Company, 102 F. 3d 438 (9th Cir. 1996), the Court determined that
"non-mandatory" provisions, not required by law to be in a tariff, do not give the
shipper constructive notice. 102 F.3d at 442. Limitations of liability provisions
are "non-mandatory" provisions that require reasonable notice. Id. at 444. The
Court noted that courts have stepped in to limit carriers' practice of burying
burdensome non-mandatory conditions regarding limitations of their liability in
tariffs, incorporating the provisions into the bill of lading by referring to the entire
tariff, and then claiming the shipper had constructive notice. Id. at 443.

Here, Navigation did not inform PLI of the Language at Issue in the
Tariff, and PLI was otherwise unaware of the Language at Issue. See PLI's SCS
#28 and #29. PLI did not draft or prepare the bills of lading and freight bills or
negotiate the terms. See Navigation's SCS #11. The bills of lading and freight
bills do not reproduce the Language at Issue. See Exhibit's "A"-"D" to
Navigation's SCS. Navigation has not shown that PLI is a "sophisticated shipper."
In sum, the Language at Issue was a unilateral decision by Navigation with no

input or agreement from PLI.  Under the same facts, <u>Comsource</u> affirmed the

denial of the carrier's summary judgment motion.  Here, Navigation's motion

should be denied on the same grounds.[4]

      Navigation should be barred from enforcing the Language at Issue.

Navigation knew the identity of PLI's animal tenders by or before June 2004.  <u>See</u>

PLI's SCS # 36.  However, Navigation failed to assert the Language at Issue until

October 2005.  Navigation's delay was inexcusable and prejudicial to PLI.

Substantial discovery took place over this time period to which PLI was not a

party, and where Navigation incurred fees and costs it now asserts against PLI.

Navigation should be barred, in whole or in part from seeking remedies against

PLI.  <u>Gardner v. Panama R. Co.</u>, 342 U.S. 29 (1951).[5]

    B.    <u>There are material issues of fact as to whether PLI breached any duty
that caused any damage to Plaintiff.</u>

      A determination of negligence is a mixed question of law and fact.

<u>Barnett v. Sea Land Services, Inc.</u>, 875 F.2d 741, 745 (9th Cir. 1989).  Proximate

cause and breach of duty are questions of fact.  <u>Armstrong v. United States, 756</u>

<u>F.2d 1407</u>, 1409 (9th Cir. 1985).  Here, PLI has asserted facts that Navigation had a

duty to Plaintiff, and breached said duty causing damages to Plaintiff.  <u>See</u> PLI's

---

[4] The factors Navigation provides in footnote 4 of its memorandum in support the
conclusion that PLI clearly did **not** have reasonable notice.

[5] Under Hawaii state law, a duty to defend is triggered as of the date of the tender.
<u>Sentinel v. First Insurance Co. of Hawaii</u>, 76 Haw. 277 (1994).

SCS # 14, #15, #17, #19, #20, #21, #22, #24, #26, #27, #31, #32, #33.  PLI has

also asserted facts that it did not breach any duty and was not a cause of any

damages to Plaintiff.  See PLI's SCS # 18, #25, #33, #35.  Therefore, Navigation's

motion should be denied.

C.    Even if the Language at Issue is enforceable against PLI, it is not
      bound to indemnify and hold Navigation harmless for its own acts of
      negligence.

The interpretation of tariffs is no different than the construing of any

other contract or document.  Great N. Ry. V. Merchants Elevator Co., 259

U.S.285, 291 (1921).  A tariff should be strictly construed against the drafter and

any ambiguity or doubt must be decided against the drafter of the tariff.  United

States v. Great N. Ry, 337 F.2d 243, 249 (8th Cir. 1974).  Since indemnification of

another's negligence is an extreme burden, an indmenitor is entitled to express

notice thereof, a principle recognized in United States v. Seckinger, 397 U.S. 202,

212-213 (1970).

The Language at Issue provides:

> "Shipper shall indemnify Matson and hold it harmless in
> respect of any injury or death of any person; any loss or damage
> to cargo, other property or the vessel; or any other loss loss or
> expenses, including, but not limited to, lost profits and
> attorney's fees, caused by the acts or omissions of any livestock
> attendant provided by the shipper…"  See Exhibit "E" to
> Navigation's Separate and Concise Statement of Facts ("SCS").

When interpreting a maritime indemnity contract, federal courts apply general contract principals to determine the respective rights of the parties involved.  Atlantic Mutual Ins. Co. v. Balfour Maclaine Int'l Ltd., 96 F.2d 196, 1999 (2d Cir. 1992).  A contractual  indemnity clause will not be construed to indemnify a person against his own negligence unless such intention is clearly expressed in unequivocal terms from the fact of the contract or the court is otherwise "firmly convinced that such an interpretation reflects the intention of the parties."  United States v. Seckinger, 397 U.S. 202, 212-213 (1970).  Where the language of an indemnity agreement is susceptible to two "reasonable and practical interpretations," the language "should be construed most strongly against the drafter".  Seckinger, at 210. Here, a finding of ambiguity regarding the language used or the parties' intent precludes a finding that PLI should be liable for Navigation's negligence.

The language at issue in Seckinger provided in relevant part,

> "The Contractor shall…be responsible for all damages to persons or property that occur as a result of his fault or negligence in connection with the prosecution of the work…" 397 U.S. at 208, footnote 9.

The Court interpreted this language to express the intention that each party's liability would be premised upon the basis of comparative negligence.  Id. at 215. The Court also provided an example of an indemnification clause that makes

specific reference to the effect of the negligence of an indemnitee. That example

provided in relevant part,

> "The Contractor shall indemnify and hold harmless the
> Owner…against all claims, damages, losses and expenses
> including attorneys' fees arising out of or resulting from the
> performance of the Work, provided that any such claim,
> damage, loss or expense…is *caused in whole or in part* by any
> negligent act or omission of the Contractor…*regardless of
> whether or not it is caused in part by a party indemnified
> hereunder*." (Emphasis added). Id. at 213, footnote 17.

