Case 1:04-cv-00049-JMS-BMK   Document 159   Filed 03/30/2006   Page 1 of 12

ORIGINAL

HUGHES & TAOSAKA
Attorneys At Law, A Law Corporation

ROY F. HUGHES           1774-0
THOMAS E. IRONS       7876-0
Pauahi Tower, Suite 900
1001 Bishop Street
Honolulu, Hawaii            96813
Telephone No.           526-9744

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 30 2006

at __ o'clock and __ min __ M
SUE BEITIA, CLERK

Attorneys for Defendant
PACIFIC LIVESTOCK, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| BERT MEYER, | ) | Civil No.: CV04 00049 JMS-BMK |
|---|---|---|
| | ) | (In Admiralty) |
| Plaintiff, | ) | |
| | ) | DEFENDANT PACIFIC |
| vs. | ) | LIVESTOCK, INC.'S |
| | ) | MEMORANDUM IN OPPOSITION |
| MATSON NAVIGATION | ) | TO MATSON NAVIGATION |
| COMPANY, INC.; and PACIFIC | ) | COMPANY, INC.'S MOTION FOR |
| LIVESTOCK, INC., | ) | SUMMARY JUDGMENT FILED ON |
| | ) | JANUARY 9, 2006; CERTIFICATE |
| Defendants. | ) | OF SERVICE |
| | ) | |
| | ) | Date: April 17, 2006 |
| | ) | Time: 9:00 a.m. |
| | ) | Honorable J. Michael Seabright |

OpptoMatMSJ3

PACIFIC LIVESTOCK, INC.'S MEMORANDUM IN
OPPOSITION TO MATSON NAVIGATION COMPANY, INC.'S
MOTION FOR SUMMARY JUDGMENT FILED ON JANUARY 9, 2006

I. **INTRODUCTION**

On January 27, 2004, Bert Meyer (hereinafter "Plaintiff"), filed a Complaint against Matson Navigation Company, Inc. (hereinafter "Navigation"), under CV 04 00049. On May 25, 2005, Plaintiff filed a Second Amended Complaint adding Pacific Livestock, Inc. (hereinafter "PLI"). On September 23, 2005, PLI answered the Second Amended Complaint and a Cross-Claim asserted by Navigation, and served its own Cross-Claim against Navigation.

The Second Amended Complaint alleges damages as a result of a slip and fall accident which occurred on October 1, 2002 aboard the s/s Lihue, a vessel owned by Navigation. Plaintiff alleges Navigation is legally responsible for the resulting injuries because it created a dangerous work environment by failing to provide a guardrail or cover or other fall protection for the area from which Plaintiff fell (the "gap") and for allowing animal waste to exist in and around the area of the fall. Plaintiff alleges PLI is also legally responsible for the resulting injuries by failing to ensure animal waste was cleared.

On January 9, 2006, Navigation filed the instant motion for summary judgment. On January 17, 2006, Plaintiff filed his memorandum of points and authorities and related documents in opposition to the motion. Plaintiff's

opposition raises salient issues of fact and law that support a denial of Navigation's motion, and PLI refers and incorporates by reference the points and authorities raised therein. In particular, Martinez v. Korea Shipping Corp., Ltd., 903 F2d 606 (9th Cir. 1990), factually indistinguishable from the claim at issue here, stands for the proposition that any "open and obvious" defense is legally unavailable to Navigation. Thomas v. Newton International Enterprises, 42 F3d 1266 (9th Cir. 1994) found expert opinion evidence sufficient to create material issue of fact on whether a condition is unreasonably dangerous.

    Here, Navigation has not set forth undisputed issues of fact that the conditions aboard the Lihue were not unreasonably dangerous at turnover. The conditions aboard the Lihue existed prior to the start of cargo operations, and Navigation's reliance on Scindia Steam Navigation Company, Ltd. v. De Los Santos, 451 U.S. 156 (1981) and its progeny is misplaced since Navigation created and/or failed to remedy the conditions and thereby violated its turnover duties. In short, whether Navigation breached its Scindia duties and whether such breach caused Plaintiff's injuries are factual issues clearly in dispute here.[1]

---

[1] Furthermore, Scindia speaks to the relationship between vessel owners and stevedores, not between vessel owner's and carriers such as PLI. Therefore Navigation's motion has no effect on PLI's cross-claim against Navigation. That claim will be appropriately tried pursuant to general maritime negligence law, including principals of implied contract. See Gallick v. Baltimore & Ohio Railroad Co., 372 U.S. 108 (1963)(noting "ordinary degree of care standard applicable under general maritime law); Hardy v. Gulf Oil Corp., 949 F. 2d 826,

3

Assuming this Court grants Navigation's motion, PLI intends to use such ruling to bar Plaintiff's claims as well. Here, Plaintiff and Plaintiff's employer, Matson Terminals, Inc., were in the best position to remedy the hazards alleged. PLI's work is under the control and supervision of the Lihue's crew. See PLI's Response to Navigation's Statement of Separate and Concise Statement of Facts (hereinafter PLI's SCS") at #13, #14. Once cargo operations begin, PLI has no more control over any condition created by animal waste on the vessel than Navigation did, and therefore PLI's legal responsibility toward Plaintiff can and/or should be no greater than Navigation's. Once cargo operations begin, the stevedore, here Matson Terminals, Inc. and Plaintiff have "primary control" over the operations. Scindia, 451 U.S. at 170.

