ORIGINAL

HUGHES & TAOSAKA
Attorneys At Law, A Law Corporation

ROY F. HUGHES 1774-0
THOMAS E. IRONS 7876-0
Pauahi Tower, Suite 900
1001 Bishop Street
Honolulu, Hawaii 96813
Telephone No. 526-9744

Attorneys for Defendant
PACIFIC LIVESTOCK, INC.

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
MAR 30 2006
at 4 o'clock and 00 min. P M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BERT MEYER,<br><br>Plaintiff,<br><br>vs.<br><br>MATSON NAVIGATION COMPANY, INC.; and PACIFIC LIVESTOCK, INC.,<br><br>Defendants. | Civil No.: CV04 00049 JMS-BMK (In Admiralty)<br><br>DEFENDANT PACIFIC LIVESTOCK, INC.'S SEPARATE AND CONCISE STATEMENT OF FACTS IN SUPPORT OF ITS MEMORANDUM IN OPPOSITION TO MATSON NAVIGATION COMPANY, INC.'S MOTION FOR SUMMARY JUDGMENT AGAINST PACIFIC LIVESTOCK, INC. FILED ON FEBRUARY 15, 2006; DECLARATION OF GEORGE KINNELL; DECLARATION OF PETER CRAIG; DECLARATION OF DENNIS SMITH; EXHIBIT "1"; DECLARATION OF THOMAS IRONS; EXHIBIT "A"-"H"; CERTIFICATE OF SERVICE |

[CAPTION CONTINUED]

) Hearing Date
) Date: April 17, 2006
) Time: 9:00 a.m.
) Honorable J. Michael Seabright
)
) Non-Jury Trial: June 14, 2006
) Honorable J. Michael Seabright

OpptoMatMSJSCSPLI

DEFENDANT PACIFIC LIVESTOCK, INC.'S SEPARATE AND CONCISE STATEMENT OF FACTS IN SUPPORT OF ITS MEMORANDUM IN OPPOSITION TO MATSON NAVIGATION COMPANY, INC.'S MOTION FOR SUMMARY JUDGMENT AGAINST PACIFIC LIVESTOCK FILED ON FEBRURY 15, 2006

## I. RESPONSE TO MATSON NAVIGATION COMPANY, INC.'S SEPARATE AND CONCISE STATEMENT OF FACTS

| | FACTS | EVIDENTIARY SUPPORT |
|---|---|---|
| 1. | Not disputed. | |
| 2. | Not disputed. | See Declaration of George Kinnell at paras. 7, 10, 25-28, and 30, attached to Pacific Livestock, Inc.'s ("PLI") Response to Matson Navigation Company, Inc.'s ("Navigation") Separate and Concise Statement of Facts ("SCS"). |

| | FACTS | EVIDENTIARY SUPPORT |
|---|---|---|
| 3. | Partially disputed. PLI tender George Kinnell was the only hog tender aboard the Lihue on October 1, 2002. | See Declaration of George Kinnell, at para. 5 and Declaration of Peter Craig at para. 2, both attached to PLI's Response to Navigation's SCS. |
| 4. | PLI is not in possession of any information at this time to dispute this fact. | |
| 5. | Partially disputed. PLI is not in possession of any information at this time to dispute that Exhibits "A"-"D" attached to the Declaration of Steve Rubin, attached to Navigation's SCS, are documents related to the voyage in question. However, the Exhibits speak for themselves and do not indicate they "govern" PLI's shipments. | See legal authority in PLI's memorandum in opposition. |
| 6. | Exhibit "E" attached to the Declaration of Steve Rubin, attached to Navigation's SCS speaks for itself. PLI does not dispute that Exhibit "E" states the phrase in Navigation's SCS except that "Mayson" should be "Matson". | |
| 7. | Partially disputed. Exhibit "E" attached to the Declaration of Steve Rubin, attached to Navigation's SCS speaks for itself. PLI does not dispute that Exhibit "E" states the excerpted phrase in Navigation's SCS except that the word "loss" is repeated twice and is therefore nonsensical. | |

| | FACTS | EVIDENTIARY SUPPORT |
|---|---|---|
| 8. | Disputed. The language was not part of previous versions of Freight Tariff No. 14F and so it was not required to be stated, (charges) and whether the language relates to rates or whether it relates to charges or whether it sets terms of the service provided by Navigation to the shipper is a question of fact and/or law. | See Exhibit "A" to the Declaration of Thomas Irons, attached to attached to PLI's Response Navigation's SCS; legal authority in PLI's memorandum in opposition. |
| 9. | Disputed. The provision from the tariff speaks for itself, and whether the language relates to the rate charged or whether the "indemnity" provided is a component of the rate charged is a question of fact and/or law. PLI does not dispute that Navigation has its own self-serving "understanding" of the provision. | See legal authority in PLI memorandum in opposition. |
| 10. | PLI is not in possession of any information at this time to dispute this fact(s). | |
| 11. | Partially disputed.<br><br>PLI admits Navigation creates the bills of lading and freight bills.<br><br>PLI is not in possession of any information at this time to dispute that Exhibits "A"-"D" attached to the Declaration of Steve Rubin, attached to Navigation's SCS are documents related to the voyage in question. The Exhibits speak for themselves and they do not indicate or refer to an indemnity agreement or any terms thereof which are therefore not enforceable terms. | See legal authority in PLI's memorandum in opposition. |
| 12. | Not disputed. | |

| | FACTS | EVIDENTIARY SUPPORT |
|---|---|---|
| 13. | Partially disputed. Exhibits "A"-"D" attached to the Declaration of Steve Rubin, attached to Navigation's SCS speak for themselves and whether a tariff is "incorporated by reference" is a question of fact and/or law. PLI disputes Exhibits "A"-"D" incorporate by reference any tariff and/or any indemnity agreement. | See legal authority in PLI's memorandum in opposition. |
| 14. | Exhibit "F" attached to the Declaration of John Robinette, attached to Navigation's SCS speaks for itself and includes "**Responsibility**: The Master is responsible for ensuring the Livestock Tender is qualified and complies with this procedure."<br><br>PLI tender George Kinnell was not given a copy of Exhibit "F" on the voyage in question, was not given a tour of the Lihue, and was not instructed on wash down procedures.<br><br>PLI tender George Kinnell states he was under the control and supervision of the Lihue's crew. Pete Craig states the same. | See Declaration of George Kinnell at para. 16, Declaration of Peter Craig at para. 6, both attached to PLI's Response to Navigation's SCS. |
| 15. | Disputed. | See Declaration of George Kinnell at para. 6., attached to PLI's Response to Navigation's SCS. |
| 16. | Not disputed. | |

| | FACTS | EVIDENTIARY SUPPORT |
|---|---|---|
| 17. | PLI does not dispute that Meyer alleges he was injured as a result of slipping on pig urine and feces that PLI and Navigation should have remedied and that Meyer alleges he was injured as a result of falling through a gap between the hatchcover and catwalk that Navigation failed to barricade or cover. | See Exhibit "5", at page 6; Exhibit "1" at paras. 7-9 both attached to the Declaration of Randolf Baldemor, attached to Navigation's SCS. |
| 18. | Disputed. Meyer's expert did not state the precipitating cause of the accident was the presence of animal waste on the padeye in question.<br><br>George Kinnell disputes that there was animal waste from PLI's hogs in the immediate area where Meyer fell and he has seen greasy turnbuckles leaning on padeyes on the Lihue.<br><br>PLI's expert does not agree that waste from PLI's hogs was a cause of the accident. | See Exhibit "B" at pages 149-150, attached to the Declaration of Thomas Irons; Declaration of George Kinnell, at paragraphs 11, 12, 21, 22, 26-30; and Declaration of Dennis Smith, at para. 8, all attached to PLI's Response to Navigation's SCS. |

## II. ADDITIONAL FACTS

| | FACTS | EVIDENTIARY SUPPORT |
|---|---|---|
| 19. | Navigation's crew on the Lihue is "the law" as far as the work of PLI's animal tenders aboard the Lihue and they are under the direct command and supervision of the crew. | See Declaration of Pete Craig, para. 6; Declaration of George Kinnell, para. 17, both attached to PLI's Response to Navigation's SCS. |

| | FACTS | EVIDENTIARY SUPPORT |
|---|---|---|
| 20. | Navigation's crew on the Lihue supervises and directs the work of PLI's animal tenders. | See Declaration of George Kinnell, at paras. 17 and 18, attached to PLI's Response to Navigation's SCS. |
| 21. | The Chief Mate on the Lihue on the voyage in question stated conducted inspections to ensure the vessel was free of animal waste before entering port and a second safety inspection was conducted by the crew after the Lihue arrived in Honolulu. | See Exhibit "C", at pages 27 and 34-35, attached to the Declaration of Thomas Irons attached to PLI's Response to Navigation's SCS. |
| 22. | Navigation's Company Policy Number E-01-040 states "The Master is responsible for ensuring the Livestock Tender complies with this procedure…" "…is given an uncontrolled copy of this procedure…" "…is given a tour of the vessel..." and the Livestock Tender "…shall attach drain hoses and wash down containers/trailers on a daily basis when authorized to do so by the Chief Officer…." and Livestock Tenders are "…carried as "guests"…" | See Exhibit "F" attached to the Declaration of John Robinette, attached to Navigation's SCS. |
| 23. | Company Policy Number E-01-040 accurately states Navigation's policy with regards to animal tenders. | See Exhibit "F", attached to the Declaration of John Robinette, attached to Navigation's SCS. |

| | FACTS | EVIDENTIARY SUPPORT |
|---|---|---|
| 24. | It would be impossible to effectively clean up liquid animal waste after the Lihue reached port in Honolulu with any clean up technique other than a wash down. | See Exhibit "B" at pages 196-197 attached to the Declaration of Thomas E. Irons, attached to PLI's Response to Navigation's SCS. |
| 25. | There was no waste from PLI's hogs in the area around where Meyer fell. | See Declaration of George Kinnell at paras. 21, 26, 27, 28, 30, attached to PLI's Response to Navigation's SCS. |
| 26. | Water is the only material used to clear or deal with animal waste. | See Declaration of George Kinnell at para. 15, attached to PLI's Response to Navigation's SCS. |
| 27. | Navigation had a duty ensure any animal waste was cleared before Meyer began to work in the area. | See Declaration of Robert Riley, at para. 6, attached to Plaintiff's Memorandum of Points and Authorities filed in opposition to Navigation's motion for summary judgment filed January 11, 2006; |

| | FACTS | EVIDENTIARY SUPPORT |
|---|---|---|
| | | See also Declaration of Dennis Smith, at para. 9, attached to attached to PLI's Response to Navigation's SCS. |
| 28. | PLI was unaware of the indemnity agreement that Navigation is now asserting against PLI. | See Declaration of Peter Craig, at para. 3, attached to PLI's Response to Navigation's SCS. |
| 29. | Navigation never told PLI that it had or would assert an indemnity provision against PLI. | See Declaration of Peter Craig, at para.4, attached to PLI's Response to Navigation's SCS. |
| 30. | Navigation is not an additional insured on any applicable PLI insurance policies. | See Declaration of Peter Craig, at para. 5, attached to PLI's Response to Navigation's SCS. |
| 31. | No tour of the Lihue or any written rules were provided by Navigation to George Kinnell for the voyage at issue. | See Declaration of George Kinnell at para. 16, attached to PLI's Response to Navigation's SCS. |

| | FACTS | EVIDENTIARY SUPPORT |
|---|---|---|
| 32. | Navigation's pre-cargo inspection of the Lihue on October 1, 2002, failed to note the presence of any animal waste. | See Exhibit "1", attached to the Declaration of John Robinette, attached to Navigation's SCS in support of its motion for summary judgment filed January 11, 2006.<br><br>See Exhibit "D" to the Declaration of Thomas E. Irons, attached to PLI's Response to Navigation's SCS. |
| 33. | Inadequate illumination aboard the Lihue was a cause of Meyer's accident and PLI was not responsible for providing illumination for Meyer. | See pages 13, and 23-25, 54-55, of the Recorded Statement of Bert Meyer, attached as Exhibit "A" to Matson's SCS in support of its motion for summary judgment filed January 11, 2006. See Declaration of Dennis Smith, at para. 7, attached to PLI's Response to Navigation's SCS. |

| | FACTS | EVIDENTIARY SUPPORT |
|---|---|---|
| 34. | It would have been illegal to perform a washdown of any waste on the Lihue after it arrived in Honolulu on October 1, 2002. | See Declaration of Peter Craig, at para. 7, attached to PLI's Response to Navigation's SCS. |
| 35. | Meyer did not know whether there was grease on the padeye he slipped from. | See Exhibit "F", at page 89, attached to Declaration of Thomas E. Irons, attached to PLI's Response to Navigation's SCS. |
| 36. | Navigation knew the identity of PLI's tenders on or about June 2004 but did not assert defense and indemnification against PLI until October 17, 2005. | See Exhibits "E" and "G", attached Declaration of Thomas E. Irons, attached to PLI's Response to Navigation's SCS. |
| 37. | Navigation is the principal carrier of containerized freight between the Pacific Coast and Hawaii. Navigation is headquartered in Oakland, CA and also has offices in 15 other cities. | See Exhibits "H", attached Declaration of Thomas E. Irons, attached to PLI's Response to Navigation's SCS. |

DATED: Honolulu, Hawaii, MAR 30 2006.

ROY F. HUGHES
THOMAS E. IRONS
Attorneys for Defendant
PACIFIC LIVESTOCK, INC.