ROBERT E. RILEY - 8/25/05

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

---oOo---

BERT MEYER,

        Plaintiff,

 vs.                        No. 1:04cv00049JMS-BMK

MATSON NAVIGATION COMPANY, INC.,

        Defendant.

Deposition of

ROBERT E. RILEY

Thursday, August 25, 2005

**CERTIFIED COPY**

REPORTED BY:  MARY DUTRA, CSR #9251

NOGARA REPORTING SERVICE
130 Battery Street, Suite 580
San Francisco, California 94111
(415) 398-1889

EXHIBIT "B"

ROBERT E. RILEY - 8/25/05

```
 1                    I N D E X
 2
 3                                              Page Number
 4   EXAMINATION BY MR. LACY                         5
 5   Afternoon Session
 6   EXAMINATION BY MR. LACY (Resumed)              92
 7                    ---oOo---
 8
 9                   E X H I B I T S
10   Defendant's
11     1   Invoice No. B.M. 1-2003 from Captain     9
           Robert E. Riley to Law Offices of
12         Preston Easley
13     2   Document entitled "Bert Meyer v.        18
           Matson Navigation Co., Inc., and
14         Pacific Livestock, Inc., Revised
           Report of Captain Robert E. Riley,
15         June 22, 2005," with photocopies of
           photographs attached
16
       3   Expert Disclosure; Certificate of       23
17         Service from John R. Lacy, with
           attached documents
18
       4   Presentation of Qualifications of       23
19         Robert E. Riley
20     5   Photocopy of photograph                 59
21     6   Document headed "Recorded               92
           Statement"
22
       7   Document headed "Bert Meyer             92
23         Deposition August 31, 2004"
24     8   Document headed "Depo-Keahi Birch       92
           November 9, 2004"
25
```

<< NOGARA REPORTING SERVICE >>

ROBERT E. RILEY - /25/05

1                    I N D E X (Continued)

2                   E X H I B I T S (Continued)

3

4    Defendant's                                          Page Number

5      9   Document headed "Depo Daniel Farney            92
           August 11, 2004"
6
       10  Handwritten diagram                            92
7
       11  Photocopy of photograph with                   115
8          handwritten note

9      12  Accident Report, Matson Terminals,             127
           Inc., for Bert Meyer
10
       13  Photocopy of photograph                        190
11
       14  Photocopy of photograph                        193
12

13                          ---oOo---

14

15

16

17

18

19

20

21

22

23

24

25

```
 1        BE IT REMEMBERED that, pursuant to Notice of
 2   Taking Deposition and Subpoena Duces Tecum and on
 3   Thursday, the 25th day of August, 2005, commencing at
 4   the hour of 9:37 o'clock a.m. thereof, at the Offices
 5   of NOGARA REPORTING SERVICE, 130 Battery Street,
 6   Suite 580, San Francisco, California, before me, MARY
 7   DUTRA, a Certified Shorthand Reporter in and for the
 8   State of California, personally appeared
 9                    ROBERT E. RILEY,
10   called as a witness by the Defendant, having been by
11   me first duly sworn, was examined and testified as
12   hereinafter set forth.
13                       ---oOo---
14                  APPEARANCES OF COUNSEL
15   For the Plaintiff
     LAW OFFICES OF PRESTON EASLEY
16   2500 Via Cabrillo Marina
     Suite 106
17   San Pedro, California 90731-7724
     (310) 832-5315
18   By:  PRESTON EASLEY, Attorney at Law

19   For the Defendant
     GOODSILL ANDERSON QUINN & STIFEL, LLP
20   Alii Place, Suite 1800
     1099 Alakea Street
21   Honolulu, Hawaii 96813
     (808) 547-5600
22   By:  JOHN R. LACY, Attorney at Law, and

23   BARBARA A. BODAGER, Assistant General Counsel
     MATSON NAVIGATION COMPANY
24   555 12th Street
     Oakland, California 94607
25   (510) 628-4584
```

1  head, have you actually discussed it with anyone?
2       A.  I think I mentioned it one time to Preston.
3  I'm not sure.
4       Q.  Have you ever discussed it with a naval
5  architect?
6       A.  No.
7       Q.  Going on, in No. 1 you conclude that, quote,
8  "Both the gap and the animal waste created an
9  unreasonably dangerous condition for an expert and
10 experienced longshoreman," unquote.  And I guess we've
11 covered the gap.
12         What "animal waste" are you specifically
13 identifying?
14      A.  In my belief, the animal waste as described
15 including some, let's say, slimy -- slimy waste as
16 opposed to, let's say, lumps of feces.  And in that
17 situation I believe it was maybe hard to see.  So the
18 combination of the gap and the animal waste, it was --
19 you know, I don't want to read it, but it's a
20 dangerous situation.
21      Q.  If Mr. Meyer had not had animal waste as you
22 describe it on the sole of his shoe, would his foot
23 have slipped on the padeye?
24      A.  I don't know.
25      Q.  Did his foot slip on the padeye because of

1   the animal waste? *according to Meyer.*
2   A. ~~I don't know that either.~~ *Yes, according to Meyer.* Q
3   Q. Do you know what caused his foot to slip?
4   A. ~~No.~~ *Animal waste, according to Meyer.* Q
5   Q. Now, finally you say, "The gap on the LIHUE
6   does not allow longshoremen to safely perform their
7   work," end of quote.
8   What do you mean by that?
9   A. It's much too large a gap up there where
10  people are walking, working, some of at which time
11  they have to look above them to do their job. And I
12  feel that with that hazard there, it doesn't allow
13  longshoremen to safely perform their work because
14  almost at any time their foot could slip into the gap.
15  Q. With regard to the portside where you
16  measured it at 4 inches, in your opinion is that an
17  acceptable gap for the LIHUE so far as landing the
18  hatch cover?
19  A. No.
20  Q. All right.
21  A. It's still too wide.
22  Q. At what point would you find the gap
23  acceptable?
24  A. I feel the gap, say between the grating and
25  anything else, should be no bigger than the holes, if

1  A. That's my understanding, yes.

2  Q. Okay. And how did you get that
3  understanding?

4  A. From Bert Meyer's description of there being
5  slime all over everywhere or whatever he said.

6  Q. Based on your experience in having hauled
7  livestock, other than wash down are there any other
8  ways to clean up, you know, animal waste and slime?

9  A. I mean, you know, depending on the amount
10 and depending on the surface that it's adhering to,
11 you might be able to shovel it up, scoop it up.

12 Q. Did you form any opinion one way or the
13 other as to the type of waste that was on the LIHUE
14 back in October of 2002 when Mr. Meyer was injured,
15 whether it was the type of waste that can be shoveled
16 or scooped up?

17 A. I formed the opinion that there was some
18 lumps, clumps, hunks of solid animal feces that could
19 have been, say, picked up. But the slime, which is a
20 combination of urine and feces, really, really -- it
21 would be difficult to shovel; you couldn't shovel it
22 up.

23 Q. So that would be a washdown?

24 A. It would be a washdown, yes.

25 Q. What about some type of nonslip stuff like

```
 1    you'd throw on oil or something like that?
 2         A.  I think that might have made the situation
 3    better, but I really don't think that it would have
 4    corrected it.  Certainly not corrected it like a
 5    washdown would have.
 6         Q.  Have you ever had an occasion where you'd
 7    had a longshoreman, while you were working at the
 8    Marine Terminals, who had either slipped or fallen
 9    down because of animal waste?
10         A.  I don't think so.
11              MR. LACY:  That's all the questions that I
12    have, Captain Riley.  Thank you.
13              MR. EASLEY:  Let's go off the record for a
14    second.
15              (Discussion off the record.)
16              MR. EASLEY:  Okay.  We can go back on the
17    record.  I will purchase a certified copy of the
18    transcript.  I will make it available to the witness
19    to sign and correct under penalty of perjury, and I
20    will provide copies of the signature page and any
21    changes to the court reporter and opposing counsel
22    within 45 days of when the transcript arrives at my
23    San Pedro office.
24              Is that so stipulated?
25              MR. LACY:  So stipulated, with the
```

1  understanding you're going to try to get it to me
2  sooner.
3       MR. EASLEY: Right. I'll try to get it
4  sooner. Okay. We're off the record.
5       (Whereupon, the deposition concluded at
6  3:52 o'clock p.m.)

_____ 10-12-05
ROBERT E. RILEY