GOODSILL ANDERSON QUINN & STIFEL
A LIMITED LIABILITY LAW PARTNERSHIP LLP

JOHN R. LACY                    1397-0
   jlacy@goodsill.com
RANDOLF L. M. BALDEMOR    7421-0
   rbaldemor@goodsill.com
Alii Place, Suite 1800
1099 Alakea Street
Honolulu, Hawaii 96813
Telephone: (808) 547-5600
Facsimile: (808) 547-5880

Attorneys for Defendant
MATSON NAVIGATION COMPANY, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| BERT MEYER,<br><br>            Plaintiff,<br><br>vs.<br><br>MATSON NAVIGATION COMPANY, INC.; and PACIFIC LIVESTOCK, INC.,<br><br>            Defendant. | CIVIL NO. 1:04cv 00049JMS-BMK<br><br>DEFENDANT MATSON NAVIGATION COMPANY, INC.'S REPLY MEMORANDUM TO DEFENDANT PACIFIC LIVESTOCK, INC.'S MEMORANDUM IN OPPOSITION TO MATSON NAVIGATION COMPANY, INC.'S MOTION FOR SUMMARY JUDGMENT AGAINST PACIFIC LIVESTOCK, INC. FILED FEBRUARY 14, 2006, FILED MARCH 30, 2006; DECLARATION OF BARBARA A. BODAGER; EXHIBIT "A"; CERTIFICATE OF SERVICE<br><br>**HEARING:**<br>**Date:**    April 17, 2006<br>**Time:**   9:00 a.m.<br>**Judge:**  Hon. J. Michael Seabright |

1364648.1

**DEFENDANT MATSON NAVIGATION COMPANY, INC.'S
REPLY MEMORANDUM TO DEFENDANT PACIFIC
LIVESTOCK, INC.'S MEMORANDUM IN OPPOSITION TO
MATSON NAVIGATION COMPANY, INC.'S MOTION
FOR SUMMARY JUDGMENT AGAINST PACIFIC LIVESTOCK, INC.
FILED FEBRUARY 14, 2006, FILED MARCH 30, 2006**

## I. INTRODUCTION

Pacific Livestock's memorandum in opposition is fatally flawed because it fails to controvert Matson's evidence showing that the indemnity provision of Freight Tariff No. 14-F was filed with the Surface Transportation Board as mandated by statute and regulation. Moreover, Pacific Livestock, a sophisticated shipper, should be deemed to have had actual notice or, at the very least, constructive notice or reasonable notice that Freight Tariff No. 14-F was applicable inasmuch as the freight bills and bills of lading pertaining to the cargo in question explicitly stated that Freight Tariff No. 14-F was applicable to the shipments and Pacific Livestock was given access to the tariff. For these reasons, Matson respectfully requests the Court to grant summary judgment in its favor.

## II. ARGUMENT

    **A. As a matter of law, Pacific Livestock must be deemed to have constructive notice of the indemnity provision.**

        **1. Pacific Livestock has not disputed and cannot dispute that it had notice that Freight Tariff No. 14-F was applicable.**

It is important to note that Pacific Livestock has not controverted the authenticity or the admissibility of the pertinent freight bills and bills of lading,

1364648.1

which are attached as Exhibits A through D of Matson's separate and concise statement in support of the instant motion. Pacific Livestock concedes that it "is not in possession of any information at this time to dispute that Exhibits "A"-"D" . . . are documents related to the voyage in question." *See* Pacific Livestock's Separate and Concise Statement, at ¶5.

Pacific Livestock resorts to sheer semantics by arguing that the documents do not state that "they 'govern' PLI's shipments." *See* Pacific Livestock's Separate and Concise Statement, at ¶5. This is a rather absurd argument, as these documents represent the contractual relationship between the parties. Indeed, as mentioned in Matson's memorandum in support, "[a] bill of lading records that a carrier has received goods from the party that wishes to ship them, **states the terms of carriage**, and serves as evidence of the contract of carriage." *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 19 (2004) (emphasis added). Both pertinent bills of lading clearly refer to Freight Tariff No. 14-F.

### 2. Pacific Livestock does not dispute that Freight Tariff No. 14-F was available to it.

Not only was Freight Tariff No. 14-F identified in the freight bills and bills of lading, but the tariff was available to Pacific Livestock. Pacific Livestock does not dispute that Freight Tariff No. 14-F was filed with the Surface Transportation Board. *See* Matson and Pacific Livestock's Separate and Concise

2

Statements, at ¶4. Pacific Livestock also does not dispute that the tariff was available at Matson's offices and subject to inspection in person at Matson's offices, by fax, mail or subscription. *See* Matson and Pacific Livestock's Separate and Concise Statements, at ¶10. Furthermore, there is no dispute that Matson's tariffs were available on the internet at Matson's website, www.matson.com. *See* Matson and Pacific Livestock's Separate and Concise Statements, at ¶10.

> **3.    Besides mere <u>argument</u>, which alone is not sufficient to defeat summary judgment, Pacific Livestock has not controverted Steve Rubin's declaration testimony that the indemnity provision relates to the rate charged by Matson and, therefore, is a mandatory provision.**

As to the issue of whether filing the indemnity provision was mandatory, Matson previously cited 49 U.S.C. §13702(b), which requires Matson to publish and file tariffs and any rules that change, affect or determine any part of the published rate. In addition 49 C.F.R. §1312.3(a) provides that Matson "must" state in the tariff any "service terms".

Matson submitted the Declaration of Steve Rubin, Matson's General Manager, Pricing, who is responsible for rate-making, tariff publishing and compliance. He explained:

> The provision from the tariff . . . relates to the rate charged by Matson because the rate is commensurate with the service provided, and Matson's understanding of the agreement is that the shipper hires livestock attendants and indemnifies and holds Matson harmless for their conduct. With respect to the commodity in question (i.e.

3

>hogs), the indemnity provided by the shipper would have
>been a component, among other things, of the rate
>charged.

Matson's Separate and Concise Statement, at ¶9; Declaration of Steve Rubin, attached to Matson's Separate and Concise Statement, at ¶7.

Pacific Livestock simply relies on argument, and no evidence, to refute Matson's position.[1] Pacific Livestock argues that the indemnity provision was not required because "it was **not** part of previous versions of the Tariff and the commodity rates did **not** change with the inclusion of the Language at Issue." Pacific Livestock's Memorandum in Opposition, at p. 5. The first part of this argument is misleading. The indemnity provision was part of previous versions of the tariff, dating as far back as May 4, 1998 – more than four years prior to the accident. *See* Exhibit "A". The second part of the argument is overly simplistic. Numerous factors affect rate-making. Simply because Matson's rates have remained the same does not controvert Mr. Rubin's testimony that the "rate is commensurate with the service provided" (i.e. thereby constituting "service terms") and "the indemnity provided by the shipper ***would have been a component***, among other things, **of the rate charged**" (i.e. thereby serving as a component of the rate). In light of the absence of any evidence by Pacific Livestock to demonstrate that the

---

[1] If the indemnity provision were not contained within the tariff, Pacific Livestock would undoubtedly be arguing that it should have been filed with the Surface Transportation Board in order for it to be enforceable.

4

indemnity provision was not mandatory, a finding of constructive notice is appropriate.

> B. **If the Court determines the indemnity provision is non-mandatory, Pacific Livestock surely had "reasonable notice" of the indemnity provision.**

There is no need for this Court to determine whether Pacific Livestock had "reasonable notice" of the indemnity provision because constructive notice is appropriate. Nevertheless, assuming *arguendo* that Matson's constructive notice argument fails, Pacific Livestock must be deemed to have had "reasonable notice" of the indemnity provision. Consideration is given to "whether the provision in the tariff was specifically brought to the shipper's attention; the shipper's sophistication, abundant experience, or extensive prior dealings with a carrier; whether the shipper drafted the contract and directly negotiated its terms; and whether the tariff provision was specifically reproduced in the bill of lading." *Comsource Independent Foodservice Companies, Inc. v. Union Pacific Railroad Co.*, 102 F.3d 438, 444 (9th Cir. 1996) (internal quotations and citations omitted).

In this case, numerous factors strongly support a finding of "reasonable notice". Pacific Livestock does not dispute that it has shipped livestock aboard Matson's vessels since as early as 1989, and perhaps longer. *See* Matson and Pacific Livestock's Separate and Concise Statements, at ¶12. During this time, Pacific Livestock had more than ample opportunity to become familiar

5

with Freight Tariff No. 14-F. Pacific Livestock also has not disputed that the freight bills and bills of lading specifically identify Freight Tariff No. 14-F, which contains the indemnity provision in question. Thus, Pacific Livestock had ***actual notice*** that Freight Tariff No. 14-F was applicable. Further, Pacific Livestock does not dispute that Freight Tariff No. 14-F was available to it at Matson's offices, through the internet or by request.

Pacific Livestock should not be rewarded for its purported ignorance. Therefore, Pacific Livestock should be deemed to have had reasonable notice of the indemnity provision in question.

### C.  The indemnity language of Freight Tariff No. 14-F clearly requires Pacific Livestock to indemnity Matson for Meyer's claims.

Pacific Livestock attempts to create ambiguity in construing Freight Tariff No. 14-F. However, Freight Tariff No. 14-F clearly requires Pacific Livestock (i.e. "shipper") to indemnify Matson and hold Matson harmless "in respect of any injury or death of any person" (i.e. Meyer) "caused by the acts or omissions of any livestock attendant provided by the shipper."

There can be no credible dispute that the precipitating cause of the accident, as alleged, was the presence of animal feces and urine on the padeye in question. This fact was admitted by Meyer's own expert. *See* SCS, at ¶18. Moreover, the sequence of events alleged by Meyer is that he slipped on animal

6

feces and urine and then, subsequently, his left foot slipped into the alleged gap. Pacific Livestock's animal tender, George Kinnell, corroborates this fact in his declaration by stating that Meyer "told me **he slipped** and fell through a hatch." *See* Declaration of George Kinnell ("Kinnell Decl."), attached to Defendant Pacific Livestock Inc.'s Separate and Concise Statement of Facts in Support of its Memorandum in Opposition to Matson Navigation Company, Inc.'s Motion for Summary Judgment Against Pacific Livestock, Inc., Filed on February 15, 2006, filed on March 30, 2006, at ¶9.

Consequently, Meyer's claim is founded on the presence of animal feces and urine on the padeye. This was the responsibility of Pacific Livestock. Pacific Livestock attempts to blame Matson for the alleged animal feces and urine by arguing that Mr. Kinnell was "under the direct supervision and control of the Chief Mate". *See* Kinnell Decl., , at ¶16. Mr. Kinnell claims he "was not provided a tour of the vessel or any written rules of instructions on washing down the decks from the crew of the Lihue." Kinnell Decl., at ¶16 (emphasis added). This statement does not present a "material" factual dispute.

Mr. Kinnell's declaration makes clear that he was Pacific Livestock's tender aboard the *S/S Lihue* on the date of the accident. *See* Kinnell Decl., at ¶5. His responsibilities included tending to the livestock, and washing down the livestock containers as well as the areas proximate to the livestock containers. *See*

Kinnell Decl., at ¶16, 20, and 25. If Mr. Kinnell failed to make sure the pertinent livestock areas were clear of animal feces and urine, which Meyer asserts is the precipitating cause of the accident, then he and Pacific Livestock have failed in their responsibilities. In this regard, Mr. Kinnell admits that "if a problem were to arise with respect to any animal waste, the Chief Mate would direct me to clean it up." Kinnell Decl., at ¶17. Clearly, if Meyer is able to establish any liability, Pacific Livestock's conduct is a "cause", not only because they supplied the livestock which caused the slippery condition, but also because their animal tender failed to properly tend to the livestock and ensure that animal feces and urine did not create a dangerous condition aboard the ship. Pacific Livestock's conduct is, therefore, a "cause" of the alleged injury within the meaning of the indemnity provision. This would be the case even if the court were to construe the provision strictly against Matson.

## III.  CONCLUSION

For the foregoing reasons, Matson respectfully requests the Court to grant summary judgment in its favor, dismissing Pacific Livestock's cross-claim

/
/
/
/

8

and finding that Pacific Livestock is obligated to indemnify and hold Matson harmless for any liability arising from the accident in question.

DATED: Honolulu, Hawaii, April 6, 2006.

/s/ Randolf L.M. Baldemor
JOHN R. LACY
RANDOLF L.M. BALDEMOR
Attorneys for Defendant MATSON
NAVIGATION CO., INC.