GOODSILL ANDERSON QUINN & STIFEL
A LIMITED LIABILITY LAW PARTNERSHIP LLP

JOHN R. LACY                    1397-0
    jlacy@goodsill.com
RANDOLF L. M. BALDEMOR   7421-0
    rbaldemor@goodsill.com
Alii Place, Suite 1800
1099 Alakea Street
Honolulu, Hawaii  96813
Telephone:  (808) 547-5600
Facsimile:  (808) 547-5880

Attorneys for Defendant
MATSON NAVIGATION COMPANY, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BERT MEYER,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>MATSON NAVIGATION COMPANY, INC.; and PACIFIC LIVESTOCK, INC.,<br><br>　　　　　Defendant. | CIVIL NO.  1:04cv 00049JMS-BMK<br><br>DEFENDANT MATSON NAVIGATION COMPANY, INC.'S CONSOLIDATED REPLY MEMORANDUM TO PLAINTIFF AND PACIFIC LIVESTOCK, INC.'S MEMORANDA IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, FILED JANUARY 17, 2006; DECLARATION OF RANDOLF L.M. BALDEMOR; EXHIBITS "A" - "C"; CERTIFICATE OF SERVICE<br><br>**HEARING:**<br>**Date:**　　April 17, 2006<br>**Time:**　　9:00 a.m.<br>**Judge:**　　Hon. J. Michael Seabright |

**DEFENDANT MATSON NAVIGATION COMPANY, INC.'S
CONSOLIDATED REPLY MEMORANDUM TO PLAINTIFF
AND PACIFIC LIVESTOCK, INC.'S MEMORANDA IN OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT, FILED JANUARY 17, 2006**

1364474.1

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) .......................................... 1

*Bjaranson v. Botelho Shipping Corp.*, 873 F.2d 1204
   (9th Cir. 1988) ............................................................................... 4, 9, 11

*Haines v. Honolulu Shipyard, Inc.*, 125 F. Supp. 2d 1020 (D. Haw.
   2000) .................................................................................................. 1, 9

*Hampton v. Broadway Maritime Shipping Co., Ltd.*, 1997 U.S. Dist.
   LEXIS 2078, 1997 AMC 1351 (N.D. Cal. 1997) ..................................... 3

*Helaire v. Mobil Oil Co.*, 709 F.2d 1031 (5th Cir. 1983) ................................ 3

*Howlett v. Birkdale Shipping Co.*, 512 U.S. 92 (1994) ................................... 3

*Ludwig v. Pan Ocean Shipping Co.*, 941 F.2d 849 (9th Cir. 1991) ......... 9, 10

*Martinez v. Korea Shipping Corp., Ltd.*, 903 F.2d 606 (9th Cir. 1990) ......... 8

*Scindia Steam Navigation Co. v. De Los Santos*,
   451 U.S. 156 (1981) ............................................................. 2, 12, 13, 15

*Thomas v. Newton International Enterprises*, 42 F.3d 1266 (9th Cir.
   1994) ............................................................................................ 8, 9, 10

## TABLE OF CONTENTS

I. Introduction ..... 1

II. Argument ..... 2

    1. Whether the gap in between the grating and the hatchcover created an unreasonably dangerous condition for an expert and experienced longshoreman. ..... 11

    2. Whether the animal waste in plaintiff's work area created an unreasonably dangerous condition for an expert and experienced longshoreman. ..... 12

    3. Whether the vessel was turned over to the longshoremen in an unsafe condition. ..... 12

    4. Whether gaps such as the one in plaintiff's accident are common. ..... 12

    5. Whether the vessel owner was in the best position to correct the unsafe conditions. ..... 13

    6. Whether defendant MATSON knew or should have known about gap through which plaintiff fell. ..... 13

    7. The degree of danger created by the unsafe conditions. ..... 13

    8. Whether defendant MATSON should have installed a larger grating. ..... 14

    9. Whether defendant MATSON was negligent. ..... 14

    10. Whether, prior to the accident, Meyer knew it was unsafe to use the padeye for leverage. ..... 14

    11. Whether Meyer correctly stated the circumstances of his accident in the tape recorded statement that he gave to Frank Gates Acclaim. ..... 14

    12. Whether defendant MATSON violated the Matson Navigation Company Safety and Pollution Manual. ..... 15

    13. Whether defendant MATSON violated the Pacific Coast Marine Safety Code. ..... 15

III. Conclusion ..... 15

I.  **INTRODUCTION**

As the Court is surely aware, in addressing a summary judgment motion, "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). "The judge's inquiry, therefore, unavoidably asks whether ***reasonable*** jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict - 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" *Id.* at 252. Contrary to Meyer and Pacific Livestock's arguments, this standard obviously should not be construed as meaning that, in every longshore case where negligence is at issue, the matter must proceed towards trial. *See Haines v. Honolulu Shipyard, Inc.*, 125 F.Supp.2d 1020,1027 (D. Haw. 2000) (granting summary judgment where plaintiff, a longshoreworker, "failed to set forth evidence demonstrating that an experienced ship repair worker, could not, with the exercise of reasonable care, enter, exit, and work inside of the tank", which caused his injuries).

There is no dispute that, at the time of the accident, the S/S Lihue had been turned over to Matson Terminals, Inc., the stevedore. *See* Exhibit "A", Plaintiff's Response to Defendant Matson Navigation Company, Inc.'s Request for Admission ("Response to Request for Admission"), No. 42. Therefore, the turnover duty is the only duty that is applicable. As to this duty, Matson has presented evidence to demonstrate that it exercised the requisite "ordinary care

1364474.1

under the circumstances to have the ship and its equipment in such condition that an expert and experienced [longshoreworker] will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property." *See Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 167 (1981). Meyer has failed to come forward with evidence to effectively demonstrate why Matson did not exercise ordinary care and why he could not have avoided the accident if he exercised reasonable care for an "expert and experienced" longshoreworker.

## II. ARGUMENT

As the Court is aware, there are two alleged hazards in this case. The first alleged hazard is the slippery condition created by the presence of animal feces and urine in the accident area. The second alleged hazard is the gap between the hatch cover and the deck grating which Meyer claims to have slipped into after his foot slipped off of a padeye. However, in addressing the instant motion, the Court should consider the sequence of events that led to the accident. The sequence of events alleged by Meyer is that his left foot slipped on animal feces and urine while stepping on a padeye and, subsequently, fell in the alleged gap. ***Matson's own expert concedes that the precipitating cause of Meyer's injuries was the alleged slippery condition.*** *See* Exhibit "B", Deposition of Robert E. Riley, taken on August 25, 2005, at p. 187:18-188:13 (admitting that there was no other reason for Meyer's foot slipping besides the presence of animal waste on the padeye).

2

With respect to the alleged slippery condition aboard the vessel,[1] Meyer fails to present evidence that Matson should have known of the condition. The facts establish that Matson performed an inspection of the ship prior to turning over the vessel[2] and no safety hazards were noted. ***Meyer is unable to controvert this evidence.*** See Exhibit "A", Response to Request for Admission No. 30 (Meyer claimed insufficient information[3] to admit that "[o]n the day of, but prior to, the accident, the S/S LIHUE was inspected by Matson Navigation and Matson Terminals employees and no safety hazards were noted"); See Exhibit "A", Response to Request for Admission No. 1 (Meyer claimed insufficient knowledge of inspection by chief mate prior to arrival in Honolulu).[4] ***Meyer has also failed to present evidence that Matson was aware of an unreasonable danger presented by slippery conditions.*** See Helaire v. Mobil Oil Co., 709 F.2d 1031, 1043 (5th Cir. 1983) ("*Scindia* makes clear . . . that liability in such cases can be imposed only if the owner has actual knowledge of the dangerous condition as well as actual

---

[1] It is important to emphasize that, with the exception of Meyer himself, there were no eyewitnesses to the incident. See *Hampton v. Broadway Maritime Shipping Co., Ltd.*, 1997 U.S. Dist. LEXIS 2078, at *9 n. 5, 1997 AMC 1351 (N.D. Cal. 1997) ("Other circuits have held that a longshore worker's personal injury allegedly caused by grease or oil did not establish a claim against the shipowner when no evidence of grease existed other than the plaintiff's own testimony.").

[2] As a matter of law, Matson had no further obligation to inspect the vessel once it was turned over to the stevedore as in this case. See *Howlett v. Birkdale Shipping Co.*, 512 U.S. 92, 101 (1994) (rejecting the "contention that a vessel must make reasonable inspections, both during and after stevedoring operations").

[3] At this juncture, Meyer's claim of insufficient information in his responses to admission effectively establishes that he is unable to controvert the admissions. The complaint was originally filed more than two years ago on January 7, 2004, and extensive discovery has been conducted by the parties.

[4] Pacific Livestock, of course, also denies that there was animal feces and urine in the area of the accident.

3

knowledge that the stevedore is not acting to protect the longshoremen").

With respect to the gap in question, Matson presented evidence showing that it did not consider the gap in question to be a safety hazard. ***Meyer is unable to controvert this evidence.*** *See* Exhibit "A", Response to Request for Admission No. 28 (Meyer claimed insufficient information). Matson presented evidence that the alleged gap between the hatchcovers and the grating was never the subject of a Matson non-conformity report - a report that is filed when a condition on a vessel needs correcting. *See* Exhibit "C", Deposition of Paul A. Londynsky (Director of Safety, Quality & Environmental Affairs), taken on May 12, 2005, at p. 30:2-18. ***Meyer is also unable to controvert this evidence.*** *See* Exhibit "A", Response to Request for Admission Nos. 29 and 27 (Meyer claimed insufficient information).

The second part of the turnover duty inquiry requires Meyer to prove that the alleged hazards prevented him from carrying on with cargo operations if he was acting as an expert and experienced longshoreworker. As recognized by the Ninth Circuit Court of Appeals, "the plaintiff must introduce evidence that the hazard was such that an expert and experienced stevedore would not 'be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property'" and, if the plaintiff cannot establish this burden, judgment as a matter of law is appropriate. *Bjaranson v. Botelho Shipping Corp.*, 873 F.2d 1204, 1208 (9th Cir. 1988).

The circumstances in this case clearly establish that Meyer did not act as an

"expert and experienced" longshoreworker. As an initial matter, Meyer had no problems seeing the alleged safety hazards. At the time of the accident, he admits he had no problems seeing the grating of the deck. *See* Exhibit "A", Response to Request for Admission, No. 20. He admits the light was sufficient for him to see the padeye upon which he slipped. *See* Exhibit "A", Response to Request for Admission, No. 21. Therefore, visibility is not in question.

Meyer had prior knowledge of the alleged hazards. Prior to the date of the accident, Meyer had worked in the accident area. *See* Exhibit "A", Response to Request for Admission, Nos. 11, 13. In connection with these prior experiences, Meyer had fallen due to slipping on animal urine and feces. *See* Exhibit "A", Response to Request for Admission, Nos. 6, 7. Likewise, Meyer had prior knowledge of the alleged gap in question. *See* Exhibit "A", Response to Request for Admission, No. 14.

With knowledge of the alleged hazards, Meyer did not act as an "expert and experienced" longshoreworker to prevent the accident. In other words, he made no effort to clean up the alleged dangerous condition, or ask those who might be in such a position to do it. Despite his prior knowledge, Meyer never informed Matson about safety hazards presented by the presence of animal urine and feces on the deck gratings. *See* Exhibit "A", Response to Request for Admission, No. 3. Despite his prior knowledge, Meyer never complained to Matson about the alleged gap. *See* Exhibit "A", Response to Request for Admission, No. 4. Despite his

5

prior knowledge, Meyer never spoke with anyone from his union regarding safety hazards presented by animal urine and feces on the deck gratings. *See* Exhibit "A", Response to Request for Admission, No. 5. Meyer never told any Matson Terminals employee that he would not work on the vessel unless the animal feces and urine were cleaned up first. *See* Exhibit "A", Response to Request for Admission, No. 8.

On the date of the accident, Meyer failed to seek assistance to correct the slippery condition. Prior to the accident, Meyer did not ask "***anyone***" to clean up the animal urine and feces on the vessel. *See* Exhibit "A", Response to Request for Admission, No. 24 (emphasis added). Meyer did not ask the animal tender to clean the area. *See* Exhibit "A", Response to Request for Admission No. 24. Meyer should have asked an employee of Matson or Matson Terminals or Pacific Livestock's animal tender to clean up the slippery condition, but he did not do this.

Meyer could also have used simple, commonly accepted means of cleaning up any slippery conditions. He could have used water, towels, paper towels, napkins, or absorbent, which are commonly available on large vessels such as the *S/S Lihue*. It goes beyond the stretch of imagination to suggest that a large container vessel would not have these cleaning supplies available. ***Meyer cannot credibly dispute that these simple solutions were available.*** *See* Exhibit "A", Response to Request for Admission, Nos. 34, 35, 36, 37.

Meyer could also have simply exercised a small degree of prudence to avoid

6

slipping. At the time he slipped, Meyer had placed his foot on a deck fitting known as a padeye, *which was raised off of the deck*. *See* Exhibit "A", Response to Request for Admission Nos. 38 and 40.[5] A padeye is clearly not something an "expert and experienced" longshoreworker should put his foot on, particularly if the padeye is surrounded and covered with animal feces and urine as alleged by Meyer. Nevertheless, *prior to when he slipped*, Meyer already could feel his foot slipping and wobbling. *See* Exhibit "A", Response to Request for Admission, No. 25. The obvious course of action would have been to remove his foot, and he did not do this.

Meyer relies on a conclusory assertion that he "had to step on the padeye to get directly under it to pull it out. There could not be any angle on the pole." *See* Declaration of Bert Meyer, filed on January 17, 2006, at ¶3. However, the padeye is not the alleged hazard, and the angle on the pole is not something that is necessarily related to where his foot is placed. It should also be noted that Meyer's own expert concedes that, rather than Meyer putting his foot on the padeye, there was enough space for Meyer to put his foot alongside, which was an obvious way for Meyer to avoid the accident. *See* Exhibit "B", Riley Depo., at pp. 191-194 and Exh. 13 attached thereto. Had Meyer taken simple precautions to clean up or avoid the allegedly obvious slippery condition, the accident would not have occurred.

Clearly, Meyer's opposition to the instant motion is flawed. Based on his

---

[5] Importantly, Meyer is not alleging the padeye, a common deck fitting, was a dangerous condition.

admission responses, it is clear he cannot controvert evidence by Matson that it exercised ordinary care under the circumstances. In addition, he cannot controvert evidence showing that he, acting as an expert and experienced longshoreworker, could not have avoided the accident through the exercise of reasonable care on his own part. Finally, for purposes of the instant motion, there is no material dispute regarding the credibility of any witness. For these reasons, it would be erroneous to allow the case to proceed towards trial.[6]

In support of their legal arguments, both Meyer and Pacific Livestock primarily rely on the Ninth Circuit's opinions in *Martinez v. Korea Shipping Corp., Ltd.*, 903 F.2d 606 (9th Cir. 1990) and *Thomas v. Newton International Enterprises*, 42 F.3d 1266 (9th Cir. 1994). *See* Plaintiff's Memorandum of Points and Authorities in Opposition to Motion for Summary Judgment, pp. 10-12; Defendant Pacific Livestock, Inc.'s Memorandum in Opposition to Matson Navigation Company, Inc.'s Motion for Summary Judgment filed on January 9, 2006. A review of these cases establishes that they involved situations where the longshoreworker was not aware of or could not anticipate the alleged danger. In *Martinez*, the longshoreworker "failed to notice the ladder opening and fell through it." *Martinez*, 903 F.2d at 608. In *Thomas*, an expert declaration was submitted wherein the expert claimed that the hazard "would not be something that even an experienced longshoreworker would be looking for or anticipate. . . ." *Thomas*, 42

---

[6] This is a non-jury trial, so if the Court were to deny summary judgment, it would eventually have to resolve these same issues at trial anyway with greater expense to the parties.

8

F.3d at 1271.

Matson, on the other hand, relies on, among other cases, *Bjaranson*, supra, *Haines*, supra, and *Ludwig v. Pan Ocean Shipping Co.*, 941 F.2d 849 (9th Cir. 1991). These cases involved situations where, as here, the longshoreworker was aware of an unsafe condition and/or could have easily corrected the condition. *Bjaranson* involved a longshoreworker who was injured when he fell off a coaming ladder that did not have handholds. The primary hatchway was blocked by a crane. The court concluded that the longshoreworker could have easily corrected the condition by moving the crane and using the primary hatchway. *Haines* involved an injury to a longshoreworker who blacked out while working in a ballast tank. Chief Judge Gillmor concluded, **on summary judgment**, that the longshoreworker had failed to satisfy his burden of demonstrating "that an experienced ship repair worker could not, with the exercise of reasonable care, enter, exit, and work inside the tank." *Haines*, 125 F.Supp.2d at 1028. *Ludwig* involved a situation where a longshoreworker stepped down from a ladder onto snatch blocks nestled in a coiled lashing cable. The Ninth Circuit reversed the trial court's judgment in favor of the longshoreworker, reasoning:

> There was evidence that the hazard created by the coiled cable and snatch blocks could have been rectified by removal. Some evidence indicated this could have been accomplished in a matter of minutes. Other evidence suggested that removal might have taken fifteen to twenty minutes.
>
> This factual question requires no resolution. Ludwig offered no evidence that he was under any time or supervisory pressure that precluded him from seeing to its removal. . . . He failed to carry his burden of

9

> showing that the circumstances made safer alternatives unduly impractical or time consuming.

941 F.2d at 852.

Importantly, a distinction between *Martinez/Thomas* and *Bjaranson/Ludwig* was discussed by the Ninth Circuit in *Thomas*. As clarified by the Court in *Thomas*:

> The facts in the present case contrast sharply with those in *Ludwig* and *Bjaranson*. In *Ludwig* the plaintiff had **actual knowledge** of the danger and simply forgot about it. In *Bjaranson*, the plaintiff deliberately elected to forego the safer alternatives of asking the crane operator to move the obstructing crane or squeezing past the crane leg. Rather, he consciously chose to scale across the crane and attempt to descend down a partial ladder not intended for that purpose. The cases cited in *Ludwig* similarly involve plaintiffs faced with choices who voluntarily selected the less prudent alternative. The hazardous circumstances here are clearly factually distinguishable from those cases . . . . That Thomas could have stepped in a different direction and "easily avoided" the hazard is not enough to permit Newton to avoid the imposition of liability – **not if, as Kuvakas' declaration suggests, Thomas would not reasonably, through the exercise of reasonable caution, have anticipated the hazard**.

42 F.3d at 1272 (emphasis added).

This case is more consistent with *Bjarnson* and *Ludwig*. Unlike *Thomas*, Meyer was aware of and, therefore, was able to anticipate the hazard in question. As in *Ludwig*, where the longshoreworker was aware of the alleged hazard, Meyer knew of the alleged gap and the slippery condition caused by the animal urine and feces prior to the day the accident occurred. Meyer even claims to have seen animal urine and feces in the accident area. Significantly, he concedes that he felt his foot slipping prior to the accident occurring. *See* Exhibit "A", Response to Request for Admission, No. 23. As in *Bjaranson*, where the longshoreworker

10

merely needed to use an alternative means of access, the accident could easily have been avoided by Meyer. First of all, he did not need to put his foot on the raised padeye. In addition, to correct the slippery condition which led to the accident (i.e. the animal feces and urine), he simply could have used commonly accepted means for correcting the condition (i.e. water, informing an animal tender or supervisor,[7] avoiding the animal feces and urine, using cloth towels, paper towels, paper napkins, or some other absorbents that are available on ships in order to correct the condition).

On pages 26 and 27 of his memorandum, Meyer attempts to break-down the various "material" questions of fact in an attempt to defeat summary judgment. However, these purported "material" questions of fact do not overcome summary judgment for the following reasons:

> 1. **Whether the gap in between the grating and the hatchcover created an unreasonably dangerous condition for an expert and experienced longshoreman.**

As discussed earlier, Meyer has the affirmative burden of proving "that an expert and experienced stevedore would not 'be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property'". *Bjaranson*, 873 F.2d at 1208. He has not done this. For reasons discussed herein, no reasonable factfinder could conclude that Meyer could not have avoided the gap.

---

[7] Meyer has admitted that "[p]rior to the accident, Bert Meyer did not ask anyone to clean up the animal urine and feces on the S/S LIHUE." *See* Exhibit "A", Response to Request for Admission, No. 23.

11

This question is not a "question of fact"; it is a question of law which is based on the application of facts.

### 2. Whether the animal waste in plaintiff's work area created an unreasonably dangerous condition for an expert and experienced longshoreman.

See response to question of fact number 1. Moreover, Meyer has admitted that he had previously slipped on animal waste, so he was already aware of the alleged hazard and, acting as an expert and experienced longshoreworker, should have avoided or corrected it. *See* Exhibit "A", Response to Request for Admission, Nos. 6, 7.

### 3. Whether the vessel was turned over to the longshoremen in an unsafe condition.

Meyer has not controverted Matson's evidence that an inspection was performed prior to turning over the vessel, and no safety hazards were noted. Meyer has also failed to controvert Matson's evidence establishing that Matson was unaware of an unsafe condition aboard the vessel.

This question is not a "question of fact"; it is a question of law which is based on the application of facts.

### 4. Whether gaps such as the one in plaintiff's accident are common.

This question is immaterial, and involves a misinterpretation of the substantive law, as set forth in *Scindia Steam Navigation Co., Ltd. v. De Los Santos*, 451 U.S. 156 (1981) and its progeny. Whether hazards are common is not the standard set forth in *Scindia*.

### 5. Whether the vessel owner was in the best position to correct

12

> **the unsafe conditions.**

See response to question of fact number 4. Whether the vessel owner is in the best position to correct an unsafe condition is not the standard set forth in *Scindia*.

    **6.    Whether defendant MATSON knew or should have known about gap through which plaintiff fell.**

This question is a misleading interpretation of the responsibilities of a vessel owner, as set forth in *Scindia Steam Navigation Co., Ltd. v. De Los Santos*, 451 U.S. 156 (1981). The shipowner is governed by a standard of "ordinary care". Nevertheless, Matson has presented evidence showing that it performed a vessel inspection prior to arriving in Honolulu and was not aware of the allegedly unsafe conditions. Meyer has failed to controvert Matson's evidence with any evidence showing that Matson knew or should have known of the alleged conditions and why the allegedly unsafe conditions could not have been avoided by him in the exercise of reasonable care.

    **7.    The degree of danger created by the unsafe conditions.**

This question is an improper interpretation of the substantive law, as set forth in *Scindia Steam Navigation Co., Ltd. v. De Los Santos*, 451 U.S. 156 (1981) and its progeny. The proper inquiry analysis is not the "degree of danger" but whether an expert and experienced stevedore would 'be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property'". *Bjaranson*, 873 F.2d at 1208.

    **8.    Whether defendant MATSON should have installed a larger**

13

       **grating.**

This question is not a "question of fact"; it is a question of law which is based on the application of facts.

       **9.    Whether defendant MATSON was negligent.**

This question is not a "question of fact"; it is a question of law which is based on the application of facts.

       **10.    Whether, prior to the accident, Meyer knew it was unsafe to use the padeye for leverage.**

Common sense suggests it was unsafe for Meyer to use the padeye for leverage in light of the alleged presence of animal feces and urine. Moreover, by his own admission, Meyer admits that his foot was slipping on the padeye prior to the moment the accident occurred. *See* Exhibit "A", Response to Request for Admission, No. 25. In addition, ***according to Meyer's own expert***, Meyer could have put his foot alongside the padeye. Putting aside Meyer's obligation to use his expertise and experience as a longshoreworker, common sense and reasonable care would have dictated that he place his foot on a flat surface, rather than place his foot on a raised padeye.

       **11.    Whether Meyer correctly stated the circumstances of his accident in the tape recorded statement that he gave to Frank Gates Acclaim.**

This question does not present a question of fact. As explained in Matson's memorandum in support, the transcript of Meyer's tape recorded statement was offered solely for the purpose of background information.

       **12.    Whether defendant MATSON violated the Matson Navigation Company Safety and Pollution Manual.**

14

This question involves an incorrect interpretation of the substantive law, as set forth in *Scindia Steam Navigation Co., Ltd. v. De Los Santos*, 451 U.S. 156 (1981) and its progeny. The question is whether Matson violated its turnover duty as set forth in *Scindia*, not whether it violated its safety and pollution manual.

### 13. Whether defendant MATSON violated the Pacific Coast Marine Safety Code.

This question involves an incorrect interpretation of the substantive law, as set forth in *Scindia Steam Navigation Co., Ltd. v. De Los Santos*, 451 U.S. 156 (1981) and its progeny. The question is whether Matson violated its turnover duty as set forth in *Scindia*, not whether it violated the Pacific Coast Marine Safety Code.

## III. CONCLUSION

Although Matson has met its initial burden of introducing facts to support summary judgment, Meyer has not come forward with evidence sufficient to demonstrate genuine issues of material fact for trial. It is respectfully submitted that summary judgment must be granted in favor of Matson.

DATED: Honolulu, Hawaii, April 6, 2006.

/s/ Randolf L.M. Baldemor
JOHN R. LACY
RANDOLF L.M. BALDEMOR
Attorneys for Defendant MATSON
NAVIGATION CO., INC.