Here, the Language at Issue fails to make a specific reference to Navigation's own

negligence and there is no apparent reason why that was not done by Navigation,

which unilaterally drafted the Language at Issue and sought no input, agreement or

acknowledgement whatsoever from PLI. See PLI's SCS #28 and #29. And, even

if Navigation provided PLI with the Language at Issue, it would have been

reasonable for PLI to interpret the language "…caused by the acts or omissions of

any livestock attendant…" as applying only to damages, etc. PLI caused.

Additionally, Navigation has presented no evidence, and PLI possesses none to the

contrary, of any effort by Navigation to ensure PLI obtained insurance to cover

Navigation's negligence.[6]

The Ninth Circuit opinions in United States v. English, 521 F.2d 63

(9th Cir. 1975) and United States v. Contract Management, Inc., 912 F. 2d 1045 (9th

Cir. 1990), analyzed indemnification language substantively similar to the

---

[6] Clearly it was not PLI's intent to expose itself to uninsured risks.

Language at Issue, and found that it did not include the indemnitee's own negligence.

In <u>English</u>, the language at issue provided,

> "The Contractor shall hold and save the government, its officers and agents, free and harmless from liability of any nature occasioned by his operations." 521. F.2d at 67.

The Court held that the language did not clearly express a mutual intention that the contractor should bear the burden of the government's negligence. <u>Id.</u> at 68.

In <u>Contract Management</u>, the language at issue provided,

> "The Contractor shall be liable and will indemnify and hold harmless the Government, its agents and employees against all actions or claims for all damages to persons or property, including death arising or resulting from the fault, negligence, wrongful act, or wrongful omission of the Contractor…";

and

> "The Contractor shall indemnify and hold the Government harmless in connection with any liability which may result from injuries to or the death of any employees of the Contractor while they are doing work in accomplishment of this contract." 912. F.2d at 1046.

Whether or not PLI had reasonable notice of the Language at Issue, PLI's interpretation is a reasonable alternative to Navigation's interpretation and its interpretation should thereby be enforced. Navigation drafted the language. PLI's actual unawareness and the futility in objecting to the Language at Issue had it known of the interpretation further supports consideration for its version of

12

interpretation. Additionally, there is a vast disparity in bargaining power between Navigation, which dominates ocean transport of containerized freight to Hawaii, has offices in over fifteen cities and is a wholly-owned subsidiary of Alexander and Baldwin, Inc., on the one hand, and PLI on the other. See PLI's SCS #37.

Furthermore, the Language at Issue suffers from ambiguity in its punctuation, the use of the phrase "…in respect of…", and repetition of the word "loss", which renders the phrase "…or any other loss loss or expenses, including but not limited to lost profits and attorney's fees, caused by the acts or omissions of any livestock attendant provided by the shipper…" nonsensical and ambiguous and therefore unenforceable as to Navigation's claim for attorney's fees.

Lastly, since PLI has shown facts that support a duty owed by Navigation to PLI, PLI's cross-claim is not simply based on contribution, but on implied contract as well. See Hardy v. Gulf Oil Corp., 949 F.2d 826, 833-3 (5th Cir. 1992). Therefore, Navigation owes indemnification to PLI on that basis.

## IV.   CONCLUSION

Navigation's motion is premature as there are questions of fact regarding the legal elements of the parties' negligence claims. The necessary findings will not exist until a trial is held. The Ninth Circuit has a "traditional reluctance…to cast the burden of negligent actions upon those who were not actually at fault." 521 F.2d at 67. Here, there are no findings of negligence,

13

including any breach of duty or causation. These latter elements are questions of fact that have yet to be determined. <u>Armstrong v. United States</u>, 756 F.2d 1407, 140 (9thCir. 1985). Here, witness credibility will likely also play a major role in such findings.

For the reasons stated above, Navigation's motion should be denied *in toto*.

DATED:  Honolulu, Hawaii, _____MAR 3 0 2006_____.

_____
ROY F. HUGHES
THOMAS E. IRONS
Attorneys for Defendant
PACIFIC LIVESTOCK, INC.

14

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BERT MEYER, | ) Civil No.: CV04 00049 JMS-BMK |
| | ) (In Admiralty) |
| Plaintiff, | ) |
| | ) CERTIFICATE OF SERVICE |
| vs. | ) |
| | ) |
| MATSON NAVIGATION | ) |
| COMPANY, INC.; and PACIFIC | ) |
| LIVESTOCK, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was duly served on the parties listed below at their respective address by means indicated below.

|  | VIA HAND DELIVERY | VIA U.S. MAIL |
|---|---|---|
| PRESTON EASLEY, ESQ.<br>2500 Via Cabrilo Marina, Suite 106<br>San Pedro, California 90731-7724 | | X |
| Attorney for Plaintiff<br>BERT MEYER | | |

<u>VIA HAND DELIVERY</u>    <u>VIA U.S. MAIL</u>

JOHN R. LACY, ESQ.                              X
RANDOLF L.M. BALDEMOR, ESQ.
Alii Place, Suite 1800
1099 Alakea Street
Honolulu, Hawaii 96813

Attorneys for Defendant
MATSON NAVIGATION COMPANY, INC.

                                          MAR 3 0 2006

                DATED: Honolulu, Hawaii, _____.

                        _____
                        ROY F. HUGHES
                        THOMAS E. IRONS
                        Attorneys for Defendant
                        PACIFIC LIVESTOCK, INC.