## II. REPLY TO MATERIAL FACTS CONTAINED IN NAVIGATION AND PLAINTIFF'S RESPECTIVE MEMORANDA

PLI agrees with Navigation that Plaintiff has been inconsistent in his accounts of the events preceding his fall. This includes statements made in connection with the issue of lighting. In his recorded statement taken by Heidi Kahlbaum on October 17, 2002, Plaintiff stated that the weather on October 1, 2002 was "slightly overcast" (see page 7 of Exhibit "A" to the Declaration of Randolph Baldemor, attached to Navigation's SCS); that "I didn't realize there was

---

833-34 (5th Cir. 1992)(noting recognition of indemnity based on contract, implied contract and tort).

a hole there. Cause I couldn't see anything" (Id. at page 13); "I couldn't see nothing…Usually, um, where the crane is, uh, there are lights but the crane wasn't here yet…There's no light" (Id. at page 24); when asked about any "negligence" Plaintiff stated, "No, just the light…" (Id. at page 54); and "Lighting could have been better…It was just the way the containers are stacked you couldn't see. I mean if you got to this end you could see, but inside you can't see nothing." (Id. at page 55).

Contrary to Navigation's factual assertions, Plaintiff did not testify that the sun had not set. He stated he did not know if the sun had set. See Exhibit "D" to the Declaration of Randolf Baldemor, at page 51, attached to Navigation's SCS. In fact, according to the records of the U.S. Naval Observatory Astronomical Applications Department's website, the sun set at 6:19 p.m. on October 1, 2002, roughly forty minutes before Plaintiff claims he fell. See Exhibit "A" to the declaration of Thomas Irons, attached to attached to PLI's SCS.

Therefore, it appears there is a question of fact as to whether lighting was sufficient.

Navigation's proferred expert report asserts a gap is required between the catwalk and hatch cover for cargo operations. See Exhibit "E" to the Declaration of Randolf Baldemor, attached to Navigation's SCS. However, as Plaintiff and Plaintiff's expert have pointed out, there is a space on the other end of

row 15-16 of the Lihue from where Plaintiff states he fell that is smaller than the space at issue, and it appears his foot would not have slipped through that smaller gap. See Second Declaration of Bert Meyer at para. 2, and Declaration of Capt. Robert E. Riley, at paragraph 8, attached to Plaintiff's memorandum of points an authorities (hereinafter "Plaintiff's memorandum").

Plaintiff claims there was animal waste in the area where he fell and that he reported it to Daniel Farney, his supervisor, and an employee of Matson Terminals, Inc. See Exhibit "D" attached to the Declaration of Randolf Baldemor, attached to Navigation's SCS. Navigation has provided a Vessel Inspection Report (the product of a joint inspection performed by the crew of the Lihue and the stevedore, Matson Terminals, Inc.) that fails to mention any hazards, including the "gap" or any animal waste (assuming these conditions are in fact hazards). See Exhibit "1", attached to the Declaration of John Robinette, attached to Navigation's SCS. To question (2) on the inspection form, "Were work areas free and clear of dangerous tripping and slipping hazards" the checked response was "yes". Clearly the "gap" was a hazard, and if Plaintiff's testimony regarding the presence of animal waste is accurate and truthful, then Navigation's (and Matson Terminal's) inspection was inadequate to protect Plaintiff's safety, and others on board, including Pacific Livestock's animal tender.

Plaintiff's contradictory testimony is the **only** evidence that animal waste was present in the area where he fell. Plaintiff's Declaration attached to his memorandum in opposition states "…There were animal feces, animal urine, and slime from the animal waste on all horizontal surfaces, including the grating and hatchcover." See Declaration of Bert Meyer, paragraph 2, attached to Plaintiff's memorandum. The source of this waste or whether it was a causative factor has not been shown. PLI's animal tender George Kinnell disputes that pig waste was present in the area where Plaintiff fell. See PLI's SCS # 9.

On page two of Plaintiff's memorandum, Plaintiff refers to a cargo letter, dated nine months before the accident, reflecting a problem with an unidentified tender. However, Navigation has never had a problem with the work of George Kinnell, PLI's animal tender on the Lihue the night of Plaintiff's accident. In fact, Navigation has commended his work in the past. See Declaration of Kinnell, attached to PLI's SCS, at paragraph 6.

Navigation's own policy documents required it to supervise the work of PLI's tenders.[2]

Navigation's Company policy Number E-01-040 provides:

3.0  **Responsibility**
3.1  The Master is *responsible for ensuring* the Livestock Tender is qualified and *complies with this procedure.*

---

[2] There is no indication Navigation's supervisory authority of PLI's tender ends at vessel turnover.

    4.0    **Procedure**
    4.11  Daily washdown - The Livestock Tender shall attach drain hoses and *washdown containers/trailers* on a daily basis *when authorized to do so by the Chief Officer*. (Emphasis added). See Exhibit "B", attached to the Declaration of Thomas Irons, attached to PLI's SCS (this document was authenticated and submitted into the court record through the Declaration of Steve Rubin, filed on February 14, 2006, in connection with Navigation's summary judgment motion against PLI.).

By its terms, this document raises the issue of a duty to supervise that would have been breached if Plaintiff's allegations are ultimately found to be true. See PLI's SCS #14.

Based on the above, and by incorporation of the points raised by Plaintiff's memorandum, there are issues of material fact and Navigation's motion should be denied. There are issues of fact, including, but not limited to, Plaintiff's statements regarding the events and conditions surrounding the accident, whether adequate illumination was provided, whether the gap in the vessel's equipment under its control and alleged animal waste was an unreasonably dangerous condition for Plaintiff, whether the Lihue was turned over to Matson Terminals in an usable condition, whether Navigation should have known about the gap and animal waste and taken remedial measures, and whether Navigation violated its own policies related thereto.

III. **ARGUMENT**

Binding legal precedent requires denial of Navigation's motion. Martinez v. Korea Shipping Corp., Ltd., 903 F2d 606 (9th Cir. 1990); Thomas v. Newton International Enterprises 42 F3d 1266 (9th Cir. 1994). Furthermore, Scindia does not stand for the proposition that a vessel can create dangerous conditions and then later disclaim any responsibility for their creation merely because cargo operations had begun. In such a situation, comparative fault principals should apply. 451 U.S. 156 (1981) at footnote 13.

Vessels must exercise ordinary care to prevent accidents on those parts of the vessel that remain under the active control of the vessel. Howlett v. Birkdale Shipping Co., S.A., 512 U.S. 92, 98 (1994). Once cargo operations begin, if a vessel is aware of a dangerous condition and knows a stevedore will not correct the situation, it must intervene. Helaire v. Mobil Oil Co., 709 F.2d 1031, 1036 (5th Cir. 1983). Here, there are questions as to whether equipment on the Lihue caused Plaintiff's damages, including equipment used for illumination. Plaintiff has intimated that he did not tell anyone he would not work in the area at issue because he "thought he would be written up." See PLI's SCS, #18. On January 30, 2006, PLI filed a motion for leave to file a third-party complaint against Matson Terminals, which has since been denied. However, in that motion, PLI pointed out that Matson Terminals is a wholly owned subsidiary of Navigation, that certain

employees of Matson Terminals have a duty to report to employees of Navigation, and certain employees of Navigation have job duties to Matson Terminals. Therefore, if Navigation knew Plaintiff would not remedy the conditions at issue or that Plaintiff was not allowed to cease work despite the conditions, then it is at least arguable that Navigation should have intervened at some point before Plaintiff was injured.

## IV.  CONCLUSION

For the above stated reasons, PLI respectfully requests that Navigation's motion be denied.

DATED:  Honolulu, Hawaii, _____ MAR 3 0 2006 _____.

_____
ROY F. HUGHES
THOMAS E. IRONS
Attorneys for Defendant
PACIFIC LIVESTOCK, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BERT MEYER, | ) | Civil No.: CV04 00049 JMS-BMK |
| | ) | (In Admiralty) |
| Plaintiff, | ) | |
| | ) | CERTIFICATE OF SERVICE |
| vs. | ) | |
| | ) | |
| MATSON NAVIGATION COMPANY, INC.; and PACIFIC LIVESTOCK, INC., | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was duly served on the parties listed below at their respective address by means indicated below.

|  | VIA HAND DELIVERY | VIA U.S. MAIL |
|---|---|---|
| PRESTON EASLEY, ESQ.<br>2500 Via Cabrilo Marina, Suite 106<br>San Pedro, California 90731-7724<br><br>Attorney for Plaintiff<br>BERT MEYER | | X |

<u>VIA HAND DELIVERY</u>   <u>VIA U.S. MAIL</u>

JOHN R. LACY, ESQ.                                  X
RANDOLF L.M. BALDEMOR, ESQ.
Alii Place, Suite 1800
1099 Alakea Street
Honolulu, Hawaii  96813

Attorneys for Defendant
MATSON NAVIGATION COMPANY, INC.

     DATED:  Honolulu, Hawaii, _____.

MAR 3 0 2006

_____
ROY F. HUGHES
THOMAS E. IRONS
Attorneys for Defendant
PACIFIC LIVESTOCK, INC.